CGP/426313                                                                                          6121-213

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TIMOTHY BROWNLEE,                           )
                                            )
                Plaintiff,                  )
                                            )
v.                                          )
                                            )   No. 07 CV 7085
VILLAGE OF BOLINGBROOK,                     )
BOLINGBROOK POLICE OFFICER                  )   Judge Ruben Castillo
DAVI,                                       )
BOLINGBROOK POLICE OFFICER                  )
SMETTERS, and                               )
BOLINGBROOK SERGEANT HILLIARD,              )
                                            )
                Defendants.                 )
                                            )

**MEMORANDUM OF ALL DEFENDANTS
IN SUPPORT OF PARTIAL MOTION TO DISMISS**

Craig G. Penrose
Tressler, Soderstrom, Maloney & Priess, LLP
Sears Tower, 22nd Floor
233 South Wacker Drive
Chicago, Illinois 60606
312/627-4000

**ATTORNEY FOR ALL DEFEDANTS**

I.     **Introduction**

On December 17, 2007, Plaintiff Timothy Brownlee filed a 12-count complaint under 42 U.S.C. § 1983 and also asserted various state law causes of action against Defendant Village of Bolingbrook, Bolingbrook Police Officer Salvatore Davi, and former Police Sergeant Drew Peterson.[1] In a nutshell, Plaintiff alleges that he was falsely arrested on May 28, 2007, (Memorial Day) and claims that he was subject to excessive force later when he was taken to the police station for processing. Significantly, Plaintiff claimed in his original complaint that former Police Sergeant Drew Peterson broke his thumb while at the police station.

On January 29, 2008, Plaintiff filed a First Amended Complaint (Docket #17). This version is virtually identical to the original complaint except for the fact that Plaintiff dropped Drew Peterson from the lawsuit and added Officer Daniel Smetters and Sergeant Rich Hilliard. Now Plaintiff claims Sergeant Hilliard, and not Drew Peterson, "broke" his thumb (For the Court's convenience, the First Amended Complaint is Attached as Exhibit A)

Most of the First Amended Complaint must be dismissed for failure to state a claim. Counts IV (§ 1983 false arrest), Count V (state law false arrest), and Count IX (malicious prosecution) must all be dismissed as to all Defendants because success on all of those counts is predicated on there being no probable cause to arrest Plaintiff. However, the state court in the criminal proceeding against Plaintiff (such criminal action as alluded to in this Complaint) specifically <u>found</u> probable cause. The principles of collateral estoppel/issue preclusion bar relitigation of these claims in this forum now as the issue has already been decided.

Counts VI (§ 1983 conspiracy), Count VII (state law conspiracy), Count VIII (§ 1983 equal protection), and Count IX (state law Hate Crime statute) must all be dismissed as to all defendants under the Supreme Court's decision in *Bell Atlantic* because there are not enough facts showing even a plausible argument for recovery. Finally, under *Bell Atlantic*, all § 1983 *Monell* claims against the Village must also be dismissed for the same reason. There are not enough facts to make even *a plausible* showing of *Monell* liability.

Finally, the "conspiracy counts," Counts VI and VII, must also be dismissed as to all parties for the alternative reason that the only conspiracy alleged (or that could be alleged) is an intracorporate conspiracy, which fails as a matter of law.

---

[1] The Court's familiarity with Mr. Peterson through various media stories will be presumed.

1

Thus, the only Counts that should remain standing after this motion is granted are Counts I and II (§ 1983 excessive force and assault), Count III (§ 1983 failure to intervene) as to the officers and Count II, Count XI (indemnification for state torts under respondeat superior) and Count XII (statutory indemnification for any judgment) as to the Village.

## II.   Standard of Pleading Under *Bell Atlantic*

Rule 8(a) of the *Federal Rules of Civil Procedure* requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." This "short and plain statement" must be enough "'to give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Bell Atlantic v. Twombly*, -- U.S. --, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007). Rule 8(a) (2) requires a "showing," rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests. *Id.* at n. 3.

