CGP/434448                                                                                                  6121-213

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY BROWNLEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No.  07 C 7085 |
| VILLAGE    OF    BOLINGBROOK, | ) | |
| BOLINGBROOK  POLICE  OFFICER  DAVI, | ) | Judge Ruben Castillo |
| BOLINGBROOK    POLICE    OFFICER | ) | |
| SMETTERS, and BOLINGBROOK  POLICE | ) | |
| SERGEANT HILLIARD, | ) | |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

**ALL DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION
TO STRIKE EXPERT REPORT OF PLAINTIFF**

Craig G. Penrose
Tressler, Soderstrom, Maloney & Priess, LLP
Sears Tower, 22nd Floor
233 South Wacker Drive
Chicago, Illinois 60606
312/627-4000

**ATTORNEYS FOR ALL DEFENDANTS**

## I.    INTRODUCTION

At a status hearing on this matter on May 29, 2008, Plaintiff's counsel indicated that expert reports would not be at issue in this case. However, on June 3, 2008, Plaintiff's counsel sent via facsimile a report of a purported expert drafted May 29, 2008 (Attached as Exhibit A is a copy of the report). In any event, the report itself does not comport with the requirements of FRCP 26, Evidence Rule 702, and *Daubert*. It thus must be stricken and any expert testimony barred.

## II.    SUMMARY OF REPORT

The Expert Has 11 "opinions" summarized as follows:

(1)    Defendant Davi could have issued a traffic citation for failure to produce a drivers' license.

(2)    Davi arrested Plaintiff without an arrest warrant as allegedly required by the Supreme Court.

(3)    Davi arrested Plaintiff for obstruction of justice for giving a false name, but this (according to the expert) is not an element of the statute.

(4)    Davi did not request printed identification from the neighbors that made the 911 call that Plaintiff was threatening them.

(5)    Davi arrested Plaintiff without a warrant and handcuffed him without searching him.

(6)    Officer Davi should not have stopped on route to the Police Station when Plaintiff was spitting.

(7)    Davi allegedly made racists comments.

(8)    Davi forced Plaintiff to allegedly stand naked in the booking room.

(9)    There was no probable cause to arrest Plaintiff.

(10)    The office used excessive force when Plaintiff refused to come out of his cell.

(11)    The officers allegedly failed to appear at Will County court concerning the criminal charges against Plaintiff.

(Exhibit A, pg. 3)

### III.    ARGUMENT

### A.    A Primer on the Requirements of the Expert Report under Rule 26

The Federal Rules of Civil Procedure divide potential witnesses into three categories for the purposes of disclosure. The first group, fact witnesses, must be disclosed by sending to the opposing party the name, address, and phone number (if known) of each potential witness. Fed. R.Civ.P. 26(a)(1)(A).

The second and third groups, both consisting of witnesses providing expert testimony, are differentiated by the following rule:

> **(A)** In addition to the disclosures required [regarding fact witnesses], a party *shall disclose* to other parties the *identity of any person* who may be used at trial to present evidence under Rules 702,703,or 705 of the Federal Rules of Evidence.

> **(B)** Except as otherwise stipulated or directed by the court, this disclosure shall, *with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness.*

Fed. R. Civ. P. 26(a)(2).

Thus, *all* witnesses who are to give expert testimony under the Federal Rules of Evidence must be disclosed under Rule 26(a)(2)(A).

Federal Rule of Civil Procedure 26(a)(2)(B) thus requires that each party disclose the identity <u>and</u> a report of any witness who is *specifically retained* to provide expert testimony. Fed.R.Civ.P. 26(a)(2)(A) & (B). The Rule requires the report submitted along with the identification is to contain: (1) A complete statement of all opinions to be expressed and the basis and reasons therefor; (2) the data or other information considered by the witness in forming the opinions; (3) any exhibits to be used as a summary of or support for the opinions; (4) the qualifications of the witness, including a list of prior publications for the last ten years; the compensation to be paid for the study and testimony; and (5) a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the last four years. Fed.R.Civ.P. 26(a)(2)(B). A party that fails, without substantial justification, to disclose information required by Rule 26(a) is not permitted to use as evidence at trial any information not so disclosed. *See* Fed.R.Civ.P. 37(c)(1).

