CGP/436479                                                                        6121-213

## IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY BROWNLEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 07 C 7085 |
| VILLAGE OF BOLINGBROOK, | ) | |
| BOLINGBROOK POLICE OFFICER DAVI, | ) | Judge Ruben Castillo |
| BOLINGBROOK POLICE OFFICER | ) | |
| SMETTERS, and BOLINGBROOK POLICE | ) | |
| SERGEANT HILLIARD, | ) | |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

**ALL DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION
TO STRIKE EXPERT REPORT OF PLAINTIFF**

Craig G. Penrose
Tressler, Soderstrom, Maloney & Priess, LLP
Sears Tower, 22nd Floor
233 South Wacker Drive
Chicago, Illinois 60606
312/627-4000

**ATTORNEYS FOR ALL DEFENDANTS**

I.    **There Was No Timely Compliance Under Rule 26(a)(2)(A)**

As explained in Defendants' Opening Memorandum, 26(a)(2) has two parts, a disclosure of all experts to give testimony under 702 and further, any "specifically retained" expert has to produce a report. Defendants' issue is with the required disclosure. *Musser v. Gentiva Health Services, Inc.,* 356 F.3d 751, 755 (7th Cir. 2004).

Plaintiff does not explain what "substantial justification" he had for failing to produce the disclosure itself. Moreover, even a month later, Plaintiff finally provided the disclosure only after Defendants pointed out the failing. The Seventh Circuit in *Musser* also seemed to find this failure to be significant, even if the person to give expert testimony was previously deposed. *Id.* Not to elevate form over substance, but this short coming seems to be significant under the Seventh Circuit jurisprudence.

II.    **The Entire Report Improperly Addresses "Police Procedures"**

Both the expert report and Plaintiff's response start from the fundamentally incorrect assumption that somehow "police practices" have anything to do with whether the individual defendants caused a violation of the Constitution. The Seventh Circuit is clear that not only are "police procedures" completely irrelevant to constitutional violations, but any claims of a violation of state law or police procedures should be excluded from the jury." *Thompson v. City of Chicago*, 472 F.3d 444 (7th Cir. 2006).

For starters this is clear because at bottom, a claimed expert opinion on police procedures does not assist the jury. As noted in *Thompson*, "evidence is relevant when it has "any tendency to make the existence of any fact that is *of consequence to the determination of the action* more probable or less probable than it would be without the evidence." Fed.R.Evid. 401(emphasis added).

The *Thompson* court stated in stark terms "what's more, this court has consistently held that 42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices." *Id.* (citing *Scott v. Edinburg,* 346 F.3d 752, 760 (7th Cir.2003); *see Pasiewicz v. Lake County Forest Preserve Dist.,* 270 F.3d 520, 526 (7th Cir.2001); *Soller v. Moore,* 84 F.3d 964, 969 (7th Cir.1996). *In other words, the violation of police regulations or even a state law is completely immaterial as to the question of whether a violation of the federal constitution has been established.*"(emphasis added)

1

### III.     Opinion #1-Arresting for No License

Plaintiff claimed his purported expert will assist the jury because a "reasonable police officer" <u>should</u> have arrested Plaintiff for not driving with a license.  This argument fails on numerous grounds.  For starters there is no constitutional "right" to be arrested.  The constitution only prohibits arrest without probable cause.

Moreover, Plaintiff completely fails to point to "how" and "why" the expert came to this opinion.  Plaintiff points to no study or body of expert law that requires an officer to arrest someone when not driving with a license.  And more importantly, the expert completely fails to given any indication how the fact that someone who is not arrested for allegedly driving without a license would be more likely to have their license with them, or more likely to produce a license rather than lie about their name.  At bottom, the expert opinion seems based on nothing more than improper speculation.  Moreover, even if Plaintiff's Response had made some reference, that is irrelevant because the report must rise or fall on its own.

Moreover, Plaintiff fails to acknowledge that this specific issue on the arrest is a credibility issue.  Namely, will the fact finder believe the officer in that Plaintiff gave a false name (as backed up by the contemporaneous audio transmission to dispatch where one can hear Officer Davi calling in the false name), or does the jury believe Plaintiff that the officer was "confused."  Plaintiff is trying to "bootstrap" his version of events through a purported expert opinion.  The jury can make that factual determination to the extent relevant and needs no expert help, thus the expert opinion does not assist the jury in that regard.

