CGP/435056 6121-213

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TIMOTHY BROWNLEE,<br><br>Plaintiff,<br><br>v.<br><br>VILLAGE OF BOLINGBROOK, BOLINGBROOK POLICE OFFICER DAVI, BOLINGBROOK POLICE OFFICER SMETTERS, and BOLINGBROOK SERGEANT HILLIARD,<br><br>Defendants. | No. 07 CV 7085<br><br>Judge Ruben Castillo |

**MEMORANDUM OF ALL DEFENDANTS**
**IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Craig G. Penrose
Tressler, Soderstrom, Maloney & Priess, LLP
Sears Tower, 22nd Floor
233 South Wacker Drive
Chicago, Illinois 60606
312/627-4000

**ATTORNEY FOR ALL DEFEDANTS**

## I. Introduction

Plaintiff filed a 12-count complaint under 42 U.S.C. § 1983 and also asserted various state law causes of action. In a nutshell, Plaintiff alleges that he was falsely arrested on May 28, 2007, (Memorial Day) and claims that he was subject to excessive force later when he was taken to the police station for processing and at the police station. As explained below, summary judgment is proper on all counts.

## II. Undisputed Material Facts

### C. Plaintiff Threatens his Neighbor, and He Calls Emergency 911

On May 28, 2007, Jerome Pausche was sitting on his porch in front of his house at 4 Rye Court, Bolingbrook, Illinois (S 3) ("S _" shall refer to Defendants' Rule 56.1 paragraphs). At that point, Plaintiff got in his car with his "wife or girlfriend" and they backed out of his driveway (next door to the Pausches), and Pausche heard Plaintiff say something to his children to the effect of "don't let that man do anything to you or say any thing to you or you let me know" (S 4). Pausche then said to Plaintiff "I heard what you said." (S 5). Pausche testified at that point, Plaintiff "starting getting out of his car and started coming towards me," and Plaintiff said "I meant for your mother fucking white ass to hear that." (S 6). At that point, Mr. Pausche turned around went into the house and called 911 (S 7). Mr. Pausche testified that Plaintiff had walked towards him in a "menacing" way (S 8). Mr. Pausche testified that he told 911 that he was "being threatened by his neighbor again" (S 9). At that point, Mr. Pausche believes Plaintiff had driven away (S 10). When a Bolingbrook Officer arrived at the Pausches' house, Mr. Pausche testified that he told the officer everything that had just happened immediately prior with Plaintiff (S11).

### D. On May 28, 2007, Officer Davi Receives a Dispatch That A 911 Call Was Received That Plaintiff is Threatening His Neighbors and Investigates

On May 28, 2007, Officer Davi received a call from dispatch to Rye Court, Bolingbrook (S 12). After Officer Davi arrived, he spoke with Mr. and Mrs. Pausche outside in the front of their house (S 14). According to Officer Davi, the Pausches told Officer Davi they called the police via 911 "because they got into another verbal altercation when they were outside, and Mr. Brownlee was driving away, and they started cursing – started cursing at them and they were cursing back, and they [the Pausches] became in fear, and they notified the police." (S 16).

### E. Plaintiff Returns to His Residence, Speaks with Officer Davi

While Officer Davi was speaking with the Pausches, Plaintiff returned back to his house, next door to the Pausches (S 17). Officer Davi then went over to speak to Plaintiff in the

driveway of his residence (S 18). After a few minutes, Officer Davi asked Plaintiff for identification (S 19). Officer Davi maintains that Plaintiff did not produce any identification when asked by Officer Davi (S 22). Officer Davi then asked for a name and date of birth, Officer Davi maintains that Plaintiff told him his name was "Timothy Sandifer" (S 23). When Officer Davi "ran" the name Timothy Sandifer it came back "no record" (S 24). Officer Davi stated when he called the name "Timothy Sandifer" over his radio, he was standing next to Plaintiff (S 25). Officer Davi told the Pausches and Plaintiff to stay away from each other, and at that point Officer Davi went to sit in his patrol squad to further "run" Plaintiff's name (S 26, 27). Ultimately, Officer Davi ran the license plates of the vehicles sitting in Plaintiff's driveway and one vehicle came back under the name "Timothy Brownlee" (S 28).

Plaintiff maintains he gave Officer Davi his drivers license that contained the name Timothy Brownlee and did not give the officer the name Timothy Sandifer (S 29). Plaintiff states that after he handed his license to Officer Davi, he was "arms length" away from the Officer Davi (S 30).

