CGP/435052                                                                                    6121-213

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |  |
|---|---|---|
| TIMOTHY BROWNLEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 07 C 7085 |
| VILLAGE OF BOLINGBROOK, | ) | |
| BOLINGBROOK POLICE OFFICER DAVI, | ) | Judge Ruben Castillo |
| BOLINGBROOK POLICE OFFICER | ) | |
| SMETTERS, and BOLINGBROOK POLICE | ) | |
| SERGEANT HILLIARD, | ) | |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

**DEFENDANTS' LOCAL RULE 56.1 (a)(3) STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

NOW COME, the Defendants Village of Bolingbrook ("Village") and Sal Davi, Daniel Smetters and Richard Hilliard (individually "Officer Davi, "Officer Smetters" and "Officer Hilliard", or collectively "Bolingbrook Police Officers")(all collectively "Defendants") and in support of their Local Rule 56.1(a)(3) Statement of Undisputed Material Facts state as follows:

**A.  Parties**

1.  Plaintiff Timothy Brownlee is resident in Bolingbrook, Illinois in the Northern District of Illinois (Exhibit 1, First Amended Complaint ¶¶ 4,5) and Officers Davi, Smetters, and Hilliard reside in this judicial district. (First Amended Complaint ¶ 4).

**B.  Jurisdiction and Venue**

2.  Jurisdiction in this court is premised upon 28 U.S.C. §§ 1331 and 1367 (First Amended Complaint ¶ 3). Defendants do not dispute subject matter jurisdiction or venue (First Amended Complaint ¶ 3).

1

C. **Plaintiff's Threatens his Neighbor, Jerome Pausche, and Mr. Pausche Calls Emergency 911**

3. On May 28, 2007, Mr. Pausche (a retired 73 ½ year old person) was sitting on his porch in front of his house at 4 Rye Court, Bolingbrook, Illinois (Exhibit 3, Deposition of Jerome Pausche, pg. 5 ln. 20-24, pg. 39, ln. 22-24).

4. At that point, Plaintiff got in his car with his "wife or girlfriend" and they backed out of his driveway (next door to the Pausche's) and Mr. Pausche heard Mr. Brownlee say something to his children to the effect of "don't' let that man do anything to you or say any thing to you or you let me know." (Exhibit 3, Deposition of Jerome Pausche, pg. 40, ln. 6-9, 14-18).

5. Mr. Pausche then said to Plaintiff "I heard what you said." (Exhibit 3, Deposition of Jerome Pausche, pg. 40, ln. 17-18).

6. Mr. Pausche testified at that point Plaintiff "starting getting out of his car and started coming towards me, and he said "I meant for your mother fucking white ass to hear that." (Exhibit 3, Deposition of Jerome Pausche, pg. 40, ln. 20-24).

7. At that point, Mr. Pausche turned around went into the house and called 911 (Exhibit 3, Deposition of Jerome Pausche, pg. 40, ln. 22-24).

8. Mr. Pausche stated that Plaintiff had walked towards him in a "menacing" way (Exhibit 3, pg. 41, ln. 2-4).

9. Mr. Pausche testified that he told 911 that he was "being threatened by his neighbor again." (Exhibit 3, Deposition of Jerome Pausche, pg. 41, ln. 12-17).

10. At that point, Mr. Pausche believes Plaintiff had left in his car (Exhibit 3, pg. 42, ln. 5-7).

2

11. When a Bolingbrook Officer arrived at the Pausches' house, Mr. Pausche told the officer everything that had just happened immediately prior with Plaintiff (Exhibit 3, Deposition of Jerome Pausche, pg. 44, ln, 13-15).

**D.   On May 28, 2007, Officer Davi Receives a Dispatch That A 911 Call that Plaintiff is Threatening His Neighbors**

12. On May 28, 2007, Officer Davi received a call from dispatch to Rye Court, Bolingbrook and that it was a neighbor dispute (Exhibit 2, Deposition of Davi, pg. 92, ln. 6-9, 16-20)

13. When Officer Davi arrived, Officer Davi parked his vehicle in front of the Complainant's house, Mr. Jerome Pausche, at 4 Rye Court. (Exhibit 2, Deposition of Davi, pg. 96, ln. 9-15)

14. After Officer Davi arrived, he spoke with Mr. and Mrs. Pausche outside in the front of their house (Exhibit 2, Deposition of Davi, pg. 97, pg. 4-12).

