IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TIMOTHY BROWNLEE,  )<br>  )<br>     Plaintiff,  )<br>  )<br>v.  )<br>  )  No. 07 C 7085<br>VILLAGE OF BOLINGBROOK,  )<br>BOLINGBROOK POLICE OFFICER DAVI,  )  Judge Ruben Castillo<br>BOLINGBROOK POLICE OFFICER  )<br>SMETTERS, and BOLINGBROOK POLICE  )<br>SERGEANT HILLIARD,  )<br>  )<br>     Defendants.  )  JURY TRIAL DEMANDED | |

**PLAINTIFF'S LOCAL RULE 56.1(b)(3)(A) RESPONSE
TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS**

　　Now Comes Plaintiff, Timothy Brownlee, by his attorneys, Loevy & Loevy, and respectfully submits the following Response to Defendants' Statement of Undisputed Facts:

　　1.　　Plaintiff Timothy Brownlee is resident in Bolingbrook, Illinois in the Northern District of Illinois (Exhibit 1, First Amended Complaint ¶¶ 4,5) and Officers Davi, Smetters, and Hilliard reside in this judicial district. (First Amended Complaint ¶ 4).

　　**RESPONSE:**  Admit.

　　2.　　Jurisdiction in this court is premised upon 28 U.S.C. §§ 1331 and 1367 (First Amended Complaint ¶ 3). Defendants do not dispute subject matter jurisdiction or venue (First Amended Complaint ¶ 3).

　　3.　　On May 28, 2007, Mr. Pausche (a retired 73 ½ year old person) was sitting on his

porch in front of his house at 4 Rye Court, Bolingbrook, Illinois.(Exhibit 3, Deposition of

Jerome Pausche, pg. 5 ln. 20-24, pg. 39, ln. 22-24).

　　**RESPONSE:**  Admit.

4.      At that point, Plaintiff got in his car with his "wife or girlfriend" and they backed out of his driveway (next door to the Pausche's) and Mr. Pausche heard Mr. Brownlee say something to his children to the effect of "don't' let that man do anything to you or say any thing to you or you let me know." (Exhibit 3, Deposition of Jerome Pausche, pg. 40, ln. 6-9, 14-18).

**RESPONSE:** Admit.

5.      Mr. Pausche then said to Plaintiff "I heard what you said." (Exhibit 3, Deposition of Jerome Pausche, pg. 40, ln. 17-18).

**RESPONSE:** Admit.

6.      Mr. Pausche testified at that point Plaintiff "starting getting out of his car and started coming towards me, and he said "I meant for your mother fucking white ass to hear that." (Exhibit 3, Deposition of Jerome Pausche, pg. 40, ln. 20-24).

**RESPONSE:** Admit that Mr. Pausche testified to this statement, but deny that Plaintiff said "mother fucking white ass." Exhibit A at 35 (Brownlee deposition). Deny that Plaintiff got out of his car or started coming toward Mr. Pausche. Exhibit C at 14-16 (Sandifer deposition) (Plaintiff was inside his car when he spoke with the Pausches); Exhibit A at 35 (Brownlee deposition) (Plaintiff simply left and went to the store after speaking to the Pausches).

7.      At that point, Mr. Pausche turned around went into the house and called 911 (Exhibit 3, Deposition of Jerome Pausche, pg. 40, ln. 22-24).

**RESPONSE:** Admit.

8.      Mr. Pausche stated that Plaintiff had walked towards him in a "menacing" way (Exhibit 3, pg. 41, ln. 2-4).

**RESPONSE:** Admit that Mr. Pausche said this at his deposition, but deny that Plaintiff came toward him in a "menacing" way. Exhibit C at 14-16 (Sandifer deposition) (Plaintiff was

inside his car when he spoke with the Pausches); Exhibit A at 35 (Brownlee deposition) (Plaintiff simply left and went to the store after speaking to the Pausches).

9. Mr. Pausche testified that he told 911 that he was "being threatened by his neighbor again." (Exhibit 3, Deposition of Jerome Pausche, pg. 41, ln. 12-17).

**RESPONSE:** Admit that Mr. Pausche said this at his deposition, but deny that the information was communicated to Defendant Davi. Exhibit B at 92 (Davi deposition).

