IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY BROWNLEE, | ) | |
| | ) | |
| Plaintiff, | ) | 07 C 7085 |
| | ) | |
| v. | ) | Judge Ruben Castillo |
| | ) | |
| VILLAGE OF BOLINGBROOK, | ) | |
| BOLINGBROOK POLICE OFFICER DAVI, | ) | |
| BOLINGBROOK POLICE OFFICER | ) | |
| SMETTERS, and BOLINGBROOK POLICE | ) | |
| SERGEANT HILLIARD, | ) | |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

**PLAINTIFF'S LOCAL RULE 56.1(b)(3)(B)
<u>STATEMENT OF ADDITIONAL FACTS</u>**

Now Comes Plaintiff, Timothy Brownlee, by his attorneys, Loevy & Loevy, and respectfully submits the following Statement of Additional Facts:

1. On May 28, 2007, Plaintiff was planning to host a Memorial Day barbecue for his immediate and extended family at his home in Bolingbrook, Illinois. Exhibit A at 11-13, 17 (Brownlee deposition).

2. At the time, Plaintiff had been having problems with his next-door neighbor (Mr. Pausche) picking on his children and complaining about Plaintiff's dog allegedly defecating on the neighbor's lawn. Exhibit F at 16-19 (Jerome Pausche deposition).

3. Mr. Pausche said "I heard what you said," and Plaintiff responded that he

wanted his neighbor to hear him. Plaintiff then drove to the store with his fiancé, Tiggen Sandifer.  Def. L.R. Stmt. ¶5; Exhibit C at 15, 35 (Sandifer deposition).

4. Defendant Davi received a dispatch to respond to a "neighbor dispute" at Plaintiff's neighbor's house.   Exhiibt B at 92 (Davi deposition).

5. Davi responded to the scene and spoke with Plaintiff's next-door neighbors, the Pausches, who told him that the Pausches and Plaintiff were having an "ongoing dispute" with Plaintiff "regarding a bunch of issues, children on their grass, their dog defecating on their grass, issues like that.  Mostly to do with the children." Exhibit B at 97 (Davi deposition).

6. The Pausches told Davi that they had a verbal altercation with Mr. Brownlee in which Plaintiff "was telling his children not to listen to [Mr. Pausche] and for his kids to tell him if [Mr. Pausche] tells them anything."  Mr. Pausche then said "I heard what you said."  According to Mr. Pausche, Mr. Brownlee responded "I meant for your mother fucking white ass to hear that."  Exhibit F at 40 (Jerome Pausche deposition); Exhibit K.

7. During the interaction between Mr. Pausche and Mr. Brownlee, Plaintiff was never on the Pausches' property.  In fact, at the time of the exchange, Plaintiff was backing out of his driveway, and the Pausches were on the front porch of their home. Exhibit F at 40-41 (Jerome Pausche deposition); Exhibit G at 23 (Rose Pausche deposition); Exhibit C at 14-16 (Sandifer deposition); Resp. Def. L.R. Stmt. Facts ¶6.

8. Davi testified that he did not believe that he had probable cause to arrest

Plaintiff based on what the Pausches told him or at any point up until he allegedly found out that Plaintiff's name was Brownlee:

> Q: So based on what they told you at the first scene you didn't believe you had probable cause to arrest Mr. Brownlee?
> A: Right. There is no probable cause there to arrest at that time without getting the other half of the story.

Exhibit B at 99-100 (Davi deposition); *id*. at 120 ("Q: So up until the time that you found out that Mr. Brownlee's name was Brownlee, you didn't have any probable cause to arrest either Mr. Brownlee or anybody else at the scene? A: Correct.").

     9.     Davi then saw Plaintiff arrive in his car, which Plaintiff was driving. Exhibit B at 103 (Davi deposition); Exhibit A at 37 (Brownlee deposition).

     10.     Davi spoke to Plaintiff, who confirmed that when he was leaving his house, he told his children not to confront his neighbor, but rather to tell him or another adult. Exhibit A at 45 (Brownlee deposition).

     11.     Davi then asked for Plaintiff and his fiancé's (Tiggen Sandifer) identification, who provided their identification to Davi. Exhibit A at 46-50 (Brownlee deposition).

     12.     Davi took the identification from them, walked away, and then returned their IDs to them, telling them "Hey, everybody try to get along." Plaintiff then went inside his home and started watching television. Exhibit A at 53-56 (Brownlee deposition).

     13.     About fifteen to thirty minutes later, Davi came to the front door and

accused Plaintiff of giving him a false name. Plaintiff denied that he had done any such thing, and explained that he had provided his identification, as requested. Exhibit A at 56-59 (Brownlee deposition).

14. Plaintiff had no warrants out for his arrest and the only conviction he had ever had for a criminal offense was court supervision for a misdemeanor battery when he was seventeen years-old. Exhibit B at 118 (Davi deposition); Exhibit L at ¶3 (Interrogatory Responses).

15. Plaintiff and his fiancé share the same birth dates, but one year apart. Exhibit M at ¶11 (First Amended Complaint).

16. Defendant Smetters testified:

Q: Is it a crime to say mother fucking white ass to somebody?
A: It depends on how you do it.
       ***
Q: Just saying that in itself, saying mother fucking white ass to somebody while they were 30 to 40 feet away?
A: I don't know.

Exhibit D at 120 (Smetters deposition).

17. Davi testified that the Pausches told him the reason they called 911 was because Plaintiff cursed at them: "And [Plaintiff] cursed in the process [of telling the Pausches not to talk to Plaintiff's children] which made them alarmed and disturbed to call the police." Exhibit B at 98-99 (Davi deposition).

18. The entirety of the Pausches' written statement is as follows:

Around 1 p.m., May 28, 2007, I was talking to my husband on the front porch. The neighbor at 3 Rye Court came out with his wife (I think) [sic].

He was telling his children not to listen to my husband and for his kids to tell him if my husband tells them anything not to listen to him and he said it loud enough for us to hear. My husband said I hear you and [Mr. Brownlee] said "I want you to hear me" "I want your mother fucking white ass to hear me" at that point we came in the house and we called 911. He was still yelling and then drove off. He also raised his hand towards us as he wanted to emphasize what he was saying. We are willing to sign complaints.

Exhibit K (Pausches' statement).

19. Plaintiff denied that he had done anything wrong - neither swearing at the Pausches nor taking any action to threaten or interfere with them. Exhibit A at 35, 45 (Brownlee deposition); Exhibit B at 105-07 (Davi deposition).

20. Mr. Pausche explained that what he meant by "menacing" was Plaintiff walking "fast and deliberate[ly]." Exhibit F at 41 (Jerome Pausche deposition).

21. Rose Pausche testified that she was "shocked" to see Plaintiff arrested and put in handcuffs:

> Q: Was Brownlee arrested before or after you signed the document which is before you as Exhibit 1?
> A: That time frame I don't remember. That time frame I don't remember because I was shocked to see him being arrested.
> Q: Why were you shocked to see him being arrested?
> A: Because, I mean, there was no physical fight or anything like that. I mean, I was just surprised that the police came and took him out in handcuffs.

Exhibit G at 36-37 (Rose Pausche deposition).

22. Davi never testified in court on Plaintiff's criminal case. Exhibit B at 70-71 (Davi deposition).

23. After arresting Plaintiff and placing him in his squad car, Davi berated

Plaintiff for being a thirty-five year-old man picking on an eighty year-old. Exhibit A at 64-65 (Brownlee deposition).

24.  Davi stated that "niggers weren't supposed to be in Bolingbrook," and that when "he get[s] [Plaintiff] back to the station, he's going to kick [Plaintiff's] ass." At that point, Plaintiff wanted to call someone and let them know he was being taken to the police station to be beaten. Exhibit A at 65-66 (Brownlee deposition).

25.  Plaintiff, whose cell phone was still attached to his pants, reached over and called his brother, a Chicago police officer. Exhibit A at 68-69 (Brownlee deposition); Exhibit M at ¶15 (First Amended Complaint).

26.  Defendant Davi, upon hearing Plaintiff making a call on his cellular telephone, said "this dude is recording me" and pulled over. Davi then opened the back door to the squad car and pulled Plaintiff out of the car backwards. Exhibit A at 70, 72-73, 76 (Brownlee deposition); Exhibit B at 151 (Davi deposition).

27.  While Plaintiff was still handcuffed, Davi punched him in the stomach, grabbed his testicles, and asked Plaintiff who he called on his cell phone, to which Plaintiff responded that Davi was hurting him. Exhibit A at 74 (Brownlee deposition).

28.  Smetters grabbed Plaintiff's cell phone while Davi pulled Plaintiff's handcuffed wrists behind his head in an uncomfortable position while asking him for the code to his cell phone. Exhibit A at 73, 79-80, 82 (Brownlee deposition).

29.  Smetters claims that although he remembers Davi stopping his squad car on the way to the station, he has absolutely no memory of the details of the event, and

cannot recall one way or the other whether Davi, himself, or Plaintiff ever exited their squad car while stopped.  Exhibit D at 4, 8 (Smetters deposition) ("I remember myself and my marked squad pulling behind [Davi's].  After that, I really don't remember [what I saw]").

30.     At the station, Defendants Smetters and Davi took Plaintiff's flip-flops and required Plaintiff to remove his pants, despite the fact that Plaintiff told them that he was not wearing any underclothes.  Plaintiff was compliant during the search of his person.  Exhibit A at 87-89 (Brownlee deposition); Exhibit D at 87 (Smetters deposition).

31.     Plaintiff did not resist Defendants, although the officers began screaming "stop resisting" to which Plaintiff screamed back "I'm not resisting."  The Defendants then pulled and twisted Plaintiff's arms in different direction while he was sitting on the floor, spinning him from right to left.  Exhibit A at 113-14, 120, 128, 154-55 (Brownlee deposition); Def. Exhibit 5 at 15:28-15:29 (Videotape).

32.     The Sergeant, who was grabbing Plaintiff's right hand, then grabbed his right thumb and "popped and cracked it."  Exhibit A at 114 (Brownlee deposition); Def. Exhibit 5 at 15:28-15:29 (Videotape).

33.     Plaintiff, now handcuffed, reported to the Defendants that he was injured and needed a doctor.  Defendant Davi became irate, claiming that he "had a steak waiting on him" and that Plaintiff was a "[f]ucking nigger."  Exhibit A at 128-29 (Brownlee deposition).

34.     At the hospital, Plaintiff, along with Defendants Smetters and Davi, were

all told that Plaintiff's thumb was broken. The hospital staff dressed his injury, immobilized his thumb so that it stuck out away from his hand. Exhibit A at 132-34 (Brownlee deposition); Exhibit B at 221-22 (Davi deposition); Exhibit D at 140 (Smetters deposition); Exhibit N (photographs).

    35.    The injury to Plaintiff's thumb was extremely painful - it took approximately two and a half to three months to heal, and he still suffers some discomfort in that thumb joint. Exhibit D at 138 (Smetters deposition); Exhibit L ¶6 (Interrogatory Responses).

    36.    Plaintiff's thumb was not injured prior to the handcuffing in the booking room. Exhibit D at 136 (Smetters deposition).

    37.    Defendant Hilliard testified that was not forced to employ any pressure point techniques on Plaintiff's thumb to gain compliance. Defendant Hilliard denied taking any special steps to prevent injury to Plaintiff's thumb. Hilliard does not even recall whether or not he grabbed Plaintiff's thumb. Exhibit E at 110 (Hilliard deposition).

    38.    Defendant Smetters' car was parked directly behind Defendant Davi's, and was equipped with a video camera that faced forward. Exhibit D at 82-84 (Smetters deposition).

    39.    Plaintiff was only charged with attempted obstruction of justice. *See* Exhibit I (Will County Court file).

RESPECTFULLY SUBMITTED,


\_\_\_\_s/Russell Ainsworth\_\_\_\_\_
Attorneys for Plaintiff

Arthur Loevy
Jon Loevy
Russell Ainsworth
LOEVY & LOEVY
312 N. May St., Suite 100
Chicago, IL 60607
(312) 243-5900

**CERTIFICATE OF SERVICE**


I, Russell Ainsworth, an attorney, certify that on August 14, 2008 I delivered by electronic means a copy of the attached Filing to all counsel of record.


\_\_\_\_s/Russell Ainsworth\_\_\_\_\_