CGP/438218                                                                                              6121-213

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY BROWNLEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 07 CV 7085 |
| VILLAGE OF BOLINGBROOK, | ) | |
| BOLINGBROOK POLICE OFFICER | ) | Judge Ruben Castillo |
| DAVI, | ) | |
| BOLINGBROOK POLICE OFFICER | ) | |
| SMETTERS, and | ) | |
| BOLINGBROOK SERGEANT HILLIARD, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**ALL DEFENDANTS' REPLY MEMORANDUM
IN SUPPORT OF SUMMARY JUDGMENT**

Craig G. Penrose
Tressler, Soderstrom, Maloney & Priess, LLP
Sears Tower, 22nd Floor
233 South Wacker Drive
Chicago, Illinois 60606
312/627-4000

**ATTORNEY FOR ALL DEFEDANTS**

I.  **Introduction**

Plaintiff attempts to change the standard for false arrest by claiming a trial is needed to determined whether Plaintiff actually violated the disorderly conduct statute. That is wrong. The correct standard is what the 911 caller told Officer Davi on scene. That information is undisputed and provides probable cause, or at least qualified immunity.

With respect to the excessive force claim, Plaintiff argues the video does not show anything. But *Scott v. Harris*, 127 S.Ct. 1769, 1776 (2007) says otherwise, that the video should be viewed and excessive force determined as a matter of law. The video shows no punching or beating or other dramatic behavior. Plaintiff admits he failed to come out of his cell and the video shows him resisting being handcuffed. Force was permissible. He claims his thumb was broken, but has no proper admissible evidence.

But even if he did have such proper evidence (even in light of the x ray medical record that says the thumb was not broken), such an injury would <u>still</u> not be excessive in light of his repeated refusals to comply with being handcuffed and the threat he posed. Plaintiff also argues that the Fourth Amendment applies on a "continuing seizure" theory, but that was rejected by the Seventh Circuit. The correct standard is the Fourteenth Amendment which applies the Eighth Amendment standard for force against detainees. But even under the Fourth Amendment, the force used was clearly not excessive as borne out by the video in light of the circumstances and the split second decisions made by the officers during the handcuffing of Plaintiff, or there was at least qualified immunity. Lastly, the alleged force on the way to the station was de minimus, no matter what constitutional standard applies.

II.  **Plaintiff Improperly Denied Various Defendant Rule 56.1 Statements**

In Defendants' Rule 56.1 ¶ 6, 8, Plaintiff admits that Mr. Pausche testified to what occurred, but denied that it happened. Again, this dispute is not material because officers are allowed to rely on witness accounts of events the officers did not witness. *Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 680 (7th Cir. 2007). Plaintiff objected to Defendant's ¶ 11 claiming it is inadmissible. (the statement that Mr. Pausche told Officer Davi everything that had just happened with Plaintiff prior to him making the 911 call). Objections are not proper in responding to Rule 56.1. *Navin v. Park Ridge*, Case No. 00 C 2735, 2002 WL 7744300. Moreover, the Seventh Circuit is clear that statements made to an officer of what happened are not hearsay for probable cause purposes. *Jewett v. Anders*, 521 F.3d 818, 825, n. 5 (7th Cir.

1

2006). But Plaintiff admits paragraph 11 anyway.

Plaintiff improperly denied Defendant's' ¶ 42. (Davi testified that he stopped enroute to the police station because he was concerned for his safety). Plaintiff points to no evidence that Davi did not think that, and moreover, he cites to 5 pages of transcript in support of the so called denial. Failure to provide specific citations is a violation of Rule 56.1 and thus the statement is deemed admitted. *Malec v. Sanford* 191 F.R.D. 581, 583 (N. D. Ill. 2000)(specific citation means page and paragraph).

Plaintiff improperly denied Defendants' ¶ 65 (it is unsafe to give property back in cell). Plaintiff denies the statement stating it is not unsafe to have flip flops in a cell. Plaintiff improperly denied the statement because Officer Smetters stated it was unsafe to *give property* back to the prisoner in the cell itself, not whether it was unsafe to have certain property in the cell in the *first place*. Defendants' ¶ 65 should be deemed admitted.

Plaintiff improperly denied Defendants' ¶ 67 (Smetters told Plaintiff to put his arms behind his back for handcuffing after extracting him from his cell). Plaintiff cites to 5 pages of deposition transcript. This violates the Rule 56.1 need for specific citations. *Malec v. Sanford* 191 F.R.D. 581, 583 (N.D. Ill. 2000)(specific citation means page and paragraph). This statement should be deemed admitted on this ground. Moreover, this was improperly denied because none of the cited deposition pages (all 5) denies that Smetters told Plaintiff to put his arms behind his back for handcuffing. Defendants' ¶ 67 should be deemed admitted.

Plaintiff denies Defendants' ¶ 76 which was an x-ray report stating no acute fracture. He claims it is hearsay. But he goes on to submit different medical records that are also hearsay! And he also suggests alleged statements to him from unknown doctors that the thumb was allegedly broken, but those statements are also clearly hearsay. But more than that, in addition to being hearsay, any expert medical opinion in any form (records or testimony) concerning a diagnosis whether Plaintiff's thumb was "broken" must be excluded as no medical experts have been disclosed under Rule 26(a)(2). This is consistent with Defendants argument in the Opening Memorandum in this case (pg. 7), that Plaintiff needs expert testimony to demonstrate a medical diagnosis of an alleged broken thumb. See *Musser v. Gentiva*, 356 F.3d 751,756 (7th Cir. 2004), he cannot get around that failure now.

### III. Plaintiff Rule 56.1 Response Statement Includes Inadmissible Evidence

In Plaintiff's Rule 56.1 Response, he enclosed a multitude of inadmissible evidence that

cannot be considered. He enclosed unauthenticated, unsigned, hearsay illegible medical records (Plaintiff's Exhibit J). He enclosed an unauthenticated statement by the 911 caller (Exhibit K). He enclosed his own unauthenticated, *unsworn, unsigned* Interrogatory Responses (Exhibit L). He enclosed his own Amendment Complaint (Exhibit M), and unauthenticated photographs (Exhibit N). None of this evidence can be considered, and his additional statements ¶¶ 14, 18, 25, 35 must be ignored. In addition, as explained above the hearsay statement and improper Rule 26(a)(2) diagnosis in ¶¶ 34, must also be ignored.

### IV. It is Undisputed what the 911 Caller Told Davi –Demonstrating Probable Cause

Plaintiff's false arrest argument gets off on the wrong foot by misrepresenting the standard in a false arrest case. Plaintiff states "Defendant suggests that Plaintiff might be guilty of disorderly conduct."(Plaintiff's Response, pg. 1) In the first place, Defendant never stated whether Plaintiff was "guilty" of anything, and whether Plaintiff is "guilty" of anything is irrelevant in this case. The proper inquiry is whether the facts relayed to a reasonable officer at the scene could have cause him to believe that there was probable cause.

Obviously, Plaintiff cannot dispute what Mr. Pausche said he *told* Officer Davi at the scene, as Plaintiff was not there. And what Mr. Pausche says he told Officer Davi on the scene is all that matters here. *Driebel v. City of Milwaukee*, 298 F.3d 622, 643 (7th Cir.2002)(in evaluating whether an officer had probable cause, we "must consider the facts as they would have reasonably appeared to the arresting officer *'seeing what he saw, hearing what he heard'* at *the time of the incident*.")(emphasis added). Mr. Pausche testified that he relayed the incident to the officer at that time as Plaintiff getting out of his car, walking towards Mr. Pausche in a fast and *menacing* manner, and stating "I wanted your mother fucking white ass to hear that." Mr. Pausche testified in deposition that he was in fear based on Plaintiff's unreasonable behavior and called 911, told the dispatch he was being threatened, and said that he told the officer all of the above when Officer Davi arrived on scene (S 5, 6, 7)[1].

Faced with that, Plaintiff attempts to argue that simply swearing at someone does not "breach the peace" or constitute disorderly conduct. (Plaintiff's Response, pgs. 1, 4, 5). But there is clearly much more here than simply swearing at someone, and Plaintiff's conduct is of a much more disturbing nature. In this case a younger man, Plaintiff got out of his car and moved in a fast pace and "menacing" manner toward Mr. Pausche, a 73 year old man. And while it is true

---

[1] "S__" refers to Defendants' Rule 56.1 Statement of Facts

3

that Plaintiff swore at Mr. Pausche, the context of that stating "I wanted your mothing fucking white ass to hear that" clearly implied a threat in light of his behavior and Mr. Pausche's earlier bland comment ("I heard you"), and Mr. Pausche certainly took it as a threat, as reflected in him immediately going into his house, calling 911, and telling the operator that he was being threatened (S 9).

Plaintiff's reliance on *People v. Douglas*, 331 N.E.2d 359 (Ill. App. Ct. 1975) is off point because in that case the swearing was directly stated to an officer, and there was nothing else. Likewise, in *People v. Bradshaw*, the patron was outside a bar screaming obscenities, nothing else happened, and again the bystanders' peace was not breached. (Plaintiff's Response, pg. 5 )

And Plaintiff's claim that Mr. Pausche stated he did not tell Officer Davi he was threatened and menaced is just plain wrong (Response, pg. 5). Here is Mr. Pausche's testimony:

> A. He [Plaintiff] started getting out of his car and started coming towards me and he says, I meant for your mother fucking white ass to hear that. And with that, I just turned around, went in the house and called. 911.
>
> Q. Did he follow you into the house?
>
> A. No. He didn't even—I don't even think he came on the property, but he was walking towards us in a menacing way.
>
> \* \* \*
>
> Q. What did you tell the Bolingbrook police officer happened?
> A. Exactly what I just stated.
> Q. No change at all; those were the exact words you used?
> A. No. Yes.

(Defendants' Exhibit 3, pg.40, ln. 20-24 to pg. 41, ln. 1-4, pg. 44, ln. 20-24)(S 4-9). And the fact that Officer Davi did not verbatim, "regurgitate" the exact phrases is beside the point. What is undisputed was that Mr. Pausche stated that he told the officer all that "*at the time of the incident.*" *Dribel* . Plaintiff ignores that critical difference.

Numerous cases have found a person violated the disorderly conduct statute on similar circumstances. The touchstone of all these cases is the conduct is "unreasonable" in light of the circumstances. *Biddle v. Martin*, 992 F.2d 673 (7th Cir. 1993)(yelling and screaming at officer for 10 minutes in light of car being towed unreasonable and a breach of the peace); *Penn v. Chicago State University,* 162 F. Supp.2d 968, 976 (N. D. Ill. 2001)(student outside during fire drill began yelling and pounding on door to let him back into dorm was unreasonable and breach of the

4

peace); *People v. Davis*, 291 Ill.App.3d 552, 683 N.E.2d 1260 (Ill. App. Ct. 1997) (Defendants actions of blocking way with car, getting out at traffic light, and yelling through car window to victim about bad driving considered unreasonable in light of circumstances).

Here, Plaintiff's conduct is extremely unreasonable, in light of the circumstances. In light of Mr. Pausche's comment "I heard what you said" (S 5), it was unreasonable for a younger man (35 years old) to react by getting out of his car, begin walking in a fast deliberate and menacing manner toward a 73 year old man, and directed a veiled threat stating "I wanted your white mother fucking white ass to hear me." This is probable cause.

V.      **What People "Think" About the Events is Irrelevant.**

Obviously unable to mount a challenge to Mr. Pausche's testimony of what he said to the officer, Plaintiff is also wrong on false arrest law in stating that whether such conduct of the Plaintiff is "reasonable" presents a jury question. (Plaintiffs' Response, pg 7). Again this is incorrect, because what <u>is</u> at issue is what information a reasonable officer would have received in *Officer Davi's* position as told at the scene by Mr. Pausche, and whether that information demonstrates that a reasonable officer would believe that there was probable cause. That is a legal question based on undisputed facts. This was the point made in *Askew v. City of Chicago*, 440 F.3d 894 (7th Cir. 2006) and the Seventh Circuit rejected the same argument Plaintiff is making here. See also, *Smith v. Lamz*, 321 F.3d 680, 684 (7th Cir. 2003) (when "what happened" questions are not at issue, the ultimate resolution of whether probable cause existed is a question of law.)

So Plaintiff's further claims that it was important about Officer Davi's "subjective" belief of the information he was given by Mr. Pausche and whether the Pausches' were "shocked" that Plaintiff was arrested is wrong and such alleged statements are completely irrelevant to the probable cause issue (Plaintiff's Response, 7-8). Plaintiff is grasping at straws.

Finally, the case of *Devenpeck v. Alford*, 543 U.S. 146, 125 S.Ct. 160 L.Ed.2d 537 (2004) is virtually identical to this situation. In that case, state patrol pulled over a car because he thought the driver was impersonating an officer. However, later he found that the person was recording the officer's conversation. He was only arrested for violation of the privacy act. That criminal case was dismissed. In the § 1983 false arrest claim, the Supreme Court held that even though the person was *not arrested for impersonating an officer or even charged with that offense,* he <u>could</u> have been arrested, and that was all that matters, even if it was "not closely

5

related" to the privacy act claim facts. In this case, the disorderly conduct is closely related to the state charge of obstruction of justice (for lying about his name), but even if it was not, *Alford* dictates that under § 1983, this scenario can supply probable cause. There was probable cause.

VI. **In the Alternative, Qualified Immunity Exists for the Arrest**

Plaintiff barely addresses the important qualified immunity issue (Plaintiff's Response, pg. 19). As explained, qualified immunity is a legal question, and requires the court to find whether there could be a constitutional violation (here there was not) in the first place and even if there was, whether the undisputed facts would have put a reasonable officer on notice that the case law "clearly establishes" that his conduct was improper. *Saucier v. Katz*, 533 U.S. at 202. So the "clearly established" prong is also on an objective basis.

Plaintiff makes the fundamental error recognized in *Anderson* that the qualified immunity analysis cannot be cast at such a high level (i.e. absence of probable cause is unconstitutional as claimed by Plaintiff). Rather *Anderson* stated

> The operation of this standard, however, depends substantially upon the level of generality at which the relevant "legal rule" is to be identified. For example, the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right. But if the test of "clearly established law" were to be applied at this level of generality, it would bear no relationship to the "objective legal reasonableness" that is the touchstone of *Harlow*.
> \* \* \*
> It should not be surprising, therefore, that our cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant sense: the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.

*Anderson v. Creighton*, 483 U.S. 635, 639-640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Here, Plaintiff failed in his burden to demonstrate any closely analogous case law based on these facts that a reasonable officer could not have believed there was probable cause to arrest.

Based on the facts as told to the officer at the scene, it was not "clearly established" that there was no probable cause for that arrest under the disorderly conduct statute under these facts. Plaintiff admits "disorderly conduct has never had a precise definition; the types of conduct that may be disorderly conduct 'almost defy definition." *Lester v. City of Chicago*, 830 F.2d 706, 714 (7th Cir.1987). The cases cited above, *Biddle, Penn*, and *Davis*, all determined that there was

6

Case 1:07-cv-07085   Document 53   Filed 08/25/2008   Page 8 of 18

probable arrest for disorderly conduct on similar type circumstances as here. Moreover, if a crime "defies definition" as recognized over 10 years ago, an officer should be given wide latitude under qualified immunity.

**VII.   In the Alternative, The *Gerstein* Hearing Provided Probable Cause**

Plaintiff obviously cannot dispute that the criminal court found probable cause on the charge prosecuted by the States Attorney; obstruction of justice against Plaintiff. In fact, he essentially ignores the collateral estoppel elements as explained by Defendants in their Opening Memorandum (Defendants' Memorandum pg. 11).

As a practical matter <u>in this case</u> the decision is binding. As is undisputed by Plaintiff, the "attempting obstruction of justice" charge is confined to one issue: Did Plaintiff lie about his name to the officer and state his name was "Timothy Sandifer." This is far from the issue in *Whitley v. Seibel*, 676 F.2d 245, 249 (7th Cir 1982) cited by Plaintiff, where the Seventh Circuit found at issue whether the officer lied about not checking on Plaintiff's alibi and did nothing to even check on an alibi not the same as the probable cause hearing. The issue here is thus identical to the state probable cause hearing.

Plaintiff also tries to make an issue of failure to cross examine etc at the criminal hearing (Plaintiff's Response, pg. 9). However, he completely fails to rebut the standard (set by the Supreme Court no less) as explained in Defendants' Opening Memorandum that "opportunity to litigate" under collateral estoppel means only "due process." Since a non adversarial *Gerstein* hearing satisfies due process, it in turn as a matter of law, satisfied the "opportunity to litigate."

Plaintiff's reliance on *Sorenberger v. City of Knoxville*, 434 F.3d 1006 (7th Cir. 2006) does not help Plaintiff's argument either. In that case, the Seventh Circuit found two issues precluded applying collateral estoppel; (1) additional evidence and (2) no opportunity to appeal. Neither applies here. First of all, there is nothing in the nature of "additional evidence" here that could affect the "integrity" of the state hearing. Second, while the motion to suppress evidence at issue in *Sorenbrger* might not have been appealable, as explained in Defendants' Opening Memorandum, the *Gerstein* hearing at issue here is considered appealable at that time, and the *Gerstein* case itself noted that fact. *Gerstein*, 420 U.S. at 115.

The case of *Haupt v. Dillard*, 17 F.3d 285 (9th Cir. 1994) is instructive. In that case, a *Gerstein* hearing in Nevada state criminal court found probable cause. Plaintiff stood trial and was acquitted. In the later § 1983 lawsuit, the Ninth Circuit held that the probable cause hearing

7

was not interlocutory and was necessary to be decided because the Plaintiff could not have stood trial unless the hearing occurred. *Id.* at 289. In addition, the Ninth Circuit found the probable cause issue identical to the 1983 action; as both involved a determination that evidence available and known to the officers at the time of his arrest supported a reasonable belief that a crime was committed. *Id. Haupt* even cited to the Seventh Circuit case of *Guenther v. Holmgreen,* 738 F.2d 879 (7th Cir, 1984). Finally the *Haupt* court also noted that the *Gerstein* probable cause hearing could be immediately appealable, and in fact Mr. Haupt did just that.

As a final matter, even if Plaintiff's argument had any weight, it certainly would not pertain to the state malicious prosecution claim. That is so because the elements of malicious prosecution include the absence of probable cause *for the proceeding. Reynolds v. Menard, Inc,* 365 Ill.App.3d 812, 818-19, 303 Ill.Dec. 26, 850 N.E.2d 831, 837 (Ill. App. Ct. 2006)(emphasis added). So the state claim must show there was no probable cause for the *proceeding itself.* As explained, the criminal court found probable cause for *the criminal proceeding itself*

**VIII. The Eighth Amendment Standard is Proper for Excessive Force Claims Here.**

As expected, Plaintiff attempts to argue the Fourth Amendment applies to alleged excessive force that occurred long after his initial seizure (Plaintiff's Response, pg. 11). To make this claim work however, Plaintiff must proceed from a "continuing seizure" theory under the Fourth Amendment. The Seventh Circuit, however, has expressly <u>rejected</u> the "continuing seizure" theory for excessive force after a Plaintiff is taken into custody.

The exact question was resolved by Seventh Circuit in *Wilkins v. May,* 872 F.2d 190 (7th Cir. 1989). Significantly, Mr. Wilkins was in custody (like Plaintiff) but had not had a *Gerstein* hearing (like plaintiff). The Seventh Circuit noted that "a natural although not inevitable interpretation of the word "seizure" would limit it to the *initial act of seizing,* with the result that subsequent events would be deemed to have occurred after rather than during the seizure." *Id.* at 193 (emphasis added). The Supreme Court has stated that a seizure is not a continuing event. *California v. Hodari D.,* 499 U.S. 621, 625, 111 S.Ct. 1547, 1550 (1991).

The *Wilkins* court then specifically addressed the issue of the period of time between arrest and formal criminal charge and what specific constitutional guarantee is in play. The court noted that the term "unreasonable" under the Fourth Amendment contextually cannot apply after the suspect is seized and placed into custody for two reasons. The first is that the "considerations that have been used to give meaning to the key substantive term in the

8

amendment-"unreasonable"-are largely inapplicable once the arrest has taken place and the arrested person has been placed securely in custody." *Id.* The "second objection to the Fourth Amendment route it found was is that it could lead to an unwarranted expansion of constitutional law." *Id.*

Moreover, and particularly applicable here, the *Wilkins* Court noted specifically that any analogy under *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854 (1975) is not controlling in this circumstance. The *Wilkins* court found that to be the case because *Gerstein* was interpreting a <u>different</u> part of the Fourth Amendment, not the "seizure" part at all, but the requirement of probable cause for the detention itself. *Wilkins* held that *Gerstein* did "not hold or imply that every moment of detention is fresh seizure." *Id.* at 193. This makes sense, of course, because excessive force emanates from the "seizure" language in the Fourth Amendment, not the "probable cause" portion.

*Graham v. Conner*, 490 U.S. 386, 109 S.Ct. 1865 (1989) is not to the contrary. In that case, the Supreme Court specifically stated that the Fourth Amendment applies "during arrest." But that as an overriding theme it rejecting the "notion that all excessive force claims brought under § 1983 are governed by a single generic standard." And in deciding what standard does apply, the Supreme Court stated that "in addressing an excessive force claim brought under § 1983 analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." And *Graham* expressly did <u>not</u> decide the question of what constitutional provision applies after arrest. *Graham,* 490 U.S. at 395. n. 10. Indeed, the claims of force in *Graham* all occurred on the scene, i.e. "during" the act of arresting Mr. Graham.

Other Circuits similarly hold that claims of excessive force occurring long after arrest and while in custody are not properly considered under the Fourth Amendment. *Fuentes v. Wagner,* 206 F.3d 335 (3d Cir. 2000); *Riley v. Dotson,* 115 F.3d 1159 (4th Cir. 1997). *Cottrell v. Caldwell,* 85 F.3d 1480, 1490 (11th Cir. 1996);*Brothers v. Klevenhagen,* 28 F.3d 452, 456 (5th Cir. 1994)(citations omitted).

Plaintiff's argument fails to note the differences in the textual language of the Fourth Amendment by suggesting that *Lopez v. Chicago,* 464 F.3d 711 (7th Cir. 2006) controls. That case was concerned about detention and the related (arguably) conditions of a detention because he was held in custody for so long. That no doubt kicks in *Gerstein* and the Fourth Amendment. The difference in returning to *Graham* is the textual support for the claims. Here,

it was the alleged <u>force</u> long after he was seized that is as issue, so the *Lopez* detention issue is not controlling.

As noted by *Wilkins,* the proper analysis would be under the Fourteenth Amendment. And to that end, the Seventh Circuit has held that pretrial detainees in detention are governed under the Fourteenth Amendment under the analysis identical to the Eighth Amendment. *Zentmeyer v. Kendall County*, 220 F.3d 805, 810 (7th Cir. 2000). But as the Defendants argue alternatively, even under the Fourth Amendment standard, the actions were not excessive.

**VI.    The Video Is Conclusive of the Lack of Excessive Force At the Station**

Plaintiff admits the video in the booking room station is accurate. He does not dispute that Plaintiff was never punched or beaten. Rather, he claims the video does not show whether Plaintiff's thumb was allegedly broken in the booking room. Plaintiff's argument however, has two fatal errors.

In the first place, Plaintiff does absolutely nothing to counter the Defendants' legal argument in their Opening Memorandum that expert medical testimony will be required to demonstrate that his thumb is broken (Defendant Memorandum, pg. 7-8). He thus concedes that part of his argument is doomed and admits his evidence is deficient to claim that type of injury. And Plaintiff has no expert properly disclosed under Rule 26(a)(2) to medically opine on that either. He thus has <u>no</u> admissible evidence that his thumb was allegedly broken.

Plaintiff also attempts to avoid that fatal error by claiming various unidentified people "told him" his thumb was broken (Plaintiff's Response, pg. 15, Plaintiff Add'tl Facts, ¶ 34). This is classic hearsay (as he is using it for the truth), and such hearsay statements are inadmissible and cannot be used "back door" to avoid the failure to provide proper medical expert testimony under Rule 26(a)(2). And as noted above, simply offering unauthenticated medical records (most of which are illegible) and photographs shows nothing. Plaintiff's own <u>unsigned</u> <u>unsworn</u> interrogatory responses are not competent evidence either.

Moreover, in the alternative, even if he could avoid that fatal error and use hearsay, Plaintiff cannot distance himself from the x-ray report <u>he produced</u> in this proceeding stating that there was no acute fracture. He seems to imply that this means it was broken, just not acutely. Such wordsmithing is preposterous. In light of the complete failure to provide competent and admissible expert medical evidence that his thumb was actually broken, he is left to complain that it was somehow "hurt." So the question is whether the actions of the officers

were excessive (or under the Eighth Amendment, malicious and sadistic and not in a good faith attempt to restore order) in a summary judgment context in viewing the video that Plaintiff's thumb allegedly got "hurt."

Plaintiff's next error is that he claims the video itself does not prove anything (Plaintiff's Response, pg. 12). Of course, that statement is really irrelevant because the Supreme Court is clear under *Scott v. Harris*, that the court should analyze the video of the entire booking room incident and determine whether <u>as a matter of law</u> the force was improper (now matter what the right constitutional standard is). 127 S.Ct. at 1776(only actual *material* disputes at issue)

In this case, Plaintiff admits he refused to come out of his cell when told (Plaintiff's Response, pg. 13). And after having to pull Plaintiff into the booking room in light of his refusal, Officer Smetters testified that he told Plaintiff to put his hands behinds his back for handcuffing while in the booking room and Plaintiff did not (S 67). As noted above, Plaintiff attempts to deny that statement, but provides absolutely no evidence to the contrary, that he was <u>not</u> told to put is hands behind his back in the booking room after being taken out of his cell. Thus, it is undisputed that Plaintiff refused to come out of his cell and refused to put his hands behind his back when instructed.

Even in light of that undisputed evidence, Plaintiff incredibly still argues that he was not resisting, and the officers used improper force; but as in *Scott,* the videotape tells a dramatically different story. No reasonable juror could view the video and conclude that Plaintiff was <u>not</u> resisting. Obviously the officers were allowed to use force to get him handcuffed. In addition, the video clearly demonstrates Plaintiff "stiff arming" by keeping his arms straight out rather than doing what he was told and put his arms behind his back. Plaintiff claims the officers were pulling his arms in different directions, but the video again tells a different story. The video shows both officers moving his arms behind his back (not in different directions), consistent with getting someone who is resisting, handcuffed. No reasonable juror could conclude otherwise. And no reasonable juror could conclude after reviewing the video that he was also not resisting by also "scooting" his feet around while on the ground.

After all, if there was no resistance, he would have been handcuffed in seconds without incident and the video would clearly demonstrate him putting his hands behind his back, however, that clearly did not happen. In a detention setting, force is allowed when prisoners refuse commands. There is no other interpretation of those events on the video. And he admits

after being handcuffed he was complaining about his leg and back, not his thumb (S 74).

And in a detention setting, prisoners that refuse commands, particular those such as getting handcuffed, are inherently dangerous and force can be used to maintain order. See *Ruffin v. Taylor,* 166 F.Supp.2d 999, 1006-07 (D.Del.2001)(summary judgment for officers accused of repeatedly punching prisoner-plaintiff in face and beating his arms after he refused to leave his cell or have his cell door chained); *Pittman v. Kurtz,* 165 F.Supp.2d 1243, 1246 (D.Kan.2001)(summary judgment for officers accused of punching prisoner-plaintiff in the head and beating his head against the floor after plaintiff repeatedly refused to return to cell and struck guard with a pencil); *Montero v. Crusie,* 153 F.Supp.2d 368, 374-75 (S.D.N.Y.2001)(summary judgment for officers accused of excessive force in pushing prisoner-plaintiff into cell after he exposed himself and yelled profanities at them).

Moreover, no reasonable juror could conclude that a person who is not resisting would need to take 20 seconds to get handcuffed as demonstrated by the video. Nor could any reasonable juror conclude that three officers would need to take 20 seconds to handcuff someone who is not resisting. Plaintiff can claim the video does not demonstrate that, but as in *Scott*, his version of events is completely contradicted by the video. And of course, the video shows nothing to demonstrate that Plaintiff was wincing or crying out in pain from his alleged thumb injury and he claimed his leg hurt immediately after, not his thumb (S 74).

Even if you "squeeze" these events into the Fourth Amendment, the result in the same. Plaintiff refused to do what he was told, and a non compliant prisoner "thrashing" around in the relatively close quarters of the booking room presents a significant threat. *Floyd v. Nelson,* Case NO. 00 C 1079, 2002 WL 1483896, *9 (N.D. Ill. 2002). And the force used was pulling Plaintiff's arms behind his back to get him handcuffed and restore order, in light of his resistance. No reasonable juror could conclude that this was excessive force. This claimed injury is not of a constitutional magnitude no matter what textual application of the Constitution is used in light of his resistance and the potential dangerous situation he created. And of course, this entire incident would have been avoidable if Plaintiff had done what he was told in the first place. But returning to the *proper* constitutional standard; the Eighth Amendment in a detention setting for a pretrial detainee, these facts are not of the nature to even create a jury question that the force was not in good faith to get Plaintiff handcuffed in light of his reputed refusals or resisting, or from a subjective standard, that the force was excessive or was in anyway malicious

12

or sadistic. In fact, it is Plaintiff's submissions that show that Sergeant Hilliard does not even remember grabbing Plaintiff's thumb, there thus can be no subjective intent to cause alleged sadistic or malicious injury to the thumb. Judgment for all officers is proper.

### IX. The Alleged Force On the Way To the Station is *De Minimus*

Plaintiff does not contend any type of injury for his allegations that he was pulled out of the car while stopped during the ride to the station, and that is strong evidence of no excessive force. *Meyer v. Robinson*, 992 F.2d 734 (7th Cir. 1993) (Officer Davi denies even pulling Plaintiff out of the car). Plaintiff again returns to the "continuing seizure" theory in claiming the Fourth Amendment controls. In *Proffitt v. Ridgway*, 279 F.3d 503 (7th Cir. 2002), however, the court analyzed force against a person after being arrested and put in the back seat of a squad car. In *Proffitt*, the person was arrested on scene and placed in the back seat of a squad for transport to the police station, and somehow he got out of the back seat during the trip, causing the car to crash. The Seventh Circuit held that in that case, the force applied (Plaintiff died in that case) was proper under the Fourteenth Amendment. *Id.*

Thus Defendants' cases cited in their Opening Memorandum, (pg. 8) are on point. These alleged injuries are really *de minimus*. Numerous cases have held as such in similar circumstances. *Gavin v. Ammons*, 21 F.3d 430, 1994 WL 117983 (7th Cir. April 6, 1994) (guard's pulling of inmate's hair was *de minimis* force); *Calabria v. Dubois*, 23 F.3d 394, 1994 WL 209938 (1st Cir. May 24, 1994) (radio belt thrown at face of inmate causing blood to appear was *de minimis* force); *White v. Holmes*, 21 F.3d 277, 280-81 (8th Cir.1994) (keys swung at inmate which slashed his ear was *de minimis force*); *Jackson v. Pitcher*, 966 F.2d 1452, 1992 WL 133041 (6th Cir. June 16, 1992)(guard's stomp on the hand of inmate was *de minimis* force); *Black Spotted Horse v. Else*, 767 F.2d 516, 517 (8th Cir.1985) (corrections officer's pushing a cubicle wall so as to strike plaintiff's legs, a brusque order to an inmate and poking the inmate in the back was *de minimis* force). And the de minimus would apply equally to Fourth Amendment claims. See also, *Brandon v. Maywood*, 152 F. Supp.2d 917, 929 (N.D. Ill. 2001)

Moreover, unlike the cases cited by Plaintiff (Response, pg. 13-14), Plaintiff was <u>not</u> a free citizen at that time, he was in custody in the back seat of the squad car going to the police station, and he was performing a dangerous act by calling some unknown person on his cell phone placing the officer in danger. Officer Davi indicated that this was unsafe from the officer's point of view. (S 42).

13

X.  **In the Alternative, There is Qualified Immunity for Excessive Force**

Again Plaintiff spends virtually no time discussing qualified immunity even though it is his burden to demonstrate analogous case law on the clearly established prong, and he has failed (Plaintiff's Response, pg. 19). And the cases cited above demonstrate that it is not even "clearly established" what is the correct constitutional standard for a person in custody (whether in the station or squad car) for the officers to be "on notice" of. See *Burgess v. Lowery*, 201 F.3d 942, 944-46 (7th Cir. 2000). So for qualified immunity analysis, the higher Fourteenth/Eighth standard should govern in light of that. And Defendants pointed to several analogous cases (even under the objective reasonableness Fourth Amendment Standard) in their Opening Memorandum concerning the station incident on very closely analogous cases and facts that found no constitutional violation, or found qualified immunity.

For instance, in *Huang v. Harris County*, 264 F.3d 1141 (5th Cir, 2001), Mrs. Huang was resisting arrest and refused to be handcuffed, just like Plaintiff. However Mrs. Huang's encounter occurred during her initial seizure and she claimed her thumb was broken. In *Huang* it was apparently not even contested that the thumb actually was broken. The court determined the officers had qualified immunity based on the facts of resisting. Likewise, in *Jackson v. City of Bremerton*, 268 F.3d 646, 650 (9th Cir. 2001), Mrs. Jackson was resisting arrest and during her being handcuffed, she suffered a fractured finger. The Ninth Circuit found that this was not excessive under the Fourth Amendment in light of her behavior. These cases are strong evidence of analogous cases giving Defendants qualified immunity *even under* a stricter, Fourth Amendment analysis. Thus, whether the Fourth or Fourteenth Amendment applies, qualified immunity is proper. And the de minimus cases are strong evidence of qualified immunity also.

XI.  **There is a Complete Lack of Evidence of a Conspiracy**

Plaintiff devotes less than a page to arguing conspiracy. In sum, all he claims is that "Plaintiff's allegation of abuse span several hours and involved repeated violations of his Constitutional rights by multiple defendants." (Plaintiff's Response, pg. 17). If that was the standard, there would in effect be "no standard." Plaintiff has shown no evidence of any alleged conspiracy, i.e. an agreement, or even any evidence to even suggest a conspiracy. He fails his burden under *Celotex*.

After all, he has nothing to demonstrate that his initial arrest was not simply the actions of Officer Davi. Moreover, he has nothing to demonstrate that Officer Davi pulling over and

allegedly hurting him (again Davi states he never even pulled him out of the car) was due to some "pre arranged" agreement with someone. Third, Plaintiff admits he refused to come out of his cell when directed and that as a result of that, the officers had difficulty handcuffing him. If Plaintiff had complied and come out of his cell, he would have been handcuffed without incident. Plaintiff's theory of some preordained "agreement" that they would use force because they "knew" Plaintiff would refuse to come out of his cell is preposterous.

Plaintiff's reliance on *Smith v. Daniels* is also unavailing. In that case the court noted concerted effort to violate rights. Here, even plaintiff admits it was only Davi by himself that arrested him and allegedly Hilliard by himself that caused him thumb pain. And a plaintiff cannot prevail if the defendants did not cause any injury <u>above and beyond</u> the torts that they allegedly conspired to commit. *See Niehus v. Liberio*, 973 F.2d 526, 531-32 (7th Cir.1992)(noting the mootness of a civil conspiracy charge where the actual conspiracy does not inflict any harm above and beyond the torts that the defendants allegedly conspired to commit). Here, Plaintiff shows none.

Next Plaintiff claims the intracorporate conspiracy doctrine is not applicable. Of course, Plaintiff does nothing to distinguish *Wright v. Illinois Dept of Children*, 40 F.3d 1492, 1507-08(7th Cir. 1994) that barred an intercorporate conspiracy under § 1985, or why that should not apply equally in §1983. While Plaintiff does point to several district courts that have admittedly rejected it, there are some that have not. *David v. Village of Oak Lawn,* No. 95-7368, 1996 WL 210072, *3-4 (N.D. Ill. Apr. 29, 1996) and *Chavez v. Illinois State Police,* No. 94-5307, 1996 WL 66136, 7-8 (N.D. Ill. Feb. 13, 1996).

**XI.    There Was No Opportunity to Allegedly Intervene**

Plaintiff devotes two sentences to his failure to intervene claim. He points to no evidence that any officer had the "opportunity" to stop another officer for anything at the station. He also completely fails to explain  or offer evidence how each officer could have stopped the *de minimus* force on the way to the station. *Packman v. Chicago Tribune*, 267 F.3d 628, 645 (7th Cir. 2001)(conclusory statement cannot support denial of summary judgment)

**XII.    Plaintiff Concedes No Claim under *Monell* and Equal Protection**

Nowhere in Plaintiff's Response does he even contest the fact that there is no evidence for any 1983 *Monell* claim against the Village or an Equal Protection Violation.

Respectfully submitted,

By: s/Craig G. Penrose

Craig G. Penrose
Attorney for Defendants
Tressler, Soderstrom, Maloney & Priess
Sears Tower, 22nd Floor
233 South Wacker Drive
Chicago, Illinois 60606-6399
(312) 627-4000
(312) 627-1717 (Fax)
E-mail:cpenrose@tsmp.com

16

## CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2008, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Russell Ainsworth
Loevy &Loevy
312 N. May Street
Suite 100
Chicago, Il 60607
Russell@loevy.com

**Attorney for Plaintiff Timothy Brownlee**

s/Craig G. Penrose