The Seventh Circuit noted that in *Bell Atlantic*, the Supreme Court "retooled the federal pleading standards, retiring the oft-quoted *Conley* formulation that 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007)(citing *Bell Atlantic, 127 S.Ct. at 1969*(*Conley*'s "famous observation has earned its retirement.")(in turn quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

The Seventh Circuit explained in *Bell Atlantic* that the "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Id.* (quoting *Bell Atlantic*, 127 S.Ct. at 1964-65). Instead, the Court held, the factual allegations in the complaint "must be enough to raise the right to relief above the speculative level." *Id.* (quoting *Bell Atlantic*, at 1965)(and quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776-77 (7th Cir.2007)). *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663 (7th Cir.2007).

## III.   Summary of Plaintiff's Complaint

Plaintiff's Complaint is considered true for motion to dismiss purposes only. *Sneed v. Rybicki*, 146 F.3d 478, 480 (7th Cir.1998). Plaintiff claims that he returned home on May 28, 2007, to find police officers outside his residence concerning a previous dispute between

2

Plaintiff and his neighbor (First Amended Complaint, ¶ 7). Plaintiff claims he gave the officer his license when asked for identification (First Amended Complaint, ¶ 8) He claims the officer then left and told everyone to "get along" (First Amended Complaint, ¶ 9).

Plaintiff claims Officer Davi then returned to his home about ½ an hour later. Plaintiff states in the complaint that Davi had stated that Plaintiff had previously told Davi his name was "Timothy Sandifer," rather than "Timothy Brownlee." Plaintiff claims that "Defendant Davi may very well have confused Plaintiff's last name with that of his fiancé, Tiggen Sandifer, because Plaintiff and his fiancé have the same birth day, albeit one year apart." (First Amended Complaint, ¶ 11). Plaintiff claims that he was then improperly arrested based on this supposed "misidentification" (even though he maintained he gave them his license) (First Amended Complaint, ¶ 12). He claims that he was then taken to the police station for processing and thereafter, he claims Officer Hilliard allegedly broke his thumb (First Amended Complaint, ¶ 25). He claims he was charged with disorderly conduct and obstruction of justice (First Amended Complaint, ¶ 27). He claims all charges were ultimately dropped (First Amended Complaint, ¶ 28).

IV. **Argument**

   **A. Counts IV, V and IX Must All Be Dismissed With Prejudice Because the State Criminal Court Has Already <u>Found</u> Probable Cause, and Collateral Estoppel Bars Plaintiff's Relitigation of that Determinative Finding.**

Count IV is a false arrest claim under 42 U.S.C. § 1983, Count VI is a false arrest under state law, and Count IX is a malicious prosecution claim under state law. As a necessary predicate to his § 1983 claims for false arrest, Plaintiff must show that the police lacked probable cause to arrest him. *Jones by Jones v. Webb,* 45 F.3d 178, 181 (7th Cir.1995). "[T]he existence of probable cause for arrest is an absolute bar to a Section 1983 claim for unlawful arrest, false imprisonment, or malicious prosecution." *Fernandez v. Perez,* 937 F.2d 368, 371 (7th Cir. 1991). Because all of these claims require <u>lack</u> of probable cause to prevail in a civil action and the criminal court already determined that there <u>was</u> probable cause, these claims must be dismissed under collateral estoppel/issue preclusion principles.

### 1.  A Primer On Collateral Estoppel (Issue Preclusion) Under § 1983 and State Law

Under the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts must give state court judgments the same preclusive effect they would have in state court. *Parsons Steel, Inc. v. First Alabama Bank,* 474 U.S. 518, 519, 106 S.Ct. 768, 88 L.Ed.2d 877 (1986); *See also Rooding v. Peters,* 92 F.3d 578, 580 (7th Cir.1996)(the *res judicata* effect of a prior state court judgment on a subsequent section 1983 action is a matter of state law).

In *Allen v. McCurry,* 449 U.S. 90, 103, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), the Supreme Court held collateral estoppel, or issue preclusion, may apply when § 1983 plaintiffs attempt to re-litigate in federal court issues decided against them in state criminal proceedings. (observing "collateral estoppel applies to section 1983 actions involving alleged Fourth Amendment violations."). "'[O]nce a court has decided an issue of fact or law necessary to its judgment, that decision may preclude re-litigation of the issue in a suit on a different cause of action involving a party to the first case.'" *Allen,* 449 U.S. at 94, 101 S.Ct. 411.

The collateral estoppel doctrine "is premised upon an underlying confidence that the result achieved in the initial litigation was substantially correct." *Standefer v. United States,* 447 U.S. 10, 23 n. 18, 100 S.Ct. 1999, 2007 n. 18, 64 L.Ed.2d 689 (1980). By prohibiting the relitigation of issues, collateral estoppel relieves parties of the cost and vexation of multiple lawsuits, conserves judicial resources, encourages reliance on adjudication by preventing inconsistent decisions, *Allen,* 449 U.S. at 94, 101 S.Ct. at 414-15, and, importantly, when the issue was decided initially in the state court system it promotes "the comity between state and federal courts that has been recognized as a bulwark of the federal system." *Allen,* 449 U.S. at 96, 101 S.Ct. at 415. Collateral estoppel is, however, an equitable doctrine and thus "should only be applied as fairness and justice require" *Jones v. City of Alton, Illinois,* 757 F.2d 878, 885 (7th Cir.1985).

"For purposes of issue preclusion, 'final judgment' includes any prior adjudication of an issue in another action between the parties that is determined to be sufficiently firm to be accorded conclusive effect." *Miller Brewing Co. v. Jos. Schlitz Brewing Co.,* 605 F.2d 990, 996 (7th Cir.1979) (citing Restatement (Second) of Judgments § 41cmt. G). The court in *Miller* stated that:

> [T]he court should determine that the decision to be carried over was adequately deliberated and firm even if not final in the sense of forming a basis for a judgment already entered. This preclusion should be refused if the decision was avowedly tentative. *Id.*

"Under Illinois law, collateral estoppel requires that: (1) the issues decided in the prior adjudication are identical to issues presented for adjudication in the current proceeding; (2) there be a final judgment on the merits; and (3) the party against whom estoppel is asserted was a party or in privity with a party in the prior action." *Kalush v. Deluxe Corp.*, 171 F.3d 489, 493 (7th Cir.1999). This includes prior state court judgments, civil or criminal, where the party against whom estoppel is sought had a full and fair opportunity to litigate the issue to be precluded. *Id.*

The Supreme Court has indicated that to satisfy the "full and fair opportunity to litigate" requirement, the prior state proceedings "need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process clause". *Kremer v. Chemical Corp.*, 456 U.S. 461, 481, 102 S.Ct. 1883, 1897, 72 L.Ed.2d 262 (1982). Thus under that context, a Fourth Amendment judicial determination of probable cause need <u>not</u> be accompanied by the full panoply of adversarial-type safeguards-e.g., counsel, confrontation, and cross-examination of witnesses to comply with due process concerns. *Gerstein v. Pugh*, 420 U.S. 103, 119-21, 95 S.Ct. 854, 865-66, 43 L.Ed.2d 54 (1975);*Guenther v. Holmgreen*, 738 F.2d 879, 884 (7th Cir.1984). *cert. denied*, 469 U.S. 1212, 105 S.Ct. 1182 (1985), or have even been thoroughly litigated. *Raper v. Hazlett & Erdal*, 114 Ill.App.3d 649, 449 N.E.2d 268 (1983).

The United States Supreme Court has stated although an important consideration, the availability of appellate review is not always an essential predicate of collateral estoppel. *Standefer*, 447 U.S. at 23 n. 18, 100 S.Ct. at 2007 n. 18. Thus, according to the United States Supreme Court, the lack of appellate review is not dispositive regarding the applicability of the collateral estoppel doctrine.

    2.    **The Criminal Court's Finding of Probable Cause Precludes Brownlee's Relitigation of Those Claims Here**

The Docket in the criminal matter against Mr. Brownlee conclusively demonstrates that probable cause was found. Thus, this court must give preclusive effect to that judgment and bar relitigation of that issue. Specifically, the Docket entry and Order in the Criminal Proceeding states:

5

> People present by DEBRA J. WENDLING. Defendant present in custody of the Will County Sheriff pursuant to video court. Complaint is filed and copy served on the defendant. Charges and rights explained. Defendant enters a plea of not guilty. Defendant advises the Court he will hire private counsel. Case is set for jury pretrial. Based on the sworn testimony of Assistant State's Attorney, DEBRA J. WENDLING, Court finds probable cause to continue defendant's detention. Gerstein hearing completed. Bond set in the amount of $1,000.00 – 10% to apply. Copy of the mittus issued in open court. Defendant remanded to the custody of the Will County Sheriff.

(Attached as Exhibit B is a certified copy of the Criminal Docket)[2]

It is clear that this finding by the criminal court of probable cause meets all of the traditional elements of collateral estoppel/issue preclusion; thus Plaintiff's claims that depend on *lack* of probable here must be dismissed with prejudice as that issue has been decided. Under the first element, it is clear that the issues are identical –i.e., whether there was probable cause. That was conclusively determined in the criminal court, and for Plaintiff to prevail here, he will have to demonstrate that there was no probable cause which would expressly contradict that finding. The issues could not be any more identical. In addition, the third element is clearly met as Brownlee was the defendant in the criminal case and is the plaintiff here. Privity is thus met.

Lastly, under element two, there was a "final judgment" for collateral estoppel purposes. As noted above, the Seventh Circuit over 25 years in *Miller* held that "final" for collateral estoppel/issue preclusion purposes, does not mean final in the sense of "final judgment" under 28 U.S.C. § 1291, but merely "final" in the sense of immune from reversal or amendment.

Because Plaintiff was being detained and did not post a bond, a *Gerstein* Hearing was constitutionally required. See *Gerstein v. Pugh*, 420 U.S.103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975)(continued detention pending trial requires judicial determination of probable cause). See also 725 ILCS 5/109-3 (preliminary examination required)[3]. Thus it was clear that this determination was "necessary" to continue to detain Plaintiff and make him answer to the criminal charges in light of the detention.

The decision was also final in the sense that it could not be revisited later in the case, but

---

[2] *See Henson v. CSC Credit Services*, 29 F.3d 280, 284 (7th Cir.1994)(judicial notice may be taken of matters of public record).

[3] Illinois Supreme Court Rule 553 requires an "I-bond" (released on own recognizance) be issued with no hearing needed on most misdemeanors, unless the defendant is not cooperating (like Brownlee was here) or was charged with a more serious crime.

6

only through appeal. *Gerstein* was clear that under traditional principle of habeas corpus, an initial finding of probable cause could only be reviewed by the higher courts under this method. *Gerstein*, 420 U.S. at 115, 95 S.Ct. at 864, see also *Haupt v. T.D. Dillard*, 17 F.3d 285, 289 (9th Cir. 1994)(initial probable cause can be reviewed under habeas corpus and is thus "necessary" for a further judgment, even of acquittal).

Plaintiff will also likely claim that there can be no preclusive effective because there was no right to appeal. This argument (assuming it is made) is wrong on two counts. In the first place, as noted above, *Gerstein* specifically recognized the right to appeal this initial determination through habeas corpus. Second, the Illinois cases likely to be suggested by Plaintiff are criminal proceedings followed by another criminal proceeding. A court in this district in *Thompson v. Mueller*, 976 F. Supp. 762, 766 (N.D. Ill. 1997)(J. Alesia) specifically found this distinction critical and following United State Supreme Court law, noted that the right to appeal is not determinative anyway.

Moreover, the Seventh Circuit has held that probable cause in a criminal preliminary hearing *can* bar later civil false arrest suits. *Guenther v. Holmgreen*, 738 F.2d 879 (7th Cir. 1984)(collateral estoppel would apply to bar claims for false arrest and malicious prosecution).

Numerous other Circuit Courts have held that a finding of probable cause in a criminal proceeding consistent with due process required under *Gerstein* precludes false arrest or malicious prosecution claims. See *Haupt v. Dillard*, 17 F.3d 285 (9th Cir. 1994) (probable cause definitively established at state court preliminary hearing); *Crumley v. City of St. Paul, Minn.*, 324 F.3d 1003, 1007 (8th Cir. 2003) (state court conclusion that there was probable cause to arrest Crumley collaterally estopped a contrary ruling in her § 1983 action, even though she was acquitted of charges in state court); *McClellan v. Smith*, 439 F.3d 137 (2d Cir. 2006)(presumption of probable cause arising from grand jury indictment not applicable where there is an issue of fact as to whether officer secured indictment through bad faith or perjury); *Stemler v. City of Florence*, 126 F.3d 856 (6th Cir. 1997)(dismissal of state court civil suit alleging arrest without probable cause precludes federal civil rights action for false arrest since lack of probable cause is element of false arrest claim); *Hubbert v. City of Moore, Okl.*, 923 F.2d 769 (10th Cir. 1991) (probable cause determination in state preliminary hearing precludes false arrest claim in federal court).

Because it is clear the criminal court found probable cause in a constitutional sufficient

manner under *Gerstein*, that determination is preclusive to these Counts, and they should thus be dismissed.

### B. The Complaint Fails to Satisfy *Monell*, So the Village Must be Dismissed from All *Monell* Counts of the First Amended Complaint

Although not properly identified, the Village itself has presumably been sued under all § 1983 Counts under the *Monell* theory. (Counts I, III, IV, VI, VIII ). However, in light of *Bell Atlantic,* Plaintiff's First Amended Complaint is insufficient to state a *Monell* claim.

### 1. A Quick *Monell* Primer

As the Supreme Court stated in *Monell v. New York City Dept. of Social Servs.,* 436 U.S., 658, 689, 98 S.Ct., 2018, 2035 (1978), although municipalities and other local governmental bodies are "persons" within the meaning of § 1983 that could be subject to liability, the Court also recognized that a municipality may not be held liable under § 1983 solely because it employs a tortfeasor.

In *Monell* and subsequent cases, the Court has required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal "policy" or "custom" that caused the plaintiff's injury. See *Monell,* at 694, 98 S.Ct., at 2027; Locating a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. *Monell,* at 694, 98 S.Ct., at 2027. Similarly, an act performed pursuant to a "custom" that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law. *Monell,* 436 U.S., at 690-691, 98 S.Ct., at 2035-2036 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 167-168, 90 S.Ct. 1598, 1613-1614, 26 L.Ed.2d 142 (1970)).

It is not enough for plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights. *Board of County Commissioners of Bryan Country, Ok.,* 520 U.S. 520, 117 S.Ct. 1382 (1997).

8

Thus, there are three principle ways to establish *Monell* liability:

> (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.

*Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

### 2. Under *Bell Atlantic*, There is Insufficient Detail in the First Amended Complaint to Create Even a Plausible Theory of Recovery under *Monell*

The First Amended Complaint is extremely vague and has no factual information to get over the *Bell Atlantic* threshold with respect to *Monell* claims. All § 1983 *Monell* claims must be dismissed. In sum, the First Amended Complaint states as follows:

> 35. The misconduct described in this Count [Excessive Force] was undertaken under the policy and practice of the Village of Bolingbrook in that:
>
> > a. As a matter of both policy and practice, the Village of Bolingbrook directly encourages, and is thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference; and
> >
> > b. As a matter of both policy and practice, the Bolingbrook Police Department facilitates the very type of misconduct at issue here by failing to adequately punish and discipline prior instances of similarly misconduct, thereby leading Bolingbrook Police Officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting Plaintiff; specifically, Bolingbrook Police Officer accused of excessive force can be confident that internal affairs will not investigate those accusations in earnest and will refuse to recommend discipline even where the Officer has engaged in excessive force;
> >
> > c. Generally, as a mater of widespread practice so prevalent as to comprise municipal policy, officers of the Bolingbrook Police Department abuse citizens in a manner similar to that alleged by Plaintiff in this Count on a frequent basis, yet the Bolingbrook Police Department makes findings of wrongdoing in a disproportionately small number of cases;

9

    d. Municipal policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Bolingbrook Police Department, but which officers fail to report misconduct committed by other officers, such as the misconduct at issue in this case; and

    e. The Village of Bolingbrook has failed to act to remedy the patterns of abuse described in the preceding subparagraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here.

According to the First Amended Complaint, these allegations are also incorporated into the various other § 1983 claims (i.e. false arrest, failure to intervene, and conspiracy). However, the First Amended Complaint provides nothing to even suggest an "official policy maker" action or an "express policy" theory under *Monell* Thus, the only avenue of recovery under *Monell* would be a "widespread" policy or practice or a "deliberate indifference" in the failure to train or supervise. But nothing in the First Amended Complaint comes close to providing enough detail as required by *Bell Atlantic*.

    **a.    There Is No "Showing" of A "Wide Spread Policy"**

The requirement of actually pleading enough facts to demonstrate a wide spread policy etc., is more than just "window dressing." In *Rodgers v. Lincoln Towing Serv., Inc.*, 771 F.2d 194, 198 (7th Cir.1985), the Seventh Circuit noted it has repeatedly affirmed dismissals of section 1983 claims that seek to impose municipal liability based on isolated acts. *See Henry v. Farmer City State Bank*, 808 F.2d 1228, 1237 (7th Cir.1986); *Strauss v. City of Chicago*, 760 F.2d at 765, 767-68 (7th Cir. 1985). Significantly, boilerplate allegations of a municipal policy, entirely lacking in any factual support that a city policy does exist, are insufficient." *Sivard v. Pulaski County*, 17 F.3d 185, 188 (7th Cir.1994) (quoting *Rodgers v. Lincoln Towing Serv., Inc.*, 771 F.2d 194, 202 (7th Cir.1985).

Although Plaintiff throws out various "labels" claiming a policy or practice is the moving force as referenced above, Plaintiff provides nothing to "show" the wide spread pattern. As noted above, conclusory claims parroting the legal elements are no longer good enough under *Bell Atlantic*. As noted in *Bell Atlantic*, there must be "showing" of an entitlement to relief and a regurgitation of the legal elements is no longer good enough. Showing means at least some facts. But here, there are <u>no</u> facts to even remotely "show" a widespread practice, and simply making the conclusory claim with nothing to back it up will not work.

After all, this makes good sense, because otherwise the Village has no proper notice and is merely left to "guess" at what "wide spread practice" the *Monell* claim is really about. The complaint reveals nothing. Thus, the Village is subject to dismissal.

The Seventh Circuit has held that an allegation of a pattern or a series of incidents of unconstitutional conduct is <u>required</u> to withstand a motion to dismiss for a failure to make policy. *Powe v. City of Chicago,* 664 F.2d 639, 650 (7th Cir.1981); *accord Jones,* 787 F.2d at 204 (requiring "systemic" faulty inaction). *See City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823-24 (1985) (isolated instances of unconstitutional conduct do not establish widespread, systemic practices); *Cornfield ex rel. Lewis v. School Dist. No. 230,* 991 F.2d 1316, 1326 (7th Cir. 1993)(two instances of alleged unconstitutional strip searches of students, combined with alleged endorsement of strip searches by school board president, insufficient to establish policy); *Levin v. Board of Educ. of City of Chicago,* 470 F. Supp.2d 835, 843 (N.D. Ill. 2007)(two allegedly unconstitutional tuberculosis screenings did not create widespread custom).

        **b.     There is No "Showing" of "Deliberate Indifference"**

Plaintiff also seems to suggest that these same events constitute "deliberate indifference" by the Village to the alleged unconstitutional acts of its officers. This contention appears to be an argument that the Village failed to adequately train or supervise its officers. A failure to train employees *may* result in municipal liability under § 1983, only when the failure to train employees "evidences a 'deliberate indifference' to the rights of its inhabitants." *City of Canton v. Harris,* 489 U.S. 378, 389 (1989). Deliberate indifference can be established either by (1) failure to provide adequate training in light of foreseeable consequences; or (2) failure to act in response to repeated complaints of constitutional violations by its officers. *Id.* at 390 & n. 10. Thus, before liability can attach based on failure to train, the plaintiff must show that the municipality was "on notice of the deficiency, and have a high degree of culpability." *Palmquist v. Selvik,* 111 F.3d 1332, 1346 (7th Cir. 1997).

Again, Plaintiff's allegations come nowhere near the high standard for proving a failure to train. *See Cornfield,* 991 F.2d at 1327("[u]nlike a municipal custom or policy of inaction, establishing a failure to train as a form of municipal action requires something more in order to rise to the level of deliberate indifference."); *Palmquist,* 111 F.3d at 1346 (plaintiff must "show a pattern of constitutional violations constituting notice that a training deficiency existed").

As shown above, Plaintiff has failed to allege even the requisite pattern of

unconstitutional acts sufficient to establish a widespread custom or policy, or what that widespread policy even is, and therefore, he necessarily cannot establish that the Village deliberately ignored or acquiesced in the unalleged pattern that demonstrated a training deficiency. After all if you can't identify a widespread policy how would the Village be on notice that training is even needed? *Harris v. City of Marion,* 79 F.3d 56, 59 (7th Cir. 1996)(rejecting "failure to train" claim because "[o]ne incident cannot be bootstrapped into a pattern"); *Cornfield,* 991 F.2d at 1327(isolated instances insufficient to show municipality on notice of alleged training deficiency). Thus, Plaintiff's claims against the City fail as a matter of law.

    **C.**    ***Bell Atlantic* Also Requires Dismissal of the Conspiracy, Equal Protection and Hate Crime Claims as to All Defendants**

All of the discussion under *Bell Atlantic* is equally applicable to the claims against the officer defendants under Counts VI, VII, VIII, IX (and the Village to the extent it is considered a defendant under the state law claims in VII and IX). There is simply no "showing" of a right to relief under any of those claims. The only allegations in the First Amended Complaint concerning conspiracy states that the officers acting under color of law "entered into an agreement amongst themselves and other unknown police officers to deprive Plaintiff of his constitutional rights." (First Amended Complaint, ¶ 62). Judge Kendall of this district held that the identical allegations as to the case here (by the same law firm as here no less!) were insufficient under *Bell Atlantic* to maintain either a § 1983 or state conspiracy claim. *Lyttle v. Killackey,* Case NO. 07 C 1406, 2007 WL 4162811, *11 (N.D. Ill. Nov. 20, 2007)(J.Kendall).

Plaintiff fares no better in his equal protection (Count VIII) or "Hate Crime" (Count X) claims. There is no "showing" of any racial animus that could even possibly suggest an equal protection or hate crime civil claim or what that unequal treatment even was. And not that it was raised, but there is nothing to even suggest a "class of one" equal protection claim either. It is as if Plaintiff simply copied the legal elements from these claims into the First Amended Complaint, but simply forgot to include any facts. Dismissal is required under *Bell Atlantic.*

    **D.**    **The Conspiracy Claims are also Barred by the Intracorporate Conspiracy Doctrine**

Counts VI and VII (§ 1983 conspiracy and state law conspiracy) are also barred as a matter of law pursuant to the intracorporate conspiracy doctrine. As an initial matter, in order to

state a conspiracy claim under § 1983 plaintiff must allege: (1) an agreement between two or more people; (2) to participate in an unlawful act; (3) causing an injury by reason of the commission of an overt act; (4) which overt act was done pursuant to and in furtherance of the common scheme. *Lenard v. Argento,* 699 F.2d 874 (7th Cir. 1983).

As a general matter, the intra-corporate conspiracy doctrine precludes conspiracy claims against members of the same entity acting within the scope of their authority. *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.,* 184 F.3d 623, 632-33 (7th Cir.1999). In *Dombrowski v. Dowling,* 459 F.2d 190 (7th Cir.1972) the Seventh Circuit first recognized the intra-corporate conspiracy doctrine and held that "managers of a corporation jointly pursuing its lawful business do not become 'conspirators'' when acts within the scope of their employment are said to be discriminatory or retaliatory."

In *Wright v. Illinois Dept. of Children & Family Servs .,* 40 F.3d 1492, 1507-08 (7th Cir.1994), the Seventh Circuit applied the doctrine to claims brought under 42 U.S.C. § 1985 against governmental entities. The test for application of the doctrine prohibiting liability is not the wrongful nature of the conspirators' actions, but whether the wrongful conduct was performed *within the scope of the conspirators' official duties. Doe v. Board of Education of Hononeagah Comm. H.S.,* 833 F.Supp. 1366, 1382 (N.D.Ill. 1993)(emphasis added); *see also Travis v. Gary Cmty Mental Health Ctr., Inc.,* 921 F.2d 108, 110 (7th Cir.1991)

Although not definitively decided by the Seventh Circuit, numerous district courts have applied the holding of *Travis* under § 1985 conspiracy claims to bar § 1983 conspiracy claims. *David v. Village of Oak Lawn,* No. 95-7368, 1996 WL 210072, * *3-4 (N.D.Ill. Apr. 29, 1996); and *Chavez v. Illinois State Police,* No. 94-5307, 1996 WL 66136, **7-8 (N.D.Ill. Feb. 13, 1996), *Doe v. Board of Education of Hononeagah Comm. H.S.,* 833 F.Supp. 1366, 1381 (N.D. Ill. 1993) *Fabiszak v. Will Vounty Board of Commissioners,* 1994 WL 698509 (N.D.Ill.1994).

This is based on the assumption that employees are presumed to be one person, because each is functioning as a representative of the same entity. *Cromley v. Board of Ed. of Lockport Township High School Dist. 205,* 699 F.Supp. 1283, 1291-92 (N.D.Ill. 1988) *Buschi v. Kirven,* 775 F.2d 1240 (4th Cir. 1985) As noted in *Doe,* the issue is whether the ability to injure the plaintiff was derived solely from the defendants' positions within their entity and the influence they wielded therefrom. *Doe,* 833 F.Supp. at 1382.

That is the exact scenario here. Even ignoring the problem outlined above under *Bell*

13

*Atlantic,* the First Amended Complaint states that the "Defendant Officers, *acting under color of law and within the scope of employment,* entered into an agreement amongst themselves and other unknown police officers to deprive Plaintiff of his constitutional rights." (First Amended Complaint, ¶ 62). So even Plaintiff admits that the alleged "agreement" occurred during the scope of employment. This has "pleaded Plaintiff out of court." *Jefferson v. Ambroz,* 90 F.3d 1291, 1296-97 (7th Cir.1996) (plaintiff pleaded himself out of by including facts in his complaint that established employer would prevail). Thus, the intracorporate conspiracy doctrine "kicks in" and bars both the § 1983 conspiracy and state conspiracy claims.

### E. In the Alternative Count VIII, Equal Protection Under 1983 Must Be Dismissed Because Racial Epithets Do Not Establish a Violation

Although the Defendants argued above that this Count must be dismissed under *Bell Atlantic,* in the alternative, it must also be dismissed because racial slurs do not support equal protection claim. In the First Amended Complaint, Plaintiff claims a violation of equal protection under § 1983, but the only fact remotely connected to race is the claim that there were some racial epithets stated by the officers.

The Seventh Circuit is clear that such comments do not by themselves violate the Constitution. *DeWalt v. Carter,* 224 F.3d 607, 612 (7th Cir.2000)(the use of racially derogatory language, while unprofessional and deplorable, does not violate the Constitution); *Sherwin Manor Nursing Ctr. v. McAuliffe,* 37 F.3d 1216, 1221 (7th Cir.1994) *Bell v. City of Milwaukee,* 746 F.2d 1205, 1259 (7th Cir.1984) ("derogatory references to racial or ethnic backgrounds by themselves obviously do not rise to the level of a constitutional violation").

Other court have held similarly. *King v. City of Eastpointe,* 86 Fed.Appx. 790, 814 (6th Cir.2003) "[t]he use of a racial epithet by itself is not an actionable violation of the Equal Protection Clause." *Williams v. Bramer,* 180 F.3d 699, 706 (5th Cir.)( "[A]n officer's use of a racial epithet, without harassment or some other conduct that deprives the victim of established rights, does not amount to an equal protection violation."), *clarified on reh'g,* 186 F.3d 633 (5th Cir.1999); *Blades v. Schuetzle,* 302 F.3d 801, 805 (8th Cir.2002) (citing *Williams v. Bramer,* 180 F.3d 699, 705-06 (5th Cir.1999)(holding that an officer's use of a racial epithet, without harassment or some other conduct that deprives the victim of established rights, did not amount to an equal protection violation); *Burton v. Livingston,* 791 F.2d 97, 101 n. 1 (8th Cir.1986) (an allegation that an individual prison guard used racially offensive language in dealing with a

prisoner does not, by itself, state a claim under the Equal Protection Clause)).

**V.     Conclusion**

The criminal court found probable cause, thus the claims for false arrest under § 1983 and under state law and the malicious prosecution claim must all be dismissed with prejudice under collateral estoppel/claim preclusion principles. The other counts must be dismissed under the *Bell Atlantic* pleading standard. In the alternative, the § 1983 conspiracy and state conspiracy claims are barred by the intracorporate conspiracy doctrine. Finally, the equal protection claim is also barred because the only "showing" of facts are alleged racial epithets which do not make a constitutional violation.

Respectfully submitted,

By: s/Craig G. Penrose<br>Craig G. Penrose

Craig G. Penrose
Tressler, Soderstrom, Maloney & Priess
Sears Tower, 22nd Floor
233 South Wacker Drive
Chicago, Illinois 60606-6399
(312) 627-4000
(312) 627-1717 (Fax)
E-mail:     cpenrose@tsmp.com

ATTORNEYS FOR ALL DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2008, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Russell Ainsworth
Loevy &Loevy
312 N. May Street
Suite 100
Chicago, Il 60607

Russell@loevy.com

Attorney for Plaintiff Timothy Brownlee

s/Craig G. Penrose
Craig G. Penrose