The Advisory Committee's Note to the 1993 amendments to Rule 26 reveal that the report to be provided under Rule 26(a)(2)(B) is to be "a detailed and complete written report, stating the testimony the witness is expected to present during direct examination, together with the *reasons therefor."* Fed.R.Civ.P. 26 (advisory committee's note to 1993 amendments)(emphasis added). The reason for this amendment was that information disclosed under the former rule in answering interrogatories about the substance of expert testimony "was frequently so sketchy and vague that it rarely dispensed with the need to depose the expert and often was even of little help in preparing for a deposition of a witness." *Id.*

As noted by the Seventh Circuit, all too often, experts are "'the mere paid advocates or partisans of those who employ and pay them, as much so as the attorneys who conduct the suit. There is hardly anything, not palpably absurd on its face that cannot now be proved by some so-called experts.' " *Richard v. Sheehan*, 415 F.Supp.2d 929, 931 (N.D. Ill. 2006)(Mag. J. Cole)(citing *Olympia Equipment Leasing Co. v. Western Union Telegraph Co.*, 797 F.2d 370, 382 (7th Cir.1986). Thus, courts are not allowed to "take ... on faith" whatever a paid expert claims. *Minasian v. Standard Chartered Bank, PLC*, 109 F.3d 1212, 1216 (7th Cir. 1997), even if the expert possesses truly distinguished credentials. *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 319 (7th Cir.1996).

"The test of a report is whether it [is] sufficiently complete, detailed and in compliance with the Rules so that surprise is eliminated, unnecessary depositions are avoided, and costs are reduced." *Reed v. Binder*, 165 F.R.D. 424, 429 (D.N.J. 1996). An expert report under Rule 26 "is intended to set forth the substance of the direct examination of the expert witness," and must "disclose the data and other information considered by the expert." Advisory Committee Notes to the 1993 Amendments to Rule 26. To satisfy the Rule, "the report must provide the substantive rationale in detail with respect to the basis and reasons for the proffered opinions. It must explain factually why and how the witness has reached them." *Hilt v. SFC, Inc.*, 170 F.R.D. 182, 185 (D.Kan. 1997). "[T]he purpose of the reports is to avoid the disclosure of 'sketchy and vague' expert information." *Sierra Club v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir.1996). The most important element of Rule 26 analysis is whether report contains complete statement of opinions and basis therefor. *Campbell v. McMillin*, 83 F.Supp.2d 761, 764 (S.D.Miss. 2000).

The Seventh Circuit likewise has determined that these requirements are not mere "window dressing." *Salgado v. Gen. Motors. Corp.,* 150 F.3d 735, 742 n. 6 (7th Cir.1998)(stating that an expert report must be detailed and complete so that "opposing counsel is not forced to depose an expert in order to avoid ambush at trial and sufficiently complete so as to shorten or decrease the need for expert depositions and conserve resources"). The *Salgado* Court went on to describe in particular what the "reasons and basis" for the opinion means under the Rule. "In simple language, this means that the report must contain all information relating to "how" and "why" the expert reached the conclusions and opinions contained within the report. *Id.* 150 F.3d 735, 742 n. 6 (citing with approval, *A Practitioner's Guide: Federal Rule of Civil Procedure 26(a)-Automatic Disclosure,* 47 Syracuse L.Rev. 225, 255 (1996)).

Nor can the Plaintiff or his counsel "blame" the expert for not complying with Rule 26. The *Salgado* court was clear that it is the responsibility of the attorney to ensure that the expert's report contains complete opinions that are properly and thoroughly set forth and supported; it should be the goal of the parties to eliminate surprise, avoid unnecessary depositions and reduce costs. *Id.* 150 F.3d 735, 742 n. 6. *See Reed,* 165 F.R.D. at 429 (citing *Sylla-Sawdon v. Uniroyal Goodrich Tire Co.,* 47 F.3d 277, 284 (8th Cir. 1995).

**B.    The Standard under 702 and *Daubert***

The admissibility of expert testimony is also governed by Rule 702 of the Federal Rules of Evidence. Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702.

Under this framework, courts determine whether the expert testimony is both relevant and reliable. It is a three-step analysis: (1) the witness must be qualified "as an expert by knowledge, skill, experience, training, or education," Fed.R.Evid. 702; (2) the expert's reasoning or methodology underlying the testimony must be scientifically reliable, *Daubert v. Merrell Dow Pharmaceuticals, Inc.,*509 U.S. 579, 592-93 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); (3) and the testimony must assist the trier of fact to understand the evidence or to

4

determine a fact in issue. Fed.R.Evid. 702. In determining reliability under the second prong, *Daubert* also sets forth the following non-exhaustive list of guideposts: (1) whether the scientific theory can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether the theory has been generally accepted in the scientific community. *Daubert,* 509 U.S. at 593-94, 113 S.Ct. 2786. *Ervin v. Johnson & Johnson, Inc.,* 492 F.3d 90, 904 (7ᵗʰ Cir. 2007).

As the Supreme Court noted in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1992), Rule 702 imposes a duty on trial courts to act as "gatekeepers" to insure that speculative and unreliable opinions do not reach the jury. 509 U.S. 579, 589 n. 7, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The overall objective of the gatekeeping requirement is to make certain that expert witnesses employ in the courtroom the "same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). The court's gatekeeping role is especially significant, since "the expert's opinion can be both powerful and quite misleading because of the difficulty in evaluating it." *United States v. Frazier,* 387 F.3d 1244, 1260 (11th Cir.2004).

In addition to these *Daubert* "reliability" factors, the 2000 Advisory Committee's Notes to Rule 702 suggest other benchmarks for gauging expert reliability, including: (5) whether "maintenance standards and controls" exist; (6) whether the testimony relates to "matters growing naturally and directly out of research they have conducted independent of the litigation," or developed "expressly for purposes of testifying"; (7) "[w]hether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion"; (8) "[w]hether the expert has adequately accounted for obvious alternative explanations"; (9) "[w]hether the expert is being as careful as he would be in his regular professional work outside his paid litigation consulting"; and (10) "[w]hether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give." Fed.R.Evid. 702 advisory committee's note (2000 amends.). To fulfill its role as a gatekeeper, the trial court must determine whether the expert has the requisite qualifications to offer the opinions he gives. *Poulis-Minott v. Smith,* 388 F.3d 354, 359 (1st Cir.2004).

Though *Daubert* involved scientific experts, the Supreme Court has since made it clear that the strictures of Rule 702 and *Daubert* apply with equal force to non-scientific expert

witnesses. *See Kumho Tire Co. v. Carmichael, ,* 526 U.S. 137 147 (1999). In all cases, the proponent of the expert witness bears the burden of establishing that the expert's testimony satisfies the qualification, reliability, and helpfulness requirements of Rule 702 and *Daubert. McClain,* 401 F.3d 1233, 1238 & n. 2 (11th Cir. 2005). Importantly, "[a]ny step that renders the analysis unreliable renders the expert's testimony inadmissible." *Goebel,* 346 F.3d at 992 (quoting *Mitchell v. Gencorp, Inc.,* 165 F.3d 778, 782 (10th Cir.1999)) (internal alterations omitted).

A court may not "evaluate the credibility of opposing experts" or the "persuasiveness of competing scientific studies"; instead, its duty is limited to "ensur[ing] that the fact-finder weighs only sound and reliable evidence." *Quiet Tech. DC-8, Inc. v. HurelDubois UK, Ltd.,* 326 F.3d 1333, 1341 (11th Cir .2003). And finally, the proponent of expert testimony bears the burden of establishing its admissibility. *Bradley v. Brown,* 852 F.Supp. 690, 697 (N.D. Ind.), *aff'd,* 42 F.3d 434 (7th Cir.1994).

**C.    There is No Specific Rule 26(a)(2)(A) Disclosure**

While Plaintiff did provide the report under 26(a)(2)(B), there was not a specific separate identity disclosure as required under Rule 26(a)(2)(A). This disclosure requirement is not mere window dressing as the Seventh Circuit has held that even if a witness is disclosed under 26(a)(1)(A) (this person was not) there must be a separate specific disclosure under 26(a)(2)(A). *Musser v. Gentiva Health Services,* 356 F.3d 751, 756 (7th Cir. 2004). And of course then an additional report under 26(a)(2)(B).

The *Musser* court rejected the argument that the 26(a)(2)(A) formal disclosure was a "pointless formality" because the witnesses had been disclosed under Rule 26(a)(1)(A) and the defendants had all of the documents and could have deposed them anyway. *Musser* found the Rule 26(a)(2)(A) disclosure important. Here, while there is a report under Section (B), there is no compliance with Section (A).

**D.    None of the 11 Opinions Is Sufficient under Rule 26, Ev. Rule 702 or *Daubert***

As explained in detail below, none of the 11 "opinions" past muster. All of the opinions are insufficient under Rule 26, Evidence Rule 702, *Daubert,* or all three. The proper remedy is to strike the report and bar the expert witness from testifying.

1.    **Opinion (1)- "Possible" Arrest for Failure to Carry a License Has No Analysis and is Factually and Legal Incorrect and Gives an Improper Legal Opinion**

As an initial matter, as noted above, the expert opinion must help the jury decide an issue in the case. The expert claims that Officer Davi should have issued a traffic citation for not having a license. Whether Davi *should have* allegedly arrested Plaintiff as the expert maintains for <u>not</u> carrying a license, it is irrelevant to the claims at issue in this lawsuit. After all, a false arrest claim (the claim by Plaintiff here) is that you are arrested *without* probable cause, not that the officers should have arrested you for something else.

However, even if there could be some possible relevance, the opinion itself is still insufficient. As noted above, there must be an analysis and reasons for the opinion under Rule 26, or in the words of the Seventh Circuit, the "how" and the "why". Here, the expert provides nothing on the how or why. He does not explain exactly why (or what statute) that <u>required</u> Officer Davi to "arrest" Plaintiff for not carrying a license under the facts of this case. Opinion No.1 does not meet the standard of Rule 26.

It is also deficient because it is giving a legal opinion. Federal Rules of Evidence 702 and 704 prohibit experts from offering opinions about legal issues that will determine the outcome of a case. That is, they cannot testify about legal issues on which the judge will instruct the jury. *See, e.g., Bammerlin v. Navistar Internat'l Transp. Corp.,* 30 F.3d 898, 900 (7th Cir.1994); *Harbor Ins. Co. v. Continental Bank Corp.,* 922 F.2d 357, 366 (7th Cir.1990).

Finally, while one is left to guess what the expert is referring to that Plaintiff "should" have been arrested for not carrying a license (making the opinion, not proper as conclusory), it is likely he is referring to 625 ILCS 5/6-112. But that law requires a person to have his license <u>when</u> he is driving and significantly, there can be no conviction under this statute if the person produces his license.

Finally, the expert opinion is just wrong on the facts. Defendant Davi, the initial officer on the scene, testified that he did not even see whether Plaintiff or someone else was driving when Plaintiff returned to the residence (Exhibit B, Davi Deposition, pg. 103, ln 10-21). And when Officer Davi went to Plaintiff's house (he was talking with the neighbors next door prior) Plaintiff was not even in his car (Exhibit B, Davi, pg. 104, ln. 7-15). So even if you ignored the expert failure to provide the reason why Plaintiff allegedly "should" have been arrested for not

carrying a license and the fact that this is a legal opinion, Davi testified that he was not even sure if he even saw Plaintiff driving. And the statute does not require a person to carry a license when they are not driving!

### 2.    Opinion No. 2 Is Pure Legal Opinion and Is Insufficient

Again Opinion Two is giving expert legal advice. The expert is apparently instructing that no arrest can be made without a warrant. Thus, as explained above, this opinion cannot be allowed as this is a pure legal opinion. Moreover, it is insufficient under Rule 26 because there is no reasoning on how he even comes to this conclusion, the expert opinion does not even give the name of the "so-called" Supreme Court opinion he references and supposedly relies upon that states this proposition, or any other analysis to support this legal opinion.

Lastly, his opinion is factually and legal wrong (hence the danger of "so called" expert legal opinion). The expert opinion stated that Davi "returned" to the residence. However, the expert ignored what Davi said that he had never left but went to sit in his squad car to further run Plaintiff's name (Exhibit B, Deposition of Davi, pg. 119, ln. 4-8.).

Second, the expert opinion is also wrong legally. The expert ignores the fact that Davi never entered Plaintiff's residence. Rather, he knocked on the door and Plaintiff came out onto his porch to be arrested voluntarily and Plaintiff admits he stepped out of his house and onto the porch and was handcuffed (Exhibit C, Plaintiff Deposition, pg. 58, ln. 10-22). The Seventh Circuit has approved just this type of situation. *Sparing v. Village of Olympia Fields*, 266 F.3d 684 (7th Cir. 2001)(analyzing cases and finding no violation when a person consents to entry by the officer or the officers have to arrest someone in doorway without warrant).

### 3.    Opinion No. 3 On Obstruction of Justice is Insufficient.

Under Opinion No. 3, the expert is giving a legal opinion that giving a false name to an officer when he is preparing a report is not a part of obstruction of justice under 720 ILCS 5/31-4. Again this is a legal opinion, and is insufficient. He provides no analysis how he reaches this conclusion so it fails under Rule 26 and Ev. Rule 702. Again, legally it is also wrong. The Seventh Circuit has held that giving a false name to an officer while investigating a possible crime can be a charge under 5/31-4. *U.S. v. Lipton*, 3 F.3d 1119, 1123 (7th Cir 1993). Moreover, Illinois has a statute that requires a person to disclose their identify and provides penalties for a failure to do so. 725 ILCS 5/107-14. See also, *Cady v. Sheehan* , 467 F.3d 1057,

8

1063, n. 8(7ᵗʰ Cir. 2006)(violation of 107-14 can be prosecuted through 5/31-1). This opinion is insufficient.

### 4. Opinion No 4 Is Irrelevant and Insufficient In Any Event

Under Opinion No. 4, the expert states an opinion that Officer Davi "should have" "according to procedure" asked for both Plaintiff and the other neighbors printed identification, rather than just the Plaintiff when he investigated the 911 call made by the neighbors that Plaintiff was threatening his neighbors. In the first place, the opinion does not satisfy Rule 26, because there is no analysis. For instance exactly what "procedure" requires the person that called 911 to be always required to show identification upon arrival of the police? The expert report completely fails to provide any analysis or state where this "procedure" is located or why it is applicable to this case.

After all, Plaintiff did not call 911 claiming he felt threatened, it was the neighbors who called emergency 911 claiming Plaintiff was threatening them. (See Exhibit D, Jerome Pausche Deposition, pg. 41, ln. 1-17). It is also completely unclear how this assists the jury in deciding Plaintiff's claim of alleged false arrest under the Fourth Amendment. Lastly, under Evidence Rule 702, it is unclear how this expert opinion was even arrived at under *Daubert*. How are the principles involved calculated to arrive at this "bright line" alleged rule decided by this expert that requires an officer to request printed ID from the individual who placed the 911 call. There is no answer. This Opinion is extremely deficient

### 5. Opinion No. 5-Lack of Search of Brownlee at His Residence

Under Opinion No. 5, the expert opines that Officer Davi did not search Plaintiff at the scene when he was placed under arrest. The expert believes this was a violation of "proper police practices and procedures." However as before, the expert fails to identify any such practice or procedure or his reasoning for reaching this conclusion or what procedure he is even referring to. Thus it violates Rule 26 for incompleteness. Moreover, Defendant Davi indicated that he did not remember if he searched Plaintiff right after arresting and handcuffing him; but indicated that he may have because he does it all the time for officer safety (Ex. B, Davi Dep. pg.134, ln, 1-5). So the expert assumed opinion that Plaintiff was not searched is not even supported by the evidence he reviewed.

9

Moreover, under Evidence Rule 702, this information is not helpful to the jury. Plaintiff made claims of false arrest and imprisonment, but there is no constitutional or statutory requirement <u>requiring</u> a physical search of a person.

6.    **Opinion No. 6- Alleged Excessive Force and Stopping Enroute to Police Station**

Opinion No. 6 seems to actually contain two "sub" opinions, neither of which is sufficient. First, the expert states that Davi should have never have stopped while enroute to the police station. As before, there is no analysis of what "procedure" prohibits this from occurring in every situation, again like before, these are bare conclusions violative of Rule 26(a)(2)(B). In addition, this opinion does not assist the jury, as there is no constitutional or statutory or common-law right to proceed to the station without stopping. Second, the expert is similarly wrong on the facts. Davi testified that Plaintiff was calling on his cell phone (creating a safety issue for the officer) so that's why he stopped (Exhibit B, Davi, pg. 143, ln. 1-8)

The expert also states that there was excessive force after Davi stopped his squad car on the way to the police station. The Seventh Circuit is clear, however, that "expert opinion" on whether an officer's actions constitute excessive force are not appropriate. *Thompson v. City of Chicago*, 472 F.3d 444, 457-458 (7th Cir. 2006)

In an analysis <u>directly</u> applicable here, the Seventh Circuit in *Thompson* stated:

> Whatever insight [the expert witnesses] might have had into whether or why [defendant] used excessive force would *have been of little value except as to possibility causing confusion and bore a substantial risk of prejudice.* The jury, after having heard all of the evidence presented, was in as good a position as the expert to judge whether the force used by the offices to subdue Thompson was objectively reasonable given the circumstances in this case. Introducing two experts to testify that Officer Hespe used excessive force would have induced the jurors to substitute their own independent conclusions for that of the experts.

(emphasis added)

The Seventh Circuit in clear language does not believe excessive force expert opinion should be allowed.

7.    **Opinion 7 Adopting Plaintiff's "Facts" Does Not Assist the Jury**

Opinion 7 merely repeats the Plaintiff's version of events that the officers allegedly used racially inappropriate language (which the officers deny). In this expert opinion, the expert has done nothing more than lend credibility to the plaintiff's version of events in claiming that the

officers used racial language. This is impermissible. *S.E.C. v. Lipson,* 46 F.Supp.2d 758, 763 (N.D. Ill. 1999)(proposed expert barred; use of expert to endorse credibility of defendants' testimony would improperly "invade, and perhaps usurp, the jury's fact-finding function"). *Gregory v. Oliver*, Case No. 00 C 5984, 2002 WL 31972165(N.D. Ill. Dec. 27, 2002(J.Shadur). (expert report that merely repeats one side's version of events does not assist jury and must be barred);

**8.    Opinion 8 Is Merely Reasserting Plaintiff's Version of Events and Is Improper**

Opinion 8 claims that the officers "made" Plaintiff stand naked in the lock up and that was unprofessional. Again as in Opinion 7, this is merely crediting Plaintiff's version of events, so it is improper and does not assist the jury in deciding any claim. Moreover, Officer Smetters testified that he told Plaintiff that the string in his sweat pants would have to come out, and Plaintiff refused, or could not take it out, so he took off his pants, Smetters cut out the string, and then gave the pants back to Plaintiff. Significantly, Smetters testified that Plaintiff <u>refused</u> to put back on his pants, so it was his decision to stand naked. No expert is needed to decide this simple factual issue (to the extent relevant), making the expert opinion improper (Exhibit E, Smetters Deposition, pg. 102, ln. 1-6).

**10.    Opinion 10 Is On Excessive Force and the Credibility of the Plaintiff and is Improper**

Opinion 10, while not entirely clear, admits that Plaintiff refused to come out of his cell when instructed, and so the officers had to drag him out and the expert opines that Plaintiff did not resist arrest after that, and the officers used excessive force. He claims these alleged actions were against "proper police practices." As before, there is no analysis of the "how" and "why" he comes this conclusion, and he fails to describe exactly what these "procedures" are; again these are bare conclusions not allowable under Rule 26. Moreover, the expert is findings facts as to whether Plaintiff was resisting arrest and that the force was excessive. Again he is usurping the function of the judge and the jury. As referenced before this is not proper expert testimony under *Thompson.*

He also claims Sergeant Hilliard used a "police control technique" on plaintiff's thumb, but fails to describe what this technique actually is or "how" it was allegedly used. Again this is

conclusory and violative of Rule 26. And as before, he opines the force was excessive, but that is not allowed under the Seventh Circuit and *Thompson*. 472 F.3d at 458.

### 11.    Opinion 11 Is Insufficient

Under Opinion 11, the expert states that all three defendants "failed" to appear at Will Count Court on the criminal case against Plaintiff. It is unclear how this assists the jury on the claims at issue here. But more importantly, the expert again is usurping the fact finding province of a jury; even if this fact was relevant. Just as in *Thompson*, the jury would, after hearing the evidence, need no expert help determine the fact (assuming it is relevant etc) of whether the officer "failed" to show up or were never "told" to show up. This opinion thus does not "assist" the jury.

### E.    None of the *Daubert* Reliability Factors Have Been Met

In addition to the problem with the Report under Rule 26 and the fact that many of the so-called opinions do not assist the jury, or are legal opinions, none of the opinions satisfy any of the *Daubert* factors. His report has no testing or other indicia that could possibly come close to the *Daubert* standard. Consequently, his opinions fail all of the *Daubert* factors.

In determining reliability under the second prong, *Daubert* also sets forth the following non-exhaustive list of guideposts: (1) whether the scientific theory can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether the theory has been generally accepted in the scientific community. Here there is nothing in the report to even suggest any of these factors have been satisfied.

Moreover, even if there was a scintilla of reliability expressed (which there is not), it would be suspect anyway because again it is based almost exclusively on only Plaintiff's version of events. *See Gentieu v. Tony Stone Images/Chicago, Inc.*, 214 F.Supp.2d 849 (N.D. Ill. 2002)(proffered expert's methodology is suspect because of "his unquestioning reliance on what [his client] told him as the basis for his various conclusions").

The Seventh Circuit is clear that if an expert does not have an explanation behind or empirical support for his opinions, he offers merely an improper bare conclusion. *McMahon v. Bunn-O-Matic Corp.*, 150 F.3d 651, 658 (7th Cir.1998); *see also Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 418 (7th Cir.2005)(an expert cannot rely merely on their own intuition and experience).

12

**F.　The Report Fails the Advisory Committee Factors**

Although failure under the *Daubert* factors is enough to warrant exclusion, as referenced above, the advisory committee notes under Rule 702 offer five additional factors for testing expert opinions.

The first factor asks "whether the expert is proposing to testify about matters growing naturally and directly out of research he has conducted independent of the litigation, or whether he has developed his opinions expressly for purposes of testifying." Here there is no question the expert opinion was related completely to his hiring for this matter. He points to no studies or other specific expert research etc.

The opinion likewise fails to satisfy the second factor under the advisory committee notes, which asks "whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion." The term "accepted premise" is commonly understood to include either a premise that is generally accepted by the medical or scientific community, or one that is found in a recognized text, treatise, or other reliable source. There is absolutely nothing in the report that discusses any accepted premises. The expert is discussing in generic terms "police procedures" but provides nothing more than that.

The third factor under the advisory committee notes asks "whether the expert has adequately accounted for obvious alternative explanations." Here there are none mentioned by the expert, and most of his "opinions" where based on either the Plaintiff's versions of facts, or as explained above, the testimony of the witnesses specifically demonstrated alternative explanation that refutes the asserted opinions that were apparently ignored by the expert.

The fourth factor under the advisory committee notes asks "whether the expert is being as careful as he would be in his regular professional work outside his paid litigation consulting." There is nothing demonstrating that here.

**IV.　CONCLUSION**

Because the report is severely deficient, it must be struck and any expert testimony barred.

Respectfully submitted,

By:　s/Craig G. Penrose

13

Craig G. Penrose
Attorney for Defendants
Tressler, Soderstrom, Maloney & Priess
Sears Tower, 22nd Floor
233 South Wacker Drive
Chicago, Illinois 60606-6399
(312) 627-4000
(312) 627-1717 (Fax)
E-mail:cpenrose@tsmp.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2008, I electronically filed the foregoing paper with the Clerk of

the Court using the ECF system which will send notification of such filing to the following:


Russell Ainsworth
Loevy &Loevy
312 N. May Street
Suite 100
Chicago, Il 60607
Russell@loevy.com


   **Attorney  for  Plaintiff  Timothy
Brownlee**



                                                                              s/Craig G. Penrose