Plaintiff's argument and the expert report also confuses the issue as to what <u>Officer Davi</u> was aware of.  As noted by Defendants' in the Opening Memorandum, Officer Davi testified that he did <u>not see</u> who was driving Plaintiff's car when it returned to Plaintiff's residence (Defendant's Brief, pg. 7).  So whether Plaintiff was <u>actually</u> driving is irrelevant.  So that fact is undisputed from Officer Davi's perspective. Officer Davi claims he did not see who was driving, so even if Plaintiff was driving (and supposedly driving without a license), Officer Davi would not have cited him for failure to drive with a license because he did not know who was driving.

Both the expert report and Plaintiff's response proceed from a fundamental misunderstanding of probable cause in this regard.  They ignore what <u>Officer Davi knew</u> and claim Plaintiff should have been arrested because supposedly he says he was driving with his license. But as is well known, a probable cause inquiry is based " 'not on the facts as an

omniscient observer would perceive them but on the facts as they would have appeared to a reasonable person in the position of the arresting officer- *seeing what he saw, hearing what he heard.'"* *Kelley v. Myler,* 149 F.3d 641, 646 (7th Cir.1998).

This argument also ignores the fact that the expert could not even provide in his report what alleged statute was violated for "not arresting" Plaintiff, Defendants presumed that in their Opening Memorandum (Defendant's Memorandum, pg. 7). This opinion is deficient in that it fails to provide the "how" and "why," is based on an erroneous assumption of what Officer Davi knew, and does not help the jury. And of course under *Thompson,* police procedures are irrelevant to whether the constitution was violated.

### IV.    Opinion # 2 & 3

Plaintiff obviously recognizes Opinions 2 & 3 are insufficient and has agreed to withdraw them.

### V.    Opinion # 4-Asking for ID

Plaintiff's response concerning Opinion # 4 attempts to "cherry pick" several snipets from the case law and Defendant's Police Manual and ignores the substantive issue in his own complaint. The expert opinion in Opinion 4 states that Officer Davi "should have" asked both Plaintiff and the person who called emergency 911 for printed identification. Plaintiff's theory is that he gave his license to Officer Davi and the officer somehow got "confused" and thought he was given a false name and thus he was arrested without probable cause. Officer Davi maintains that Plaintiff told him had no license with him and then gave a false name (again as noted by the copy of the audio transmission of Officer Davi calling in the false name).

Plaintiff's response is completely silent (and thus obviously concedes) the expert has failed to provide the "how" and "why" he comes to this supposed opinion of some so called unknown "police procedure" that requires an officer to 100% of the time ask for printed identification of all parties, or more importantly how that relates to the issue here. Again, the opinion is insufficient.

Even ignoring that fatal flaw, whether Officer Davi asked for identification of the people who made the emergency 911 call (that Plaintiff was threatening them), is irrelevant to whether there was probable cause to arrest Plaintiff based on what the Plaintiff did. Whether Officer Davi asked the 911 callers for printed ID or simply their name, does not make the fact of whether Plaintiff lied about his name no more or less likely and thus fails under Ev. Rule 401 etc. And

more significantly, at a minimum, the opinion does not assist the jury in this factual dispute and is nothing more than an expert opinion "propping up" Plaintiff's factual claims.

And in *Thompson*, even if there *was* some as yet unnamed procedure that required an officer to ask for identification in every circumstance, that is irrelevant. If the fact finder believed Officer Davi, he had probable cause for arrest on that charge regardless of whether he even asked the 911 callers their names.

Plaintiff also completely fails to explain "what" procedure the expert is relying upon in stating that Officer Davi should have asked the 911 callers for ID. Is this alleged procedure written down? Is it published? Has it been tested and is it reliable under *Daubert*? In essence, Plaintiff's argument boils down to a single mantra concerning the expert; "trust me." But as noted by the Seventh Circuit, courts are not allowed to "take . . on faith" whatever a paid expert claims. *Minasim v. Standard Chartered Bank, PLC,* 109 F.3d 1212, 1216 (7th Cir. 1997).

Plaintiff's citation to *Walker v. Soo Line RR. Co.,* 2008 F.3d 581, 591 (7th Cir. 2000) does nothing to help (Plaintiff's Response, pg. 5). In that case, the specific issue (ignored by Plaintiff) was whether the qualifications of an expert were met. The Seventh Circuit merely stated that a person's qualifications to be an expert can be demonstrated through experience. The substance of the expert's opinion in *Walker* (the expert at issue was an electrical engineer) was not discussed. Plaintiff's reliance on *Walker* is misplaced.

Plaintiff further seems to extrapolate from that snippet in *Walker* that the "experience" of an expert dispenses with the need to fully comply with substantive requirements under Ev. Rule 702 and the *Daubert* factors outlined in Defendants' Opening Memorandum. As explained, the report (and Plaintiff's response) are completely silent on any suggestion that this opinion meets any of the *Daubert* factors, and of course it is plaintiff's burden to do so. *Bradley v. Brown,* 852 F. Supp. 690, 697 (N.D. Ind.), *aff'd,* 42 F.3d 434 (7th Cir, 1994)

Finally, Plaintiff weakly points to a Memorandum issued by a Bolingbrook Assistant Chief of Police in 2004 (Plaintiff's Response, pg. 6). For starters, the expert never mentioned this Memorandum, so it clearly is not part of his report and cannot be consider in this context. Second, the Memorandum actually dooms Plaintiff's argument. In discussing the recent (at that time) case of *Hiibel v. Sixth Judicial District,* 542 U.S. 177 (2004) the Memorandum noted there is no law that requires a person to carry a license at all times, but that is frequently the best proof of a person's identity. However, (and ignored by Plaintiff) the next sentence of the

Memorandum states "It appears that if a subject verbally provides his/her name at the request of an officer during an investigative stop, that may be sufficient') (See Plaintiff Ex. D)

## VI.    Opinion # 5-Allged Failure to Frisk

This opinion was that Officer Davi employed an "improper technique" by failing to frisk/search Plaintiff at his residence before putting him in the squad car after he was formally arrested. Again *Thompson* provides the result here as a violation of some unknown "procedure" does not equate to a constitutional violation.   Plaintiff's response admits as much as he specifically states he is trying to demonstrate alleged non compliance with police procedures rather than a constitutional violation of "failing" to search Plaintiff (Plaintiff's Response, pg. 7).

Moreover, and as before, Plaintiff's expert completely fails to demonstrate what procedure was violated.   Where is this procedure, is it written down?   Must an officer always perform a search and inventory at the scene before transport?   What about the countervailing argument, that officers should not do a complete inventory on the scene (other than take weapons etc.) as that may expose them to claims of "stealing" a person's property or losing it somehow, rather than inventorying a person's property in the secure booking room (which is on video). And the undisputed fact that Plaintiff had a cell phone and was attempting to call during the ride to the police station does not mean (as the expert report suggests) that he was not searched for dangerous weapons prior.

## VII.    Opinion # 6 Stopping Enroute to the Police Station

This opinion was that Officer Davi should have never stopped on enroute to the police station.  Plaintiff concedes (by his silence) that the expert provides no rationale for coming to this opinion, and of course a violation of some unknown "police procedure" is irrelevant under *Thompson*.  Also Plaintiff's response seems to make the argument that Davi pulled over because Plaintiff was allegedly recording "racist" speech.  However, the expert's opinion does not make that statement, so it cannot be considered in evaluating the report.

Plaintiff also admits the expert did not think the alleged force (again Davi claims he never even took Plaintiff out of the squad car, so Davi maintains there was no force) was excessive. And more fundamentally, Plaintiff fails to demonstrate how stopping enroute is any type of constitutional violation.

### VII.    Opinion # 7-Alleged Improper Racial Slurs

Plaintiff ignores and misses the thrust of the reason Opinion No. 7 should be excluded. This opinion stated that the alleged racial slurs Plaintiff claimed Officer Davi made are unprofessional and RACISM (capitalization in original). Davi denies making such statements. The opinion should be excluded because it adopts the Plaintiff's "version" of events <u>and</u> does nothing <u>more</u> to assist the jury. The expert does nothing to demonstrate how he is an expert on interpreting or examining alleged "racist" language, so how can he help the jury by this opinion? Moreover, even if he was a so called expert that does not give him "carte blanche" to make opinions on the meaning of certain alleged racist language (which of course the officers deny ever making). Moreover, the proponent of expert testimony must show "a grounding in the methods and procedures of science which must be based on actual knowledge and not subjective belief or unaccepted speculation." *Mitchell v. Gencorp. Inc.,* 165 F.3d 778, 780 (10th Cir.1999). Obviously here nothing like that is demonstrated.

Plaintiff's reliance on *United States v. Hall*, 93 F.3d 1337, 1345 (7th Cir. 1996) is completely misplaced and actually makes Defendants' point (Plaintiff's Response, pg. 8). In that case, the expert was a medical expert that was going to opine that the criminal defendant had a psychological condition that caused him to improperly confess to "obtain approval." This was a medical opinion (the substance was not even challenged) to demonstrate the jurors might want to assess the "so called" real reason the Defendant confessed. Contrary to Plaintiff's claim here, in that case no one disputed the actual confession itself, the issue was a medical reason why the confession might not be valid beyond its face.

As explained by the *Hall* court, "even though experts are entitled to give their opinion on an ultimate issue in the case, . . this does not mean that the opinion may be given divorced from the scientific, medical or other expert basis that qualified the witness in the first place. *Id* at 1344. That is the exact point here, how does he demonstrate he is an expert on "racist language." What studies has he done or performed? Lastly, there is no special "science" the expert needs to assist the jury. The jury can form whatever opinion it desires on whether Officer Davi made those statements and what weight if any to attach to them assuming they are admitted and actually. This opinion does not assist the jury.

### IX.    Opinion No. 8 – Plaintiff In Booking Room

Both Plaintiff and the expert report completely fail to explain how the opinion that the officers "made" him stand NAKED assists the trier of fact.  As before, the expert vaguely claims some violation of a an unknown police procedure, but fails to demonstrate what that is, and *Thompson* excludes that anyway.   Putting aside for the moment the completely factual inaccuracy of the expert's statement, as the video (which again the expert reviewed) shows he was not in fact "naked" as he had a shirt on.  Moreover, the video shows, consistent with Officer Smetters testimony, that he offered the pants <u>back</u> after the string was taken out and <u>Plaintiff</u> refused.

And Plaintiff nor the expert demonstrate why an expert is even needed in this regard. Assuming for the moment that plaintiff was actually naked, the jury can draw its own conclusions as to Plaintiff's claim of being naked and assign what even weight it desires to that fact.

### X.    Opinion No. 9

This Opinion makes no sense.  The expert claims he should have arrested Plaintiff for disorderly conduct initially, but then the expert claims there was no probable cause to arrest him on disorderly conduct.  The expert is also giving a legal opinion on what constitutes probable cause.  This is improper.

### XI.    Opinion No. 10

This opinion is grossly defective.  It "describes" the evidence of what occurred at the booking room and states that that Plaintiff was "not resisting" and what the officers did was against proper police procedures.  Although the expert does not indicate specifically , it is clear that he is viewing the video of the police lock up and booking area and providing this commentary (See Expert report, pg. 2, Ex. J, he reviewed the video).  First of all, the jury can view the video, they do not need the expert to "interpret" it for them.  Second of all, this <u>Court</u> can view the video and determine as a matter of law whether there was excessive force. *Scott v. Harris*, 127 S.Ct. 1769, 1776, n.8 (2007)(determining whether force was excessive in light of undisputed facts in video is a pure issue of law).

This opinion also fails to meet the requirements as stated in each of the other opinions. Simply, what unknown "police procedure" as the expert appears to reference states that an officer is to comply with a detainees request for his "shoes," whenever he wants them. *Colon v.*

*Schneider,* 899 F.2d 660, 669 (7th Cir. 1990)(prisons not democracies). Even the expert admits plaintiff was non compliant in that he <u>refused</u> to come out of the cell when he was instructed and wanted his shoes first! (Expert Report pg. 4) And what "police procedure" dictates the force used was excessive in this case, for even the expert admits the Plaintiff was not compliant in refusing to put his hands behind his back (the expert calls it "passive resisting"). The report and Plaintiff's response concede (again by silence) that the report is extremely deficient in that regard.

In addition, both the Plaintiff's response and the alleged expert opinion completely fails to explain what "technique" it is that Sergeant Hilliard allegedly applied. And even if he applied some unnamed technique, how is that excessive? Again, there is no "how" or "why" as to the procedure or technique used.

Plaintiff's attempt to distinguish the *Thompson v. City of Chicago*, 472 F.3d 444 (7th Cir. 2006) (Plaintiff's Response, pg. 9) is meritless. Contrary to Plaintiff's claim, the Seventh Circuit <u>upheld</u> the exclusion of expert testimony on the use of excessive force in that case. The Seventh Circuit's statement cannot be interpreted any other way: "Police regulations or even a state law is *completely immaterial* as to the question of whether a violation of the federal constitution has been established." *Id.* at 454. (emphasis added). Obviously if something is "completely immaterial" it has no basis to be included in a trial.

And as concluded by *Thompson* "the jury after having heard all of the evidence presented, was in as good a position as the experts to judge whether the force used by officers to subdue Thompson was objectively reasonable given the circumstances in this case. *Introducing two experts to testify that Officer Hespe used excessive force would have induced the jurors to substitute their own independent conclusions for that of the experts*." *Id.* at 458 (emphasis added). In light of that holding, Plaintiff has no hope of using a so called "excessive force" expert.

Plaintiff does no better by claiming that a jury would be mistaken as to whether "police control techniques" are used to cause injury (Plaintiff's Response, pg. 10). As before, the expert opinion completely fails even describe what "control techniques" are being used or even what that terms means or even how a jury could "become confused." Plaintiff's bald conclusions must be ignored. But even ignoring that, a jury instruction will provide the law, not Plaintiff's expert, so he is not needed to explain that to the jury. Moreover, Plaintiff's claim that the expert has to

define "passive resistance" is just another what of "propping up" an expert opinion on excessive force, which *Thompson* states cannot be done.

Lastly, the expert states in conclusory fashion that the Plaintiff's thumb was broken as a result. But how does the expert allegedly know the thumb was broken?? He is not a medical doctor. He never stated he reviewed expert medical reports. This part of the opinion is also insufficient.

### XII.    Opinion No. 11-Failure to Appear At Criminal Hearing

Plaintiff attempts to resurrect this opinion by claiming that the officer was "unprofessional" for not showing up at court. Again the report points to no procedure that holds as such. But more importantly, such "expert" opinion does not assist the jury. Even assuming for the moment that it can be demonstrated that the officers were "told" the date to appear in court, and they consciously failed to show up, any lay person could understand that a failure to do as your employer tells you to do is not desirable. Expert opinion is simply not needed on this personnel issue.

### XIII.    The *Daubert* Factors Are Missing

Even after Defendants demonstrated that each of the 11 opinions are based on some unknown "police procedure" and that this is not admissible and the opinion completely fails to provide any "how" or "why," and the rationale behind the opinion, or how such opinions are the result of reliable principles, as required under Rule 26 and *Daubert,* Plaintiff still persists in claiming the report still meets the *Daubert* factors. Such a claim is meritless. (Plaintiff's Response, pg. 11).

As explained in detail, non of the opinions give the "how" or "why" and are thus just conclusions. Moreover, even if you could get past that problem, there is nothing to demonstrate these unknown "police procedures" are the product of reliable principles or can somehow be tested or scrutinized under *Daubert.* Plaintiff makes a slight reference to *Kumho Tire* in his brief. However, *Kumho,* in quoting *Daubert,* is the downfall of this report. As noted by the Supreme Court "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Kumho Tire, Ltd v. Carmichael,* 526 U.S. 137, 157, 119 S.Ct. 1167, 1179 (1999)(citing *Daubert* 522 U.S., at 146, 118 S.Ct. 512). That is the entire basis of the report. The *ipse dixit* ("because I say so") as intimated by the expert on all 11 opinions on some unknown "police

procedure" is insufficient.

Plaintiff's reliance on *Bryant v. City of Chicago*, 200 F.3d 1092, 1098 (7th Cir. 2000) is also misplaced. That was a Title VII case on the disparate impact of a lieutenant's exam. The expert for the Defendant who had devised the exam itself stated it was based on meticulous research and the expert himself had authored over 50 articles on the science of the specific criteria of job performance as related exam evaluation. The expert discussed various specifics as translated into the exam and the correlation between the two. Thus, the expert in *Bryant* provided overwhelming "how" and "why." That is nothing like the expert's opinion here of vague repeated references to unknown "police procedures" to "prop up" his opinion. Lastly, the *EEOC v. Caterpillar, Inc.,* 2004 WL 2092003 (N.D. Ill. 2004) case referenced by Plaintiff was about lay opinion testimony, not experts, that case irrelevant and it is unclear why Plaintiff even cited it.

### XIV.   Conclusion

The report fails under Rule 26, EV. Rule 702 and Daubert and must be stricken.

Respectfully submitted,

By: s/Craig G. Penrose

Craig G. Penrose
Attorney for Defendants
Tressler, Soderstrom, Maloney & Priess
Sears Tower, 22nd Floor
233 South Wacker Drive
Chicago, Illinois 60606-6399
(312) 627-4000
(312) 627-1717 (Fax)
E-mail:cpenrose@tsmp.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 21, 2008, I electronically filed the foregoing paper with the Clerk of

the Court using the ECF system which will send notification of such filing to the following:

Russell Ainsworth
Loevy &Loevy
312 N. May Street
Suite 100
Chicago, Il 60607
Russell@loevy.com

**Attorney for Plaintiff Timothy
Brownlee**

s/Craig G. Penrose