**F. Officer Davi Arrests Plaintiff for giving a False Name/Obstruction of Justice**

After he determined Plaintiff's name was Timothy Brownlee, Officer Davi testified he then went back up to the door of Plaintiff's residence and knocked on the door and Plaintiff came outside (S 31). Officer Davi states he told him "your name isn't Timothy Sandifer, it is Timothy Brownlee" (S 32). Officer Davi maintains that in response to the question concerning his name, Plaintiff said "what are you going to do about it?" (S 33). In response, Officer Davi told Plaintiff he was under arrest for obstructing justice, and he told Plaintiff to step outside, and to put his hands behind his back (S 34). According to Officer Davi, Plaintiff stepped outside, turned around and allowed Officer Davi to handcuff him on the porch without incident (S 35).

According to Plaintiff, the officer came to his front door and said that Plaintiff told him that he did not give him the name Timothy Brownlee (S 36). Plaintiff states he was told by the officer to step out on the porch, and after stepping outside, he was then handcuffed and he was told he was arrested for "giving wrong name." (S 37).

**G. Officer Davi Begins to Take Plaintiff to Police Station, But Stops Enroute**

After placing Plaintiff in the squad car, Officer Davi transported him to the Bolingbrook Police Station (S 39). According to Officer Davi, he had to stop enroute to the Bolingbrook Police Station because Plaintiff "was becoming disruptive in the back of the squad car, "spitting,

kicking, screaming," and was also starting to use his cell phone (S 40). Plaintiff admits he was calling someone on his cell phone (S 41).

Officer Davi testified that he wanted to retrieve the cell phone from Plaintiff for officer safety because "he [Plaintiff] could be calling somebody to tell them where we were to come and do something to me[Davi] to get him out of the back of that squad car. (S 42). Officer Davi opened the back door to the squad after he stopped and grabbed Plaintiff's cell phone (S 44). Officer Davi then shut the back seat door, got back in the car, put it in drive, and went to the police station (S 45). Officer Davi also told dispatch when he stopped and when he was back enroute to the police station (S 43, 46).

**H. Plaintiff Claims The Officer Took Him Out of the Squad Car Enroute.**

Plaintiff maintains that after the squad car stopped while enroute to the police station, Office Davi grabbed the handcuffs and "snatched" Plaintiff out of the car backwards (S 47). Plaintiff maintains after he was out of the car, he was pulled up to standing and then was "punched in the stomach," but Plaintiff does not know whether it was with an open or closed fist. He claims that then Officer Davi grabbed his testicles (S 48).

**I. Plaintiff Arrives at the Police Station And Is Non Compliant With Booking**

Upon arriving at the Bolingbrook police station, Plaintiff was taken to the booking room (S 50). Officer Davi stated that Plaintiff would not give any information such as height, weight, emergency contact, and Social Security number and refused to have his picture taken as part of the booking process and refused to sign the release of his property, and his Arrest and Booking form also indicates the same (S 51, 52, 53). Sergeant Hilliard was notified that Plaintiff had refused to comply with the booking procedures, and that is why Sergeant Hilliard came into the booking room (S 54). Officer Davi testified that he told Plaintiff that he was being charged and he was going to be processed and released, but if he refused to comply with being processed he was going to be held then transferred to the Will County Adult Detention Facility (S 55). Officer Davi's Arrest and Booking form indicated that Plaintiff was arrested and charged with obstruction of justice, disturbing the peace, and resisting arrest (S 56).

**J. Plaintiff's Time in the Bolingbrook Police Station is On Video**

After being placed in a detention cell, the Video reveals that Officer Smetters opened

Plaintiff's cell door at 15:27 p.m. (S 62)[1]. Plaintiff states that when the officer came to his cell and opened the door, the officer told him to come out, but Plaintiff testified that he told the officer he wanted his shoes first (S 63). Officer Smetters stated that he told Plaintiff that the protocol is a detainee gets his shoes in the booking area after getting out of his cell (S 64). Due to Plaintiff's failure to come out of his cell, Officer Smetters and Officer Hilliard dragged Plaintiff out of his cell. Officer Smetters stated Plaintiff remained limp and would not get up (S 66).

Once Plaintiff was drug into the booking room, he was told to put his arms behind his back. At that point he stiffened his arms and would not allow the officer to move his arms behind him (S 67). The Video reveals that after Plaintiff was dragged into the booking room, Plaintiff had his arms "straight out" from his body and he was spinning around rather than placing his hands behind his back (S 68). Plaintiff admits the officers were telling him to "quit resisting" when he was on the floor of the booking room after he was taken out of his cell (S 69).

The Video reveals that Plaintiff was not punched or kicked or beaten while in the booking room after he was taken out of his holding cell (S 70). The Video reveals Officer Smetters was holding on to Plaintiff's left arm and Sergeant Hilliard was holding on to his right arm and Officer Davi was holding on to Plaintiff's head (S 71). Officer Davi testified he was "trying to control his head so he wouldn't head butt any of the officers as they were trying to handcuff him" (S 70) The Video reveals it took the three officers 20 seconds to get Plaintiff's hands behind his back to handcuff him when he was in the booking room (S 73).

**K. Plaintiff Complains of Injury and Is Taken to the Hospital.**

After Plaintiff was handcuffed, he stated he could not get up because of a cramp in his leg and his back hurt and he asked to see a doctor (S 74). The paramedics arrived, they transported Plaintiff to the hospital (S 75).

**L. Medical Records Demonstrates the X-Ray States His Thumb is Not Broken**

The radiology report of an x ray of the hand and thumb that was taken at the hospital on May 28, 2007, (provided by plaintiff in this litigation) indicates there was no fracture of the hand or thumb noted. (S 76).

**M. The Will County State's Attorney Prepared a Criminal Complaint**

Officer Davi stated that Bolingbrook Police Officers do not prepare criminal complaints

[1] This is intended as a summary of the video. The entire video as been presented in the Rule 56 Statement as an Exhibit and the Defendants will obviously differ to the court's viewing as was done in *Scott v. Harris*.

in Will County for prosecution (S 77). The criminal complaint against Plaintiff shows that Officer Davi did not prepare or sign the charge of obstructing justice (S 78). The Certified Court Disposition from Will County Circuit Court found probable cause for that charge (S 79). On 9/20/07, the Criminal Docket reflects the criminal case was "nolle prosequi" (S 80).

## III. Argument

### A. Standard for Summary Judgment

Under Fed. R. Civ. P. 56, any alleged factual dispute must have the potential to affect the outcome of the suit under the applicable law in order to preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 91 L.Ed. 202, 106 S. Ct. 2505 (1986). When the non-moving party fails to establish 'the existence of an element essential to that party's case summary judgment is proper . *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### B. Summary Judgment is Proper on Count I and II (Excessive Force/Battery)

Although excessive force claims usually cannot be resolved at summary judgment given the different versions of events, this case is different. As noted by the Supreme Court, a party cannot "contradict" a video record. *Scott v. Harris*, 127 S.Ct. 1769, 1776 (2007). Thus, the video here removes any "disputed" fact, thus there is no excessive force as a matter of law. *Id.*, n.8 (determining whether force was excessive in light of undisputed facts is a pure issue of law).

#### 1. The Correct Standard is Under The Eighth Amendment

It is beyond dispute that Plaintiff's claim of excessive force occurred long after the arrest and after he had been in custody. The Seventh Circuit has held that the Due Process Clause of the Fourteenth Amendment protects pretrial detainees in a detention setting under the standards of the Eighth Amendment. *Zentmyer v. Kendall County,* 220 F.3d 805, 810 (7th Cir. 2000). Under the Eighth Amendment standard, a claim of excessive force may only be pursued when the force was undertaken to create "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Plaintiff must satisfy two components: (1) objectively, whether the inmate suffered serious harm in light of "contemporary standards of decency;" and (2) subjectively, whether the official had a culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 7, (1992). "Whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and

sadistically to cause harm." *Id.* 503 U.S. at 6-7.

In making this determination, a court may consider: (1) the extent of the injury suffered; (2) the need for the application of force; (2) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. *Id.*

Plaintiff may argue the Fourth Amendment applies under *Lopez v. Chicago*, 464 F.3d 711 (7th Cir. 2006). This is incorrect for several reasons. First, in *Lopez* the issue was continued detention and conditions of confinement, not force in a detention setting. Second, the Supreme Court has held specifically that there is no reason to distinguish between pretrial detainees and convicts in a detention setting. *Bell v. Wolfish*, 441 U.S. 520, 546, n. 28 (1979). Third, to make the assumption that the Fourth Amendment *always* applies before a probable cause hearing ignores the fact that in *Chavez v. Martinez*, 538 U.S. 76, 774 (2003) the Court applied the Fifth Amendment to issues arising after arrest and before a probable cause hearing (plaintiff was in a hospital). The courts have also rejected the idea of a "continuing seizure" under the Fourth Amendment. *Wiley v. City of Chicago*, 361 F.3d 994, 998 (7th Cir. 2004). Finally, the Seventh Circuit held in *Burton v. Ruzicki*, 258 Fed.Appx. 882 (7th Cir. 2007) decided after *Lopez*, that force in a detention setting of pretrial detainee is under the Eighth Amendment. Regardless, in viewing the video it is clear the officers did not violate the objective "reasonableness" for use of force under the Fourth Amendment either. *Graham v. Connor*, 490 U.S. 386, 396 (1989) (courts examine (1) severity of crime, (2) whether suspect poses immediate threat; (3) whether suspect is resisting arrest).

**2. The Actions Were Not Malicious or Sadistic, But In A Good Faith Effort To Restore Order Based on the Non Compliance of Plaintiff**

In this case, the video is undisputed and dispositive. Officer Smetters was going to retrieve Plaintiff (S 63). Thus, Plaintiff needed to come out of his cell to be handcuffed when ordered. Smetters stated he specifically told Plaintiff to come out of his cell. Plaintiff admits that he was told to stand up and come out of his cell, and further admits he refused and stated he "wanted his shoes first"(S 63).

**Need for Force.** If a person cannot be persuaded to obey an order, some means of force must be used to compel compliance. *Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984). Plaintiff is under the misperception that while he was a pre trial detainee he could order the

officers to perform commands for him (i.e. get his shoes)! That is wrong. *Colon v. Schneider*, 899 F.2d 660, 669 (7th Cir. 1990)(prisons not democracies). Thus, dragging Plaintiff out of his cell when he refused to come out upon command, was certainly reasonably in light of his refusal.

The video then reveals that Plaintiff was on the ground and was drug out to the middle of the booking room where he sat on the floor. Further, the video reveals that when the officers attempted to handcuff him, Plaintiff had his arms extended straight out and began spinning around on the floor using his feet (S 68). This is completely contrary to behavior of an individual who is complying with being handcuffed and no reasonable juror could believe otherwise. Plaintiff even admits the officers were telling him to quit resisting (S 69). Any claim by Plaintiff that he was not resisting is contradicted by the record. *Scott*. And Plaintiff knew how to be handcuffed without incident as it had occurred earlier. Thus, the officers clearly were also justified in using reasonable force to get him handcuffed.

**Amount of Force.** The video demonstrates no punching, beating, or other excessive type action and no unusual twisting of his body or arms (S 70). Moreover, the entire handcuffing incident in the booking room lasted 20 seconds (S 73). The video demonstrates that the officers used reasonable force to get Plaintiff's hands behind his back when he refused to comply and held his arms straight out. The amount of force used is in proportion to his resistance and is not excessive under any standard. No reasonably jury could conclude otherwise.

**Threat Perceived.** A non compliant detainee in close quarters in the cell in booking clearly presents a perceived threat. *See Floyd v. Nelson*, Case No. 00 C 1079, 2002 WL 148396, *9 (N.D. Ill. 2002). Moreover, determining a threat in the detention context is on a "purely subjective evaluation, and on predictions of future behavior." *Hewitt v. Helms*, 459 U.S. 460, 474 (1983). Here, Plaintiff had been non-compliant in numerous ways (i.e. refused to be booked, refusing to come out of cell, refusing to be handcuffed)(S 51-53). Plaintiff's non compliance was at least a perceived threat.

**Extent of Injury**. Plaintiff claims that his thumb was broken, but he is not a physician so he cannot opine on that medical diagnosis of a "broken thumb." "Where injuries complained of are of such character as to require skilled and professional persons to determine the cause and extent thereof, they must be proved by the testimony of medical experts." *Franklin v. Shelton*, 250 F.2d 92, 97 (10th Cir.1957); *Walker v. Shansky*, 28 F.3d 666, 672 (7th Cir.1994). Moreover, the only objective evidence (provided by plaintiff no less) is a radiology report of an x ray of the

hand and thumb immediately after that indicates there was no fracture noticed (S 76). Thus, plaintiff has no admissible evidence that is thumb was actually broken as claimed (the opposite is shown), and thus, the alleged injuries are nothing more that claims of aches, bruising and pain.

Moreover, if Plaintiff had simply complied with being handcuffed the entire incident would have been avoided. This is significant. *Whitley*, 435 U.S. at 325. (rejecting excessive force claim of a prisoner shot in the leg during quelling of prison riot; Court reasoned, in part, that had he thrown himself to the floor and not demonstrated "equivocal conduct," he would have avoided harm). The video reveals no excessive force under either Constitutional standard.

**C. Plaintiff's Claim of Force Enroute to the Station is *De Minimus***

Plaintiff maintains that he was taken out of the squad car enroute to the police station when Officer Davi stopped, his arms where pulled up, he was punched in the stomach, but he does not know whether it was open or closed fist, and his testicles were allegedly grabbed (S 47, 48). While Officer Davi disputes all of this (other than stopping the car because Plaintiff was spitting and on his cell phone) that is not material at this point because even if the facts by Plaintiff are believed, there was no constitutional violation.

These claims by Plaintiff are de minimis. *Filmore v. Page*, 358 F.3d 496 (7th Cir. 2004)(using baton to apply pressure to wrists in handcuffs and between legs and shoving prisoner's face against bars de minimis); *DeWalt v. Carter,* 224 F.3d 607, 620 (7th Cir. 1999)(shove of prisoner against wall de minimis); *Riley v. Dotson,* 115 F.3d 1159 (4th Cir. 1997) (de minimis force from a welt from a slap on the face). Plaintiff has no evidence that these alleged acts were serious or that he received any type of medical treatment for those specific claims. There is no excessive force here.

**3. Judgment Is Required for Battery Count II**

All of the above is equally applicable to the state claim of battery, as under 720 ILCS 5/7-5, an officer is allowed to use reasonable force. If it is reasonable under 1983, it should reasonable under state law. And a public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct. 745 ILCS 10/2-202. There is no willful or wanton conduct.

**D. Judgment is Proper on Count III--Failure to Intervene under Section 1983**

To make a claim of failure to intervene, Plaintiff must prove (1) there was excessive force, *and* (2) the officer had a realistic opportunity to intervene." *Yang v. Hardin,* 37 F.3d 282,

285 (7th Cir.1994). A "realistic opportunity to intervene" may exist whenever an officer could have "called for a backup, called for help, or at least cautioned [the excessive force defendant] to stop." *Id.*

In this case, as referenced above, because there is no excessive force, there is no reason to intervene. But even if there is some doubt, there would not have been any "realistic opportunity" to intervene during the handcuffing incident in the booking room by any officer. As noted above, the video reveals that each of the three officers had to restrain a body part of the plaintiff. The handcuffing incident only took 20 seconds (S 73), so it would be unrealistic for them to intervene in any manner given the shortness of time. Moreover, even if there was some plausible reason to intervene (there was not), each officer risked injury to himself if he "let go" of Plaintiff's other arm etc. Judgment for defendants on this count is proper.

**E. Summary Judgment is Proper On Count IV and V-(False Arrest § 1983 and Common Law) Because the 911 Caller Told Davi A Crime Had Been Committed**

"[T]he existence of probable cause for arrest is an absolute bar to a Section 1983 claim for unlawful arrest, or false imprisonment, or malicious prosecution." *Fernandez v. Perez,* 937 F.2d 368, 371 (7th Cir. 1991). In order to have probable cause for an arrest, law enforcement agents must reasonably believe, in light of the facts and circumstances within their knowledge at the time of the arrest, that the suspect had committed or was committing an offense. *United States v. Hayes,* 236 F.3d 891, 894 (7th Cir.2001). It is more than a suspicion, but less than a certainty. *U.S. v. Garza-Hernandez,* 623 F.2d 496 (7th Cir. 1980). Consequently, a probable cause inquiry is based " 'not on the facts as an omniscient observer would perceive them but on the facts as they would have appeared to a reasonable person in the position of the arresting officer- *seeing what he saw, hearing what he heard.'* " *Kelley v. Myler,* 149 F.3d 641, 646 (7th Cir. 1998).

Here it is undisputed that Mr. Pausche called emergency 911 stating that Plaintiff had threatened him and that Mr. Pausche was in fear (S 9). Mr. Pausche stated that he also told Officer Davi at the scene, that Plaintiff had threatened and menaced him and he then called 911 because he was in fear (S 11, 16). This supplies probable cause for an arrest.[2]

The case of *Askew v. City of Chicago*, 440 F.3d 894 (7th Cir. 2006) is particularly

---

[2] As noted recently by the Seventh Circuit, information given to an officer is not hearsay to demonstrate what he was aware of for establishing probable cause. *Jewett v. Anders*, 521 F.3d 818, 825 n.5 (7th Cir. 2008).

instructive in this regard. In that case, the police received a 911 call that a man was threatening a couple. The officers responded, spoke with the complainants, and then arrested Askew. Significantly, the Seventh Circuit held that officers can believe reasonably credible eye witnesses who have been subject to a crime, even if the criminal denies the actions.

And in this case, threatening a neighbor would qualify as providing at least probable cause for a crime of disturbing the peace/disorderly conduct.[3] See *People v. Davis*, 413 N.E.2d 413 (Ill. 1980)(conviction upheld under 720 ILCS 5/26-1 for statement against 81 year old woman, "if my brother goes to jail you know me"; vague threats fall squarely within the conduct proscribed by the disorderly conduct statute.). Clearly if the vague threat in *Davis* qualifies, the officer would be reasonable in assuming that Plaintiff's behavior qualified here, as relayed by Mr. Pausche to him. Moreover, "disorderly conduct has never had a precise definition; the types of conduct that may be disorderly conduct 'almost defy definition.' " *Lester v. City of Chicago*, 830 F.2d 706, 714 (7th Cir.1987).

The inquiry of probable cause is an objective one and the subjective beliefs or motivations of the arresting officer are irrelevant. *Whren v. United States,* 517 U.S. 806, 812-813 (1996). Thus, the fact that Officer Davi was reluctant to *initially* arrest Plaintiff for that specific charge at that time is irrelevant, as objectively an officer could have arrested Plaintiff for disorderly conduct based on the eye witness account of Mr. Pausche, as in *Askew*. And significantly, after Plaintiff was subsequently arrested a short while later for lying to the officers and giving a false name, he was ultimately charged with disturbing the peace (S 56).

And even if there is a dispute about whether Plaintiff could have been initially arrested for giving a false name (plaintiff claims he gave his license not a false name), it is not material. The Seventh Circuit has held that the fact that the officers might have lacked probable cause to arrest a person for the precise offense charged is only one part of the inquiry. The officer's knowledge of facts sufficient to support probable cause is more important to the evaluation of the propriety of an arrest than the officer's understanding of the legal basis for the arrest. *Williams v. Jaglowski*, 269 F.3d 778, 783 (7th Cir. 2001).

Thus even if there is a factual dispute about whether Plaintiff could have been arrested for giving a false name under obstruction of justice, 720 ILCS 5/31-4, there is no material

[3] A person commits disorderly conduct when he knowingly: does any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace. 720 ILCS 5/26-1

dispute that Plaintiff could have been arrested for the closely related charge, arising out of the same facts that formed the basis for the initial contact in the first place, and he was ultimately charged by the officer with that offense. Summary judgment is proper on these counts.

**F. Summary Judgment on Counts IV, V and IX Is Also Proper Because the State Criminal Court Has Already Found Probable Cause For Obstruction**

Summary judgment is also proper because the Criminal Court already found probable cause for the obstructing justice, the initial charge (S 79). Under the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts must give state court judgments the same preclusive effect they would have in state court. "Under Illinois law, collateral estoppel requires that: (1) the issues decided in the prior adjudication are identical to issues presented; (2) there be a final judgment on the merits; and (3) the party against whom estoppel is asserted was a party (or in privity)." *Kalush v. Deluxe Corp.*, 171 F.3d 489, 493 (7th Cir. 1999). This includes prior state court judgments, civil or criminal, where the party against whom estoppel is sought had a full and fair opportunity to litigate the issue to be precluded. *Id.*

The Supreme Court has indicated that to satisfy the "full and fair opportunity to litigate" requirement, the prior state proceedings "need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process clause." *Kremer v. Chemical Corp.*, 456 U.S. 461, 481 (1982). Because a *Gerstein* hearing by definition satisfies due process, it thus satisfies the "opportunity to litigate." *Gerstein v. Pugh,* 420 U.S. 103, 119-21, (1975). The Docket in the criminal matter against Plaintiff conclusively demonstrates that probable cause was found on the initial charge he was arrested for under 5/31-4.[4] (S 78). Thus, this court must give preclusive effect to that judgment and bar relitigation of that issue (S 79).

It is clear that this finding by the criminal court of probable cause meets all of the traditional elements of collateral estoppel/issue preclusion. It is clear that the issues are identical –i.e., whether there was probable cause. In addition, the third element is clearly met as Plaintiff was the defendant in the criminal case. Lastly, under element two, there was a "final judgment" for collateral estoppel purposes. The Seventh Circuit has that "final" for collateral estoppel/issue preclusion purposes, does not mean final in the sense of "final judgment" under 28 U.S.C. § 1291, but merely "final" in the sense of immune from reversal or amendment. *Miller Brewing*

*Co. v. Jos. Schiltz Brewing Co.*, 605 F.2d 990, 996 (7th Cir. 1979). Because Plaintiff was being detained and did not post a bond, a *Gerstein* Hearing was constitutionally required. See *Gerstein v. Pugh*, 420 U.S.103 (1975); 725 ILCS 5/109-3 (preliminary examination required).[5] Thus it was clear that this determination was "necessary" to continue to detain Plaintiff and the opportunity to litigate under due process was sufficient. The decision was also final in the sense that it could not be revisited later in the case, but only through appeal. *Gerstein* was clear that under traditional principle of habeas corpus, an initial finding of probable cause could only be reviewed by the higher courts under this method. *Gerstein*, 420 U.S. at 115.

The Seventh Circuit has held that probable cause in a criminal preliminary hearing *can* bar later civil false arrest suits. *Guenther v. Holmgreen*, 738 F.2d 879 (7th Cir. 1984)(collateral estoppel would apply to bar claims for false arrest and malicious prosecution).[6] Because it is clear the criminal court found probable cause in a constitutional sufficient manner under *Gerstein*, that determination is also preclusive to these Counts.

**G. Summary Judgment is Proper on Counts VI and VII--- Conspiracy**

Counts VI and VII Plaintiff has no evidence of an agreement to carry out an alleged illegal act of conspiracy as required under *Celotex*. However, the claims are also barred as a matter of law pursuant to the intracorporate conspiracy doctrine. In order to state a conspiracy claim under § 1983 and state law, plaintiff must allege: (1) an agreement between two or more people; (2) to participate in an unlawful act; (3) causing an injury by reason of the commission of an overt act; (4) which overt act was done pursuant to and in furtherance of the common scheme. *Lenard v. Argento,* 699 F.2d 874 (7th Cir. 1983). Although a conspiracy certainly may be established by circumstantial evidence, such evidence cannot be speculative. *Goetzke v. Ferro Corp.*, 280 F.3d 766 (7th Cir.2002). Plaintiff has put forth nothing other than speculation of any agreement and thus fails under *Celotex*.

---

[4] A person obstructs justice when, with intent to prevent the apprehension or obstruct the prosecution or defense of any person, he knowingly commits any of the following acts: (a) Destroys, alters, conceals or disguises physical evidence, plants false evidence, furnishes false information

[5] Illinois Supreme Court Rule 553 requires an "I-bond" (released on own recognizance) be issued with no hearing needed on most misdemeanors, unless the defendant is not cooperating (like Plaintiff was here) or was charged with a more serious crime.

[6] *See also*, *Crumley v. City of St. Paul, Minn.*, 324 F.3d 1003, 1007 (8th Cir. 2003) (state court conclusion that there was probable cause to arrest collaterally estopped a contrary ruling in her § 1983 action,); *Haupt v. Dillard*, 17 F.3d 285 (9th Cir. 1994) (probable cause established at state court preliminary hearing); *Hubbert v. City of Moore, Okl.*, 923 F.2d 769, 21 Fed. R. Serv. 3d 534 (10th Cir. 1991) (probable cause determination in state preliminary hearing precludes false arrest claim in federal court).

Moreover, the intra-corporate conspiracy doctrine precludes conspiracy claims against members of the same entity acting within the scope of their authority. In *Wright v. Illinois Dept. of Children & Family Servs.,* 40 F.3d 1492, 1507-08 (7th Cir. 1994), the court applied the doctrine to claims brought under 42 U.S.C. § 1985 against governmental entities. The test for application of the doctrine prohibiting liability is not the wrongful nature of the conspirators' actions but whether the wrongful conduct was performed within the scope of the conspirators' official duties. *Travis v. Gary Cmty Mental Health Ctr., Inc.,* 921 F.2d 108, 110 (7th Cir. 1991). Here any possible agreement (Plaintiff has no evidence of such) would be as police officers in their scope of duty, thus the inter corporate doctrine bars the 1983 and state law conspiracy.

**H. Count VIII and X-Equal Protection/Hate Crime Law**

To show a violation of the Equal Protection Clause, plaintiff must prove that the defendants' actions had a discriminatory effect and were motivated by a discriminatory purpose. *Washington v. Davis*, 426 U.S. 229, 239-42, 242 (1976) *Chavez v. Illinois State Police,* 251 F.3d 612, 636 (7th Cir.2001). To prove discriminatory effect, the plaintiff must show that they are members of a protected class, that they are otherwise similarly situated to members of the unprotected class, and plaintiffs were treated differently from members of the unprotected class. *Greer v. Amesqua*, 212 F.3d 358, 370 (7th Cir. 2000).

Plaintiff will be unable to demonstrate any similarly situated individual that was treated differently than him, thus his claim fails under *Celotex.* With respect to claims of racial epithets (which the officers deny), the Seventh Circuit is clear that such comments do not by themselves violate the Constitution. *DeWalt v. Carter,* 224 F.3d 607, 612 (7th Cir. 2000)(the use of racially derogatory language, while unprofessional and deplorable, does not violate the Constitution).

A violation of the so called hate crime statute for civil liability (Count X) requires a battery based on a person's race. Here as explained above, there is no battery.

**I. There is a Failure of Proof for any *Monell* Claim**

The Village has been sued under all § 1983 Counts under the *Monell* theory. (Counts I, III, IV, VI, VIII ). Under *Celotex* there is a complete lack of evidence that Plaintiff can show to make out the essential elements of this claim.

There are three principle ways to establish *Monell* liability: (1) an express policy; (2) a widespread practice that constitutes a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a final policymaking authority. *Monell v.*

*Department of Social Services of the City of New York,* 436 U.S. 658, 694, (1978). In this case, there appears to be nothing suggested of an express policy or a final policy maker issue. But the claim other claims also fail.

**1. There Is No "Showing" of A Wide Spread Practice**

In *Rodgers v. Lincoln Towing Serv., Inc.,* 771 F.2d 194, 198 (7th Cir. 1985), the Seventh Circuit noted it has rejected section 1983 claims that seek to impose municipal liability based on isolated acts. In this case, under *Celotex*, Plaintiff has no facts to "show" a widespread practice of any conduct. *Powe v. City of Chicago,* 664 F.2d 639, 650 (7th Cir.1981)*; City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823-24 (1985)

**2. There is No "Showing" of "Deliberate Indifference" of Training**

"Deliberate indifference" under *Monell* can be established either by (1) failure to provide adequate training in light of an obvious need to a moral certainty concerning an issue that the officers are certain to encounter; or (2) failure to act in *response* to repeated complaints of constitutional violations by its officers. *City of Canton v. Harris,* 489 U.S. 378, 339 n.10 (1989). In determining the adequacy of training, the focus must be on the program itself, not whether particular officers were adequately trained. *Id.* Thus, before liability can attach based on failure to train, the plaintiff must show that the municipality was "on notice of the deficiency, and have a high degree of culpability." *Palmquist v. Selvik,* 111 F.3d 1332, 1346 (7th Cir. 1997).

Again, there is no evidence under *Celotex* to come anywhere near the high standard for proving a failure to train either as to alleged repeated offenses or a training program deficiency. And even if there was some evidence, there is likewise no evidence that such failure to train was the *moving force* of any alleged constitutional deprivation. Dismissal is required.

**J. In the Alternative, Under Qualified Immunity Judgment is Required**

Governmental officials performing discretionary functions are immune from civil rights liability for actions that do not violate "clearly established" law. *Harlow v. Fitzgerald,* 457 U.S. 800, 73 L.Ed.2d 396, 102 S.Ct. 2727 (1982). The courts view this as a "two step" process. (1) was a constitutional right violated, and if so, (2) was the right clearly established. *Saucier v, Katz*, 533 U.S. 194, 201 (2001). The burden of persuasion is on the plaintiff to prove the existence of a clearly established right. *Davis v. Sch*erer, 468 U.S. 183, 197, (1984). This give ample room for mistakes. *Hunter v. Bryant,* 502 U.S. 224 (1991)

In determining whether a right is clearly established, "[t]he contours of the right must be

sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, (1987). A plaintiff can meet this burden only by citing "closely analogous cases" decided prior to the defendants challenged actions which clearly and consistently recognize the right forming the basis of the cause of action. *Upton v. Thompson*, 930 F.2d 1209, 1212 (7th Cir. 1991).

**1. Excessive Force**

There is no excessive force. But even if that was disputed, Plaintiff will be unable to point to any closely analogous case law based on the undisputed material facts. Plaintiff admits he did not come out of the cell when told to. The video undisputedly demonstrates Plaintiff resisting being handcuffed by sticking his arms straight out and spinning around. The video show no striking, punching, or beating, or arm twisting and demonstrates that the handcuffing incident was 20 seconds (S ). Plaintiff has a lack of admissible proof of a "broken thumb," and thus at best can complain only of aches and pains and bruising. And even if Plaintiff could somehow provide a medical opinion that his thumb was broken the ultimate result is the same on lack of clearly established basis. See *Huang v. Harris County*, 264 F.3d 1141 (5th Cir. 2001)(no excessive force when arrestee incurred broken thumb while he was resisting being handcuffed) *Cardenas v. Lewis*, 66 Fed. Appx. 86 (9th Cir. 2003)(injury to thumb by pretrial detainee not excessive force). *Jackson v. City of Bremerton,* 268 F.3d 646, 650-53 (9th Cir.2001) (no excessive force where plaintiff suffered a fractured finger after officer pushed plaintiff to the ground for purpose of handcuffing). Likewise, the alleged de minimis force Plaintiff claims occurred enroute to the station cannot be maintained.

**2. False Arrest**

In this case, *Askew* confirms that when an officer receives information from an eye witness of a crime, that supplies probable cause. There is no dispute of what Mr. Pausche told Officer Davi; that he was "menaced" by Plaintiff and was in fear. Based on those facts and the fact that Pausche was 73 years old that provided at least arguable probable cause. Qualified immunity exists based on that as a reasonable officer could believe the conduct was violative under the *Davis* case. The case of *Biddle v. Martin*, 992 F.2d 673, 677 (7th Cir. 1993) demonstrates that probable cause can be seen for any closely related charge.

**K. Conclusion**

Judgment in favor the Defendants is warranted.

Respectfully submitted,

By: s/Craig G. Penrose

Craig G. Penrose
Attorney for Defendants
Tressler, Soderstrom, Maloney & Priess
Sears Tower, 22nd Floor
233 South Wacker Drive
Chicago, Illinois 60606-6399
(312) 627-4000
(312) 627-1717 (Fax)
E-mail:cpenrose@tsmp.com

**CERTIFICATE OF SERVICE**

I hereby certify that on July 21, 2008, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Russell Ainsworth
Loevy &Loevy
312 N. May Street
Suite 100
Chicago, Il 60607
Russell@loevy.com

A. **Attorney for Plaintiff Timothy Brownlee**

**III.**

s/Craig G. Penrose