15. "They [Mr. And Mrs. Pausche] said they had been having an ongoing dispute with their neighbor [Plaintiff], at Three Wright [Rye] regarding a bunch of issues. . . " (Exhibit 2, Deposition of Davi, pg, 97, ln. 18-23).

16. According to Officer Davi, the Pausches told Officer Davi that the reason they called the police via 911 "is because they got into another verbal altercation when they were outside, and Mr. Brownlee was driving away, and they started cursing – started cursing at them and they were cursing back, and they [the Pausches] became in fear, and they notified the police." (Exhibit 2, Deposition of Davi, pg. 98, ln. 6-10)

**E.   Plaintiff Returns to His Residence and Then Speaks with Officer Davi**

17. While Officer Davi was speaking with the Pausches, Plaintiff returned back to his house, next door to the Pausches (Exhibit 2, Deposition of Davi, pg. 103, ln. 13-18)

18. Officer Davi then went over to speak to Plaintiff, in the driveway of his residence (Exhibit 2, Deposition of Davi pg. 104, ln. 7-10).

19. After a few minutes, Officer Davi asked Plaintiff for identification (Exhibit 2, Deposition of Davi, pg. 104, ln. 16-20).

20. Prior to asking for identification, Officer Davi told Plaintiff the reason he was there was the the neighbors [Mr. And Mrs. Pausche] had complained about him (Exhibit 2, Deposition of Davi pg. 105, 14-19).

21. Officer Davi told Plaintiff the "same thing he told the Pausche's keep away from each other, if you guys can't get along, don't have any interaction, don't talk to each other." (Exhibit 2, Deposition of Davi, pg, 108, ln. 2-5).

22. Officer Davi maintains that Plaintiff did not produce any identification when asked by Officer Davi (Exhibit 2, Deposition of Davi pg. 109, ln. 22-24).

23. Officer Davi then asked for a name and date of birth, Officer Davi maintains that Plaintiff told him his name was "Timothy Sandifer" (Exhibit 2, Deposition of Davi pg.112, ln. 9-11)

24. When Officer Davi "ran" the name Timothy Sandifer it came back no record (Exhibit 2, Deposition of Davi pg. 116, ln. 8-10).

25. Officer Davi stated he was standing next to Plaintiff when he called the name "Timothy Sandifer" over his radio (Exhibit 2, Deposition of Davi, pg. 116, ln. 11-12).

26. When the name Timothy Sandifer came back no record, Officer Davi told the Pausches and Plaintiff to stay away from each other, and at that point Officer Davi went to sit in his patrol squad (Exhibit 2, Deposition of Davi pg. 119, ln. 1-7).

4

27. Officer Davi returned to his squad (parked in front of the Pausches) and had the dispatch run a "Sound X" check on the name Timothy Sandifer (Exhibit 2, Deposition of Davi pg. 124, ln. 1-7)

28. Ultimately, Officer Davi ran the license plates of the vehicles sitting in Plaintiff's drive way and one vehicle came back under the name "Timothy Brownlee" (Exhibit 2, Deposition of Davi pg. 126, ln. 16-24).

29. Plaintiff maintains he gave Officer Davi his drivers license that contained the name Timothy Brownlee and did not give the officer the name Timothy Sandifer (Exhibit 4, Deposition of Plaintiff, pg. 50, ln. 9-13).

30. Plaintiff states that after he handed his license to Officer Davi, he was "arms length" away from the Officer Davi (Exhibit 4, Deposition of Plaintiff, pg. 51, ln. 19-23).

**F.    Officer Davi Arrests Plaintiff for giving a False Name/Obstruction of Justice**

31. After he determined Plaintiff's name was Timothy Brownlee, Officer Davi then went back up to the door of Plaintiff's residence and knocked on the door and Plaintiff came outside (Exhibit 2, Deposition of Davi, pg. 127, ln. 16-19).

32. Officer Davi states that he asked Plaintiff his name and Officer Davi told him "your name isn't Timothy Sandifer it is Timothy Brownlee" (Exhibit 2, Deposition of Davi, pg. 127, ln. 22-24).

33. Officer Davi maintains that in response to the question concerning his name, Plaintiff said "what are you going to do about it?" (Exhibit 2, Deposition of Davi, pg. 128, ln. 14-17).

34. In response, Officer Davi told Plaintiff he was under arrest for obstructing justice, and he told him to step outside, and to put his hands behind his back (Exhibit 2, Deposition of Davi, pg. 128, ln. 16-21)

35. According to Officer Davi, Plaintiff turned around and allowed Officer Davi to handcuff him outside of the residence on the porch without incident (Exhibit 2, Deposition of Davi pg. 130, ln. 1-7).

36. According to Plaintiff, the officer came to his front door and said that Officer told him that he did not give him the name Timothy Brownlee (Exhibit 4, Deposition of Plaintiff, pg. 58, ln. 1-8).

37. Plaintiff states he was told by the officer to step out on the porch, and after stepping outside, he was then handcuffed and he was told he was arrested for "giving wrong name." (Exhibit 4, Deposition of Plaintiff, pg. 58, ln 19-24 to pg. 59, ln.1-7).

**G.  Officer Davi Begins to Take Plaintiff to Police Stations For Booking But Has to Stop**

38. After being arrested, Plaintiff was placed in the back seat of Officer Davi's squad car (Exhibit 2, Deposition of Davi, pg. 133, ln. 7-9)

39. After placing Plaintiff in the squad car, Officer Davi transported him to the Bolingbrook Police Station (Exhibit 2, Deposition of Davi, pg. 135, ln, 5-7)

40. Officer Davi had to stop enroute to the Bolingbrook Police Station because Plaintiff "was becoming disruptive in the back of the squad car, "spitting, kicking, screaming" was also starting to use his cell phone (Exhibit 2, Deposition of Davi pg. 136, ln. 9-12).

41. Plaintiff admits he was calling someone on his cell phone when he was in the back of Officer Davi's police car enroute to the police station (Exhibit 4, Deposition of Plaintiff, pg. 69, ln. 1-5).

6

42.　　Officer Davi testified that he wanted to retrieve the cell phone from Plaintiff for officer safety because "he [Plaintiff] could be calling somebody to tell them where we were to come and do something to me[Davi] to get him out of the back of that squad car. (Exhibit 2, Deposition of Davi, pg. 143 ln.1-8).

43.　　Officer Davi advised the Bolingbrook police dispatch that they were pulling over enroute to the police station (Exhibit 2, Deposition of Davi pg. 149, ln. 12-15)

44.　　Officer Davi opened the back door to the squad after he stopped and grabbed Plaintiff's cell phone (Exhibit 2, Deposition of Davi, pg. 155, ln. 12-14)

45.　　Officer Davi then shut the back seat door, got back in the car, put it in drive and went to the police station (Exhibit 2, Deposition of Davi pg. 159, ln. 6-10).

46.　　Officer Davi then told dispatch over the air that he was back enroute the police station (Exhibit 2, Deposition of Davi pg. 159, ln. 13-20).

**H.　　Plaintiff Claims The Officer Took Him Out of the Squad Car Enroute.**

47.　　Plaintiff maintains that after the squad car stopped while enroute to the police station, Office Davi grabbed the handcuffs and "snatched" plaintiff out of the car backwards. (Exhibit 4, Deposition of Plaintiff, pg. 73, ln. 18-21)

48.　　Plaintiff maintains after he was out of the car, he was pulled up to standing and then was "punched in the stomach," but Plaintiff does not know whether it was with an open or closed fist, he claims that then Officer Davi grabbed his testicles (Exhibit 4, Deposition of Plaintiff, pg. 81, ln. 1-17)

49.　　Officer Davi testified that when he stopped enroute to the Police Station, Plaintiff was never removed form the back seat (Exhibit 2, Deposition of Davi, pg. 180, ln.16-19)

7

I.  **Plaintiff Arrives at the Police Station And Is Non Compliant With Booking**

50.  Upon arriving at the Bolingbrook police station, Officer Davi drove his squad car to the "Sally Port"[garage door] which leads directly to the booking room, and then Officer Davi took Plaintiff to the booking room and attempted to process Plaintiff (Exhibit 2, Deposition of Davi, pg. 169, ln. 1-8) (Exhibit 2, Deposition of Davi, pg. 161, ln. 1-8).

51.  Officer Davi stated that Plaintiff would not give any information such as height, weight, emergency contact, and Social Security number (Exhibit 2, Deposition of Davi, pg. 177, ln 19-24 to pg. 178, ln. 1-3).

52.  Officer Davi stated that Plaintiff refused to have his picture taken as part of the booking process and refused to sign the release of his property (Exhibit 2, Deposition of Davi, pg. 169, ln. 15-18).

53.  Officer Davi's Arrest And Booking form reflects that Plaintiff refused to provide information (Exhibit 2, Deposition of Davi, with Exhibit 4 attached)

54.  Officer Davi testified that either he or Officer Smetters notified their immediate sergeant, Sergeant Hilliard, that Plaintiff had refused to comply with the booking procedures, and that is how Sergeant Hilliard got brought into the booking room. (Exhibit 2, Deposition of Davi, pg. 184, ln. 9-14).

55.  Officer Davi testified that he told Plaintiff that he was being charged and he was going to be processed and released, but if he refused to comply with being processed he was going to be held then transferred to the Will County Adult Detention Facility (Exhibit 2, Deposition of Davi, pg. 184, ln. 15-24).

56. Officer Davi's Arrest and Booking form indicated that Plaintiff was arrested and charged with obstruction of justice, disturbing the peace, and resisting arrest (Exhibit 2, Deposition of Davi, Ex. 4 attached)

**J.     Plaintiff's Time in the Bolingbrook Police Station is On Video**

57. Officer Davi identified himself, Plaintiff, Smetters, and Sergeant Hilliard in viewing a video of the Bolingbrook Police Station from May 28, 2007 (Exhibit 2, Deposition of Davi, pg. 255, ln. 19-25, pg. 256, ln. 13-19, pg. 263, ln. 7-9). Likewise, Plaintiff identified himself in the video from that date (Exhibit 4, Deposition of Plaintiff, pg. 146, ln. 4-21)

58. The Video of Plaintiff's time in the police station, reveals that Plaintiff's sandals were removed prior to him being placed in a cell at the Bolingbrook Police Department. (Exhibit 5, Video, 13:14:30)

59. The Video reveals that Plaintiff took off his sweatpants, but Officer Smetters, refused to take his sweat pants. (Exhibit 5, Video, 13:17:31)

60. The Video reveals Officer Smetters removing the drawstring from Plaintiff's sweatpants and Officer Davi handed the pants back to Plaintiff, but Plaintiff refuses to take them, so Officer Davi places them on the ground. (Exhibit 5, Video, 13:16:10 to 13:19:03)

61. The Video reveals Plaintiff walking into his cell and the officer giving him his pants. (Exhibit 5, Video, 13:19:27)

62. The Video reveals that Officer Smetters opened Plaintiff's cell door at 15:27:37 (Exhibit 5, Video, 15:27:37)

63. Plaintiff states that when the officer came to his cell and opened the door, the officer told him to come out, but Plaintiff testified that he told the officer he wanted his shoes first (Exhibit 4, Deposition of Plaintiff, pg. 153, ln. 12-13).

9

64. Officer Smetters stated that he told Plaintiff that the protocol is a detainee gets his shoes in the booking area (Exhibit 6, Deposition of Smetters, pg. 157, pg. 19-24).

65. Officer Smetters testified that it was not safe to give a pretrial detainee his property back in his cell (Exhibit 6, Deposition of Officer Smetters, pg, 158, ln. 8-16)

66. Due to Plaintiff's failure to come out of his cell, Officer Smetters and Officer Hilliard dragged Plaintiff out of his cell. Plaintiff remained limp and would not get up (Exhibit 6, Deposition of Smetters, pg. 129, ln.1-4)

67. Once Plaintiff was drug into the booking room, he was told to put his arms behind his back. At that point he stiffened his arms and would not allow the officer to move his arms behind him (Exhibit 6, Deposition of Smetters pg. 129, ln. 17-21)

68. The Video reveals that after Plaintiff was dragged into the booking room, plaintiff was sitting on the floor, he had his arms "straight out" from his body and he was spinning around rather than placing his hands behind his back. (Exhibit 5, Video, 15:28:21)

69. Plaintiff admits the officers were telling him to "quit resisting" when he was on the floor of the booking room after he was taken out of his cell (Exhibit 4, Deposition of Plaintiff, pg. 154, 17-18).

70. The Video reveals that Plaintiff was not punched or kicked or beaten while in the booking room after he was taken out of his holding cell. (Exhibit 5, Video,15:27:00 to 15:28:40)

71. The Video reveals Officer Smetters was holding on to Plaintiff's left arm and Sergeant Hilliard was holding on to his right arm and Officer Davi was holding on to Plaintiff head. (Exhibit 5, Video, 15:28:20 to 15:28:40)

72. Officer Davi testified he was "trying to control his head so he wouldn't head butt any of the officers as they were trying to handcuff him" (Exhibit 2, Deposition of Davi, pg. 211, ln. 15-18).

73. The Video reveals it took the three officers 20 seconds to get Plaintiff's hands behind his back to handcuff him when he was in the booking room. (Exhibit 5, Video, 15:27:20 to 15:27:40)

**K. After Being Handcuffed Plaintiff Complains of Injury and Is Taken to the Hospital.**

74. After Plaintiff was handcuffed, he stated he could not get up because of a cramp in his leg and his back hurt and he asked to see a doctor (Exhibit 4, Deposition of Plaintiff, pg. 128, ln. 16-22)

75. The paramedics then arrived (Exhibit 4, Deposition of Plaintiff, pg. 130, ln. 10-11), and then they transported Plaintiff to the hospital (Exhibit 4, Deposition of Plaintiff, pg. 131, ln. 14-15)

**L. Plaintiff's Medical Record Demonstrates the X-Ray States His Thumb is Not Broken**

76. The radiology report of an x ray of the hand and thumb provided by plaintiff in this litigation indicates there was no fracture noticed. (Exhibit 4, Deposition of Plaintiff, with Exhibit 5 attached)

**M. The Will County State's Attorney Prepared a Criminal Complaint**

77. Officer Davi stated that Bolingbrook Police Officers do not prepare criminal complaints in Will County for prosecution. (Exhibit 2, Deposition of Davi, pg. 68, ln. 1-3).

78. The criminal complaint against Plaintiff shows that Officer Davi did not prepare or sign the criminal charge of obstructing justice. (Exhibit 7)

79. The Certified Disposition from Will County Circuit Court states that on 5/29/07 the docket reflects

> People present by DEBRA J. WENDLING. Defendant present in custody of the Will County Sheriff pursuant to video court. Complaint is filed and copy served on the defendant. Charges and rights explained. Defendant enters a plea of not guilty. Defendant advises the Court he will hire private counsel. Case is set for jury pretrial. Based on the sworn testimony of Assistant State's Attorney, DEBRA J. WENDLING, Court finds probable cause to continue defendant's detention. Gerstein hearing completed. Bond set in the amount of $1,000.00 – 10% to apply. Copy of the mittus issued in open court. Defendant remanded to the custody of the Will County Sheriff.

(Exhibit 8)

80. On 9/20/07, the Criminal Docket reflects the criminal case was dismissed nolle prosequi. (Exhibit 8)

                Respectfully submitted,

                By: s/Craig G. Penrose

Craig G. Penrose
Attorney for Defendants
Tressler, Soderstrom, Maloney & Priess
Sears Tower, 22nd Floor
233 South Wacker Drive
Chicago, Illinois 60606-6399
(312) 627-4000
(312) 627-1717 (Fax)
E-mail:cpenrose@tsmp.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 23, 2008, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Russell Ainsworth
Loevy &Loevy
312 N. May Street
Suite 100
Chicago, Il 60607
Russell@loevy.com

      **Attorney for Plaintiff**
      **Timothy Brownlee**

                                                s/Craig G. Penrose