10. At that point, Mr. Pausche believes Plaintiff had left in his car (Exhibit 3, pg. 42, ln. 5-7).

**RESPONSE:** Admit.

11. When a Bolingbrook Officer arrived at the Pausches' house, Mr. Pausche told the officer everything that had just happened immediately prior with Plaintiff (Exhibit 3, Deposition of Jerome Pausche, pg. 44, ln, 13-15).

**RESPONSE:** Object that this statement is admissible as to what was actually conveyed to Officer Davi. Otherwise, admit.

12. On May 28, 2007, Officer Davi received a call from dispatch to Rye Court, Bolingbrook and that it was a neighbor dispute (Exhibit 2, Deposition of Davi, pg. 92, ln. 6-9, 16-20)

**RESPONSE:** Admit.

13. When Officer Davi arrived, Officer Davi parked his vehicle in front of the Complainant's house, Mr. Jerome Pausche, at 4 Rye Court. (Exhibit 2, Deposition of Davi, pg. 96, ln. 9-15)

**RESPONSE:** Admit.

14.　　After Officer Davi arrived, he spoke with Mr. and Mrs. Pausche outside in the front of their house (Exhibit 2, Deposition of Davi, pg. 97, pg. 4-12).

**RESPONSE:** Admit.

15.　　"They [Mr. And Mrs. Pausche] said they had been having an ongoing dispute with their neighbor [Plaintiff], at Three Wright [Rye] regarding a bunch of issues. . . " (Exhibit 2, Deposition of Davi, pg, 97, ln. 18-23).

**RESPONSE:** Admit.

16.　　According to Officer Davi, the Pausches told Officer Davi that the reason they called the police via 911 "is because they got into another verbal altercation when they were outside, and Mr. Brownlee was driving away, and they started cursing – started cursing at them and they were cursing back, and they [the Pausches] became in fear, and they notified the police." (Exhibit 2, Deposition of Davi, pg. 98, ln. 6-10)

**RESPONSE:** Admit.

17.　　While Officer Davi was speaking with the Pausches, Plaintiff returned back to his house, next door to the Pausches (Exhibit 2, Deposition of Davi, pg. 103, ln. 13-18)

**RESPONSE:** Admit.

18.　　Officer Davi then went over to speak to Plaintiff, in the driveway of his residence (Exhibit 2, Deposition of Davi pg. 104, ln. 7-10).

**RESPONSE:** Admit.

19.　　After a few minutes, Officer Davi asked Plaintiff for identification (Exhibit 2, Deposition of Davi, pg. 104, ln. 16-20).

**RESPONSE:** Admit.

20. Prior to asking for identification, Officer Davi told Plaintiff the reason he was there was the the neighbors [Mr. And Mrs. Pausche] had complained about him (Exhibit 2, Deposition of Davi pg. 105, 14-19).

**RESPONSE:** Admit.

21. Officer Davi told Plaintiff the "same thing he told the Pausche's keep away from each other, if you guys can't get along, don't have any interaction, don't talk to each other." (Exhibit 2, Deposition of Davi, pg, 108, ln. 2-5).

**RESPONSE:** Admit.

22. Officer Davi maintains that Plaintiff did not produce any identification when asked by Officer Davi (Exhibit 2, Deposition of Davi pg. 109, ln. 22-24).

**RESPONSE:** Admit that Davi maintains that Plaintiff did not produce identification, but Plaintiff denies that he did not, in fact, produce identification. Exhibit A at 48-50 (Brownlee deposition).

23. Officer Davi then asked for a name and date of birth, Officer Davi maintains that Plaintiff told him his name was "Timothy Sandifer" (Exhibit 2, Deposition of Davi pg.112, ln. 9-11)

**RESPONSE:** Plaintiff denies that Davi ever asked for his name or date of birth, and denies that Plaintiff ever told him his name was Timothy Sandifer. Exhibit A at 58 (Brownlee deposition).

24. When Officer Davi "ran" the name Timothy Sandifer it came back no record (Exhibit 2, Deposition of Davi pg. 116, ln. 8-10).

**RESPONSE:** Admit.

25. Officer Davi stated he was standing next to Plaintiff when he called the name "Timothy Sandifer" over his radio (Exhibit 2, Deposition of Davi, pg. 116, ln. 11-12).

**RESPONSE:** Admit that he stated he was standing next to Plaintiff, but deny that Davi actually was standing next to Plaintiff when he called the name Timothy Sandifer over the radio. Exhibit A at 53-54 (Brownlee deposition).

26. When the name Timothy Sandifer came back no record, Officer Davi told the Pausches and Plaintiff to stay away from each other, and at that point Officer Davi went to sit in his patrol squad (Exhibit 2, Deposition of Davi pg. 119, ln. 1-7).

**RESPONSE:** Admit.

27. Officer Davi returned to his squad (parked in front of the Pausches) and had the dispatch run a "Sound X" check on the name Timothy Sandifer (Exhibit 2, Deposition of Davi pg. 124, ln. 1-7)

**RESPONSE:** Admit.

28. Ultimately, Officer Davi ran the license plates of the vehicles sitting in Plaintiff's drive way and one vehicle came back under the name "Timothy Brownlee" (Exhibit 2, Deposition of Davi pg. 126, ln. 16-24).

**RESPONSE:** Admit.

29. Plaintiff maintains he gave Officer Davi his drivers license that contained the name Timothy Brownlee and did not give the officer the name Timothy Sandifer (Exhibit 4, Deposition of Plaintiff, pg. 50, ln. 9-13).

**RESPONSE:** Admit.

30. Plaintiff states that after he handed his license to Officer Davi, he was "arms length" away from the Officer Davi (Exhibit 4, Deposition of Plaintiff, pg. 51, ln. 19-23).

**RESPONSE:** Admit.

31.    After he determined Plaintiff's name was Timothy Brownlee, Officer Davi then went back up to the door of Plaintiff's residence and knocked on the door and Plaintiff came outside (Exhibit 2, Deposition of Davi, pg. 127, ln. 16-19).

**RESPONSE:** Admit.

32.    Officer Davi states that he asked Plaintiff his name and Officer Davi told him "your name isn't Timothy Sandifer it is Timothy Brownlee" (Exhibit 2, Deposition of Davi, pg. 127, ln. 22-24).

**RESPONSE:** Admit that Davi testified to this statement, but Plaintiff denies that Davi said "your name isn't Timothy Sandifer it is Timothy Brownlee" to him. Exhibit A at 57-60 (Brownlee deposition).

33.    Officer Davi maintains that in response to the question concerning his name, Plaintiff said "what are you going to do about it?" (Exhibit 2, Deposition of Davi, pg. 128, ln. 14-17).

**RESPONSE:** Admit that Davi testified to this statement, but Plaintiff denies that he said "what are you going to do about it" in response to a question concerning his name. Exhibit A at 57-60 (Brownlee deposition).

34.    In response, Officer Davi told Plaintiff he was under arrest for obstructing justice, and he told him to step outside, and to put his hands behind his back (Exhibit 2, Deposition of Davi, pg. 128, ln. 16-21)

**RESPONSE:** Admit that Davi told him he was under arrest and that Davi told him he had given a wrong name and asked him to step outside, but deny that Davi told Plaintiff that he was under arrest for obstruction. Exhibit A at 59-61 (Brownlee deposition).

7

35. According to Officer Davi, Plaintiff turned around and allowed Officer Davi to handcuff him outside of the residence on the porch without incident (Exhibit 2, Deposition of Davi pg. 130, ln. 1-7).

**RESPONSE:** Admit.

36. According to Plaintiff, the officer came to his front door and said that Officer told him that he did not give him the name Timothy Brownlee (Exhibit 4, Deposition of Plaintiff, pg. 58, ln. 1-8).

**RESPONSE:** Admit.

37. Plaintiff states he was told by the officer to step out on the porch, and after stepping outside, he was then handcuffed and he was told he was arrested for "giving wrong name." (Exhibit 4, Deposition of Plaintiff, pg. 58, ln 19-24 to pg. 59, ln.1-7).

**RESPONSE:** Admit.

38. After being arrested, Plaintiff was placed in the back seat of Officer Davi's squad car (Exhibit 2, Deposition of Davi, pg. 133, ln. 7-9)

**RESPONSE:** Admit.

39. After placing Plaintiff in the squad car, Officer Davi transported him to the Bolingbrook Police Station (Exhibit 2, Deposition of Davi, pg. 135, ln, 5-7)

**RESPONSE:** Admit.

40. Officer Davi had to stop enroute to the Bolingbrook Police Station because Plaintiff "was becoming disruptive in the back of the squad car, "spitting, kicking, screaming" was also starting to use his cell phone (Exhibit 2, Deposition of Davi pg. 136, ln. 9-12).

**RESPONSE:** Plaintiff denies that he was becoming disruptive in the back of the squad car by spitting, kicking and/or screaming. Exhibit A at 65-69, 83 (Brownlee deposition); Exhibit D at 9 (Smetters deposition). Plaintiff admits he was using his cell phone.

41. Plaintiff admits he was calling someone on his cell phone when he was in the back of Officer Davi's police car enroute to the police station (Exhibit 4, Deposition of Plaintiff, pg. 69, ln. 1-5).

**RESPONSE:** Admit.

42. Officer Davi testified that he wanted to retrieve the cell phone from Plaintiff for officer safety because "he [Plaintiff] could be calling somebody to tell them where we were to come and do something to me[Davi] to get him out of the back of that squad car. (Exhibit 2, Deposition of Davi, pg. 143 ln.1-8).

**RESPONSE:** Admit that Davi testified to that excuse for why he stopped, but deny that was the reason that Davi actually stopped. Exhibit A at 66-70 (Brownlee deposition).

43. Officer Davi advised the Bolingbrook police dispatch that they were pulling over enroute to the police station (Exhibit 2, Deposition of Davi pg. 149, ln. 12-15)

**RESPONSE:** Admit.

44. Officer Davi opened the back door to the squad after he stopped and grabbed Plaintiff's cell phone (Exhibit 2, Deposition of Davi, pg. 155, ln. 12-14)

**RESPONSE:** Admit that Davi opened the back door to the squad. Deny that Davi grabbed the cell phone; Defendant Smetters grabbed the cell phone. Exhibit A at 75, 78-80 (Brownlee deposition).

45. Officer Davi then shut the back seat door, got back in the car, put it in drive and went to the police station (Exhibit 2, Deposition of Davi pg. 159, ln. 6-10).

**RESPONSE:** Admit that after the stop, Davi then drove to the police station.

46. Officer Davi then told dispatch over the air that he was back enroute the police station (Exhibit 2, Deposition of Davi pg. 159, ln. 13-20).

**RESPONSE:** Admit.

47. Plaintiff maintains that after the squad car stopped while enroute to the police station, Office Davi grabbed the handcuffs and "snatched" plaintiff out of the car backwards. (Exhibit 4, Deposition of Plaintiff, pg. 73, ln. 18-21)

**RESPONSE:** Admit.

48. Plaintiff maintains after he was out of the car, he was pulled up to standing and then was "punched in the stomach," but Plaintiff does not know whether it was with an open or closed fist, he claims that then Officer Davi grabbed his testicles (Exhibit 4, Deposition of Plaintiff, pg. 81, ln. 1-17)

**RESPONSE:** Admit.

49. Officer Davi testified that when he stopped enroute to the Police Station, Plaintiff was never removed form the back seat (Exhibit 2, Deposition of Davi, pg. 180, ln.16-19)

**RESPONSE:** Admit that Davi testified to this, but deny that Plaintiff was never removed from the back seat. *See* Plaintiff's Response to Def. L.R. Stmt. of Facts ¶¶47-48.

50. Upon arriving at the Bolingbrook police station, Officer Davi drove his squad car to the "Sally Port"[garage door] which leads directly to the booking room, and then Officer Davi took Plaintiff to the booking room and attempted to process Plaintiff (Exhibit 2, Deposition of Davi, pg. 169, ln. 1-8) (Exhibit 2, Deposition of Davi, pg. 161, ln. 1-8).

**RESPONSE:** Admit.

51.     Officer Davi stated that Plaintiff would not give any information such as height, weight, emergency contact, and Social Security number (Exhibit 2, Deposition of Davi, pg. 177, ln 19-24 to pg. 178, ln. 1-3).

**RESPONSE:** Admit that Davi stated this, but deny that Plaintiff would not give this information. Exhibit A at 94-96 (Brownlee deposition) (never asked for this information). In fact, the videotape of the booking process demonstrates that Plaintiff complied with every request made of him. *See* Def. Exhibit 5 at 13:13-13:20 (video tape). *See also* Exhibit D at 87 (Smetters deposition) (Plaintiff was compliant during search of his person in the booking room).

52.     Officer Davi stated that Plaintiff refused to have his picture taken as part of the booking process and refused to sign the release of his property (Exhibit 2, Deposition of Davi, pg. 169, ln. 15-18).

**RESPONSE:** Denied. Plaintiff never refused to have his picture taken. Exhibit A at 94 (Brownlee deposition). Deny that the cited evidence establishes that Plaintiff refused to sign the release of his property. In fact, Davi testified that he has no recollection whether he even asked Plaintiff to sign for the release of his property or whether Plaintiff did or did not sign it. Exhibit B at 178-79 (Davi deposition). Plaintiff testified that he never refused to sign the property sheet. Exhibit A at 99 (Brownlee deposition). Moreover, the videotape of the booking process demonstrates that Plaintiff complied with every request made of him and shows no evidence that he ever refused to have his picture taken or refused to sign a release of his property. *See* Def. Exhibit 5 at 13:13 - 13:20 (video tape).

53.     Officer Davi's Arrest And Booking form reflects that Plaintiff refused to provide information (Exhibit 2, Deposition of Davi, with Exhibit 4 attached)

11

**RESPONSE:** Denied. The only evidence cited in support of this "undisputed fact" consists entirely of hearsay. A police report containing a statement supposedly attributed to Plaintiff is hearsay. *See United States v. Wyatt*, 437 F.2d 1168, 1170 (7th Cir. 1971) (concluding that a police report containing third-party statements was hearsay). *See also United States v. Mackey*, 117 F.3d 24, 28 (1st Cir. 1997) ("[H]earsay statements by third persons ... are not admissible under [Rule 803(8)(C)] merely because they appear within public records."); *United States v. Ortiz*, 125 F.3d 630, 632 (8th Cir. 1997). Moreover, deny that Plaintiff refused to provide this information. Exhibit A at 96-98 (Brownlee deposition) (Plaintiff denied refusing to provide the information listed on this exhibit).

54.   Officer Davi testified that either he or Officer Smetters notified their immediate sergeant, Sergeant Hilliard, that Plaintiff had refused to comply with the booking procedures, and that is how Sergeant Hilliard got brought into the booking room. (Exhibit 2, Deposition of Davi, pg. 184, ln. 9-14).

**RESPONSE:** Admit that Davi testified as such, but deny that Plaintiff refused to comply with booking procedures. *See* Plaintiff's Response to Defendants' L.R. 56.1 Stmt of Facts, ¶¶51-52.

55.   Officer Davi testified that he told Plaintiff that he was being charged and he was going to be processed and released, but if he refused to comply with being processed he was going to be held then transferred to the Will County Adult Detention Facility (Exhibit 2, Deposition of Davi, pg. 184, ln. 15-24).

**RESPONSE:** Denied that Davi had any such conversation with Plaintiff about what would happen if he refused to comply with the booking process, because Davi never requested that he comply with the booking process. Exhibit A at 94-100 (Brownlee deposition). *See also*

Exhibit D at 102 (Smetters deposition) (Plaintiff was placed in cell so that Plaintiff could be processed, not because Plaintiff was refusing to be processed).

56. Officer Davi's Arrest and Booking form indicated that Plaintiff was arrested and charged with obstruction of justice, disturbing the peace, and resisting arrest (Exhibit 2, Deposition of Davi, Ex. 4 attached)

**RESPONSE:** Admit that the form states this, admit that Plaintiff was arrested, but deny that Plaintiff was charged with disturbing the peace or resisting arrest. *See* Exhibit I at 000055-000056 (certified copy of Will County Court file, documenting that Plaintiff was only charged with attempted obstruction of justice).

57. Officer Davi identified himself, Plaintiff, Smetters, and Sergeant Hilliard in viewing a video of the Bolingbrook Police Station from May 28, 2007 (Exhibit 2, Deposition of Davi, pg. 255, ln. 19-25, pg. 256, ln. 13-19, pg. 263, ln. 7-9). Likewise, Plaintiff identified himself in the video from that date (Exhibit 4, Deposition of Plaintiff, pg. 146, ln. 4-21)

**RESPONSE:** Admit.

58. The Video of Plaintiff's time in the police station, reveals that Plaintiff's sandals were removed prior to him being placed in a cell at the Bolingbrook Police Department. (Exhibit 5, Video, 13:14:30)

**RESPONSE:** Admit.

59. The Video reveals that Plaintiff took off his sweatpants, but Officer Smetters, refused to take his sweat pants. (Exhibit 5, Video, 13:17:31)

**RESPONSE:** Admit only that Defendant Smetter initially did not take Plaintiff's sweatpants. Deny that Smetters never took Plaintiff's sweatpants.

60. The Video reveals Officer Smetters removing the drawstring from Plaintiff's sweatpants and Officer Davi handed the pants back to Plaintiff, but Plaintiff refuses to take them, so Officer Davi places them on the ground. (Exhibit 5, Video, 13:16:10 to 13:19:03)

**RESPONSE:** Deny that the videotape shows that Plaintiff refused to take his pants.

61. The Video reveals Plaintiff walking into his cell and the officer giving him his pants. (Exhibit 5, Video, 13:19:27)

**RESPONSE:** Admit that video shows officer throwing pants on floor of cell. Deny that the videotape reveals an officer giving Plaintiff his pants directly.

62. The Video reveals that Officer Smetters opened Plaintiff's cell door at 15:27:37 (Exhibit 5, Video, 15:27:37)

**RESPONSE:** Admit.

63. Plaintiff states that when the officer came to his cell and opened the door, the officer told him to come out, but Plaintiff testified that he told the officer he wanted his shoes first (Exhibit 4, Deposition of Plaintiff, pg. 153, ln. 12-13).

**RESPONSE:** Admit that Plaintiff said, "could I have my shoes, please?" Exhibit A at 107, 153 (Brownlee deposition).

64. Officer Smetters stated that he told Plaintiff that the protocol is a detainee gets his shoes in the booking area (Exhibit 6, Deposition of Smetters, pg. 157, pg. 19-24).

**RESPONSE:** Denied that Smetters told Plaintiff about the protocol or where he could get his shoes. Exhibit A at 107-08 (Brownlee deposition). Further deny that there is any such protocol. Exhibit B at 172 (Davi deposition) ("Q: So unless you found some type of weapon or contraband in his sandals or Mr. Brownlee didn't want them back you would typically return

14

them to him? A: Typically, yes."); Exhibit E at 48 (Hilliard deposition) (left to officer's discretion whether to permit arrestee to have shoes in the cells).

65. Officer Smetters testified that it was not safe to give a pretrial detainee his property back in his cell (Exhibit 6, Deposition of Officer Smetters, pg, 158, ln. 8-16)

**RESPONSE:** Admit that he testified to that. Deny that it is actually unsafe to permit an arrestee have flip-flops in a cell. Exhibit H at 63-64 (Johnson deposition) ("I have been in this business for thirty-nine years. I have never heard of anybody getting hurt by flip-flops.").

66. Due to Plaintiff's failure to come out of his cell, Officer Smetters and Officer Hilliard dragged Plaintiff out of his cell. Plaintiff remained limp and would not get up (Exhibit 6, Deposition of Smetters, pg. 129, ln.1-4)

**RESPONSE:** Admit.

67. Once Plaintiff was drug into the booking room, he was told to put his arms behind his back. At that point he stiffened his arms and would not allow the officer to move his arms behind him (Exhibit 6, Deposition of Smetters pg. 129, ln. 17-21)

**RESPONSE:** Denied. The officers were pulling and twisting Plaintiff's arms in different directions while he was seated on the floor, spinning him around, and Plaintiff was not resisting. Exhibit A at 113-14, 120, 128, 155 (Brownlee deposition); Def. Exhibit 5 at 15:28-15:29.

68. The Video reveals that after Plaintiff was dragged into the booking room, plaintiff was sitting on the floor, he had his arms "straight out" from his body and he was spinning around rather than placing his hands behind his back. (Exhibit 5, Video, 15:28:21)

**RESPONSE:** Admit that the videotape shows Plaintiff sitting on the floor. Deny the remainder of the sentence. The videotape shows Plaintiff being pulled around by Defendants

15

Hilliard and Smetters, while Davi placed his knee and his weight on the back of Plaintiff's head. Def. Exhibit 5 at 15:28:21 (videotape).

69. Plaintiff admits the officers were telling him to "quit resisting" when he was on the floor of the booking room after he was taken out of his cell (Exhibit 4, Deposition of Plaintiff, pg. 154, 17-18).

**RESPONSE:** Admit.

70. The Video reveals that Plaintiff was not punched or kicked or beaten while in the booking room after he was taken out of his holding cell. (Exhibit 5, Video,15:27:00 to 15:28:40)

**RESPONSE:** Admit.

71. The Video reveals Officer Smetters was holding on to Plaintiff's left arm and Sergeant Hilliard was holding on to his right arm and Officer Davi was holding on to Plaintiff head. (Exhibit 5, Video, 15:28:20 to 15:28:40)

**RESPONSE:** Admit.

72. Officer Davi testified he was "trying to control his head so he wouldn't head butt any of the officers as they were trying to handcuff him" (Exhibit 2, Deposition of Davi, pg. 211, ln. 15-18).

**RESPONSE:** Admit that Davi testified to this fact. Deny that Plaintiff was trying to head butt any of the officers or resisting in any fashion. Exhibit A at 155 (Brownlee deposition).

73. The Video reveals it took the three officers 20 seconds to get Plaintiff's hands behind his back to handcuff him when he was in the booking room. (Exhibit 5, Video, 15:27:20 to 15:27:40)

**RESPONSE:** Deny that the cited material supports the contention in this statement.

74. After Plaintiff was handcuffed, he stated he could not get up because of a cramp in his leg and his back hurt and he asked to see a doctor (Exhibit 4, Deposition of Plaintiff, pg. 128, ln. 16-22)

**RESPONSE:** Admit.

75. The paramedics then arrived (Exhibit 4, Deposition of Plaintiff, pg. 130, ln. 10-11), and then they transported Plaintiff to the hospital (Exhibit 4, Deposition of Plaintiff, pg. 131, ln. 14-15)

**RESPONSE:** Admit.

76. The radiology report of an x ray of the hand and thumb provided by plaintiff in this litigation indicates there was <u>no</u> fracture noticed. (Exhibit 4, Deposition of Plaintiff, with Exhibit 5 attached)

**RESPONSE:** Denied. The report (which Plaintiff objects to on hearsay grounds), states that "no definite *acute* fracture is seen." Exhibit J. Furthermore, according to Davi, the doctor who saw Plaintiff told him that he had either a fractured or a broken thumb. Exhibit B at 221-22 (Davi deposition) ("I don't know if they said he actually had a broken thumb or fractured thumb. I don't know. I can't remember the exact terminology. ... It was either broken or fractured."). Smetters was told by either the medical staff or Officer Davi that Plaintiff's thumb was broken. Exhibit D at 144 (Smetter deposition). Plaintiff's discharge paperwork indicates he had a fractured finger. Exhibit J at 000006-11 (medical records). Plaintiff was also given a "posterior mold thumb spica splint" on his right thumb and wrist area. Exhibit J at 000045 (medical records).

77. Officer Davi stated that Bolingbrook Police Officers do not prepare criminal complaints in Will County for prosecution. (Exhibit 2, Deposition of Davi, pg. 68, ln. 1-3).

17

**RESPONSE:** Admit that Davi stated this.

78. The criminal complaint against Plaintiff shows that Officer Davi did not prepare or sign the criminal charge of obstructing justice. (Exhibit 7)

**RESPONSE:** Admit.

79. The Certified Disposition from Will County Circuit Court states that on 5/29/07 the docket reflects

> People present by DEBRA J. WENDLING.  Defendant present in custody of the Will County Sheriff pursuant to video court. Complaint is filed and copy served on the defendant.  Charges and rights explained.  Defendant enters a plea of not guilty.  Defendant advises the Court he will hire private counsel. Case is set for jury pretrial.  Based on the sworn testimony of Assistant State's Attorney, DEBRA J. WENDLING, Court finds probable cause to continue defendant's detention.  Gerstein hearing completed.  Bond set in the amount of $1,000.00 – 10% to apply.  Copy of the mittus issued in open court.  Defendant remanded to the custody of the Will County Sheriff.

(Exhibit 8)

**RESPONSE:** Admit.

80. On 9/20/07, the Criminal Docket reflects the criminal case was dismissed nolle prosequi. (Exhibit 8)

**RESPONSE:** Admit.

                                                  RESPECTFULLY SUBMITTED,

                                                  ____s/Russell Ainsworth_____
                                                      Attorneys for Plaintiff

Arthur Loevy
Jon Loevy
Russell Ainsworth
LOEVY & LOEVY
312 N. May St., Suite 100
Chicago, IL 60607
(312) 243-5900

## CERTIFICATE OF SERVICE

    I, Russell Ainsworth, an attorney, certify that on August 14, 2008 I delivered by electronic means a copy of the attached Filing to all counsel of record.


                                                                         ____s/Russell Ainsworth_____