CGP/tdw/#332094                                                                          6121-213

## IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY BROWNLEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07 C 7085 |
| | ) | |
| VILLAGE OF BOLINGBROOK, | ) | |
| BOLINGBROOK POLICE OFFICER DAVI, | ) | Judge Ruben Castillo |
| BOLINGBROOK POLICE OFFICER | ) | |
| SMETTERS, and BOLINGBROOK POLICE | ) | |
| SERGEANT HILLIARD, | ) | |
| | ) | |
| Defendants. | ) | |

## ALL DFEENDANTS' RESPONSE TO PLAINTIFF'S
## RULE 56.1(b)(3)(C) STATEMENT OF ADDITIONAL FACTS

NOW COMES, Defendants Village of Bolingbrook, Defendant Davi, Defendant Smetters and Defendant Hilliard, by and through their attorneys Tressler, Soderstrom Maloney & Priess, LLP, and for their Response to Plaintiff's Rule 56.1(b)(3), states as follows:

1.    On May 28, 2007, Plaintiff was planning to host a Memorial Day barbecue for his immediate and extended family at his home in Bolingbrook, Illinois. Exhibit A at 11-13, 17 (Brownlee deposition).

**RESPONSE:    Whether Plaintiff was planning on hosting a barbecue on May 28, 2007 is not a material fact.  However this is admitted.**

2.    At the time, Plaintiff had been having problems with his next-door neighbor (Mr. Pausche) picking on his children and complaining about Plaintiff's dog allegedly defecating on the neighbor's lawn. Exhibit F at 16-19 (Jerome Pausche deposition).

**RESPONSE: Denied. The cited portion of the deposition does not support the statement. The cited deposition of Mr. Pausche indicated <u>he</u> was having problems with <u>Plaintiff</u> in that Plaintiff repeatedly allowed his dog to defecate on Mr. Pausches' lawn, not the other way around, as this statement improperly suggests.  This statement is also denied as Plaintiff**

provides 4 pages of transcript in support of the statement in violation of Local Rule 56.1 *Malec v. Sanford* 191 F.R.D. 581, 583 (N.D. Ill. 2000)(specific citation means page <u>and</u> paragraph).

3.     Mr. Pausche said "I heard what you said," and Plaintiff responded that he wanted his neighbor to hear him. Plaintiff then drove to the store with his fiancé, Tiggen Sandifer. Def. L.R. Stmt. ¶5; Exhibit C at 15, 35 (Sandifer deposition).

**<u>RESPONSE:</u>     Admit that Mr. Pausche stated that.  However the remainder of this statement is denied.  What a bystander "thinks" happened during the incident is not material to the determination of probable cause as that information was not provided to the officer arriving on the scene afterwards. *Central States v. Bomar*, 253 F.3d 1011, 1017 (7th Cir. 2001)(Rule 56.1 only to include material facts party may deny immaterial facts to the dispute). *Driebel v. City of Milwaukee*, 298 F.3d 622, 643 (7th Cir.2002)(in evaluating whether an officer had probable cause, we "must consider the facts as they would have reasonably appeared to the arresting officer *'seeing what he saw, hearing what he heard'* at the time of the incident.")**

4.     Defendant Davi received a dispatch to respond to a "neighbor dispute" at Plaintiff's neighbor's house. Exhibit B at 92 (Davi deposition).

**<u>RESPONSE:</u>     Admit that Davi testified as such.**

5.     Davi responded to the scene and spoke with Plaintiff's next-door neighbors, the Pausches, who told him that the Pausches and Plaintiff were having an "ongoing dispute" with Plaintiff "regarding a bunch of issues, children on their grass, their dog defecating on their grass, issues like that. Mostly to do with the children." Exhibit B at 97 (Davi deposition).

**<u>RESPONSE:</u>     Admit that Davi testified as such.  However, Plaintiff improperly fails to include the entire statement of Davi's deposition. Davi further testified that as a result of the episode the Pausches " became in fear, and they notified the police." (Defendant Ex. 2, pg. 98, ln. 10)**

6.     The Pausches told Davi that they had a verbal altercation with Mr. Brownlee in which Plaintiff "was telling his children not to listen to [Mr. Pausche] and for his kids to tell him if [Mr. Pausche] tells them anything." Mr. Pausche then said "I heard what you said." According to Mr. Pausche, Mr. Brownlee responded "I meant for your mother fucking white ass to hear that." Exhibit F at 40 (Jerome Pausche deposition); Exhibit K.

**RESPONSE:**     **Admit that Plaintiff has improperly quoted only an incomplete portion of**

**Mr. Pausche's testimony.  However the entire quote is as follows:**

> **A.     He started getting out of his car and starred coming towards me, and he says, I meant for your mother fucking white ass to hear that,  And with that, I just turned around, went in the house, and called 911.**

> **Q.     Did he follow you into the house?**

> **A.     No.  He didn't even – I don't even think he came on the property, but he was walking towards us in a menacing way.**

**(Defendants' Ex. 3, pg. 40 ln. 20-24 to pg. 41, ln. 1-4)(S 4-9)**

7.     During the interaction between Mr. Pausche and Mr. Brownlee, Plaintiff was never on the Pausches' property. In fact, at the time of the exchange, Plaintiff was backing out of his driveway, and the Pausches were on the front porch of their home. Exhibit F at 40-41 (Jerome Pausche deposition); Exhibit G at 23 (Rose Pausche deposition); Exhibit C at 14-16 (Sandifer deposition); Resp. Def. L.R. Stmt. Facts ¶16.

**RESPONSE:**     **Admit the first part of this sentence that Mrs. Pausche testified that**

**Plaintiff never came on their property.  The second part of this statement is denied. What a**

**bystander (Sandifer) "thinks" happened during the incident is not material to the**

**determination of probable cause as that information was not provided to the officer on the**

**scene afterwards. *Central States v. Bomar*, 253 F.3d 1011, 1017 (7th Cir. 2001)(Rule 56.1**

**only to include material facts party may deny immaterial facts to the dispute).**

**Moreover, it is also denied because Mr. Pausche said Plaintiff did get out of his car and**

**move towards him in a fast and menacing manner:**

> **A.     He started getting out of his car and starred coming towards me, and he says, I meant for your mother fucking white ass to hear that,  And with that, I just turned around, went in the house, and called 911.**

**Q.    Did he follow you into the house?**

**A.    No. He didn't even – I don't even think he came on the property, but he was walking towards us in a menacing way.**

**(Defendants' Ex. 3, pg. 40 ln. 20-24 to pg. 41, ln. 1-4)(S 4-9)**

8.    Davi testified that he did not believe that he had probable cause to arrest Plaintiff based on what the Pausches told him or at any point up until he allegedly found out that Plaintiff's name was Brownlee:

Q:    So based on what they told you at the first scene you didn't believe you had probable cause to arrest Mr. Brownlee?

A:    Right. There is no probable cause there to arrest at that time without getting the other half of the story.

Exhibit B at 99-100 (Davi deposition); *id.* at 120 ("Q: So up until the time that you found out that Mr. Brownlee's name was Brownlee, you didn't have any probable cause to arrest either Mr. Brownlee or anybody else at the scene? A: Correct.").

**RESPONSE:    Denied.    What Officer Davi subjectively believed is not material to the determination of probable cause. *Whren v. United States*, 517 U.S. 806, 812-13 (1996)(subjective belief or motive of officers irrelevant); *Central States v. Bomar*, 253 F.3d 1011, 1017 (7th Cir. 2001)(Rule 56.1 only to include material facts party may deny immaterial facts to the dispute).**

9.    Davi then saw Plaintiff arrive in his car, which Plaintiff was driving. Exhibit B at 103 (Davi deposition); Exhibit A at 37 (Brownlee deposition).

**RESPONSE:    Admit that Davi saw Plaintiff arrive by car.  However, deny second part of that sentence, as Davi stated he did <u>not</u> know who was driving (Davi, pg. 103, ln. 16-21) But whether Plaintiff was driving is immaterial to the determination of probable cause.**

10.    Davi spoke to Plaintiff, who confirmed that when he was leaving his house, he told his children not to confront his neighbor, but rather to tell him or another adult. Exhibit A at 45 (Brownlee deposition).

**RESPONSE:    Admit that Plaintiff testified as such.**

11.   Davi then asked for Plaintiff and his fiancé's (Tiggen Sandifer) identification, who provided their identification to Davi. Exhibit A at 46-50 (Brownlee deposition).

**RESPONSE:**   **Denied.  Davi stated that Plaintiff gave him <u>no</u> license and gave him the name "Timothy Sandifer" (Defendant's Exhibit 2, pg. 112, ln. 9-11).**

12.   Davi took the identification from them, walked away, and then returned their IDs to them, telling them "Hey, everybody try to get along." Plaintiff then went inside his home and started watching television. Exhibit A at 53-56 (Brownlee deposition).

**RESPONSE:**   **Denied. Davi stated he was never was given Plaintiff's license (Defendant's Exhibit 2, pg. 112, ln. 9-11).**

13.   About fifteen to thirty minutes later, Davi came to the front door and accused Plaintiff of giving him a false name. Plaintiff denied that he had done any such thing, and explained that he had provided his identification, as requested. Exhibit A at 56-59 (Brownlee deposition).

**RESPONSE:**   **Admit Davi came to the front door and admit that he told Plaintiff that he gave Davi a false name. Deny that Plaintiff said he gave his license to Davi.  Davi testified that Plaintiff stated to him in response to Davi stating that he gave a false name "so what are you going to do about it?"  (Defendants Ex. 2, pg. 128, ln. 14-17)**

14.   Plaintiff had no warrants out for his arrest and the only conviction he had ever had for a criminal offense was court supervision for a misdemeanor battery when he was seventeen years-old. Exhibit B at 118 (Davi deposition); Exhibit L at ¶3 (Interrogatory Responses).

**RESPONSE:**   **Admit that on May 28, 2007 Davi found no warrants out on Plaintiff. Deny the second part of this improper compound sentence on several grounds.  First, the cited materials, *unsigned, unsworn, unauthenticated* Interrogatory Responses by Plaintiff submitted to demonstrate criminal offenses are inadmissible evidence so cannot be considered (Rule 56 must have admissible evidence). The second part of this statement is also denied as it is not a material fact for purposes of summary judgment. *Central States v. Bomar*, 253 F.3d 1011, 1017 (7th Cir. 2001)(Rule 56.1 only to include material facts party**

5

may deny immaterial facts to the dispute).

15.     Plaintiff and his fiancé share the same birth dates, but one year apart. Exhibit M at ¶11 (First Amended Complaint).

**RESPONSE:     This statement is denied on several grounds.  First the factual statement is not material to summary judgment.** *Central States v. Bomar*, **253 F.3d 1011, 1017 (7ᵗʰ Cir. 2001)(Rule 56.1 only to include material facts party may deny immaterial facts to the dispute).  The statement is also denied because the cited material, The First Amended Complaint, is unsworn and is not admissible evidence for Plaintiff.  (Rule 56(e)---cannot rest on pleadings).**

16.     Defendant Smetters testified:

Q:     Is it a crime to say mother fucking white ass to somebody?
A:     It depends on how you do it.
                    ***
Q:     just saying that in itself, saying mother fucking white ass to somebody while they were 30 to 40 feet away?
A:     I don't know.

Exhibit D at 120 (Smetters deposition).

**RESPONSE: Denied.  Officer Smetters' statement (Smetters did not arrest plaintiff) is not material on summary judgment as to whether a reasonable officer on the scene in** *Officer Davi's position* **would have probable cause to arrest plaintiff based on all the information that officer received on the scene, viewed from an objective standard.** *Central States v. Bomar*, **253 F.3d 1011, 1017 (7ᵗʰ Cir. 2001)(Rule 56.1 only to include material facts party may deny immaterial facts to the dispute).   In addition, Plaintiff improperly states Smetters' testimony, which in complete form is as follows:**

**Q.     Is it a crime to say mother fucking white ass to somebody?**

**A.     It depends on how you do it.**

Q.    Is it crime to yell mother fucking white ass from your car to somebody else who is up on their front porch of their home a distance of 30 to 40 feet?

A.    Accompanied with other causes, I believe yes, it would be a crime.

Q.    Just saying that in itself, say mother fucking white ass to somebody while they were 30 to 40 feet away?

*A.*    I don't know. *You know, I can't give a hypothetical answer to a hypothetical situation.*

**(Plaintiff Ex. D, pg 120, ln. 2-15)(emphasis added)**

17.    Davi testified that the Pausches told him the reason they called 911 was because Plaintiff cursed at them: "And [Plaintiff] cursed in the process [of telling the Pausches not to talk to Plaintiff's children] which made them alarmed and disturbed to call the police." Exhibit B at 98-99 (Davi deposition).

**RESPONSE:**    **Admit that Davi testified as such**

18.    The entirety of the Pausches' written statement is as follows:

Around 1 p.m., May 28, 2007, I was talking to my husband on the front porch. The neighbor at 3 Rye Court came out with his wife (I think) [sic].

He was telling his children not to listen to my husband and for his kids to tell him if my husband tells them anything not to listen to him and he said it loud enough for us to hear. My husband said I hear you and [Mr. Brownlee] said "I want you to hear me" "I want your mother fucking white ass to hear me" at that point we came in the house and we called 911. He was still yelling and then drove off. He also raised his hand towards us as he wanted to emphasize what he was saying. We are willing to sign complaints.

Exhibit K (Pausches' statement).

**RESPONSE:**    **Denied. This statement is denied on several grounds. First what the 911 callers wrote down <u>after</u> Plaintiff was taken into custody is not material concerning the information a reasonable officer would have had <u>at the scene</u> from an objective basis to determine probable cause.** *Central States v. Bomar,* **253 F.3d 1011, 1017 (7th Cir.**

**2001)(Rule 56.1 only to include material facts party may deny immaterial facts to the dispute). The statement is also denied as hearsay and as an unsworn and unauthenticated document by Plaintiff's submission.**

19.    Plaintiff denied that he had done anything wrong - neither swearing at the Pausches nor taking any action to threaten or interfere with them. Exhibit A at 35, 45 (Brownlee deposition); Exhibit B at 105-07 (Davi deposition).

**RESPONSE:    Admit that Plaintiff told Davi as such, but such denial is not material to the determination of probable cause. *Askew v. City of Chicago*, 440 F.3d 895 (7th Cir. 2006)(does not matter that accused denies allegations of witness)**

20.    Mr. Pausche explained that what he meant by "menacing" was Plaintiff walking "fast and deliberate[ly]." Exhibit F at 41 (Jerome Pausche deposition).

**RESPONSE:    Admit.**

21.    Rose Pausche testified that she was "shocked" to see Plaintiff arrested and put in handcuffs:

Q:    Was Brownlee arrested before or after you signed the document which is before you as Exhibit 1?
A:    That time frame I don't remember. That time frame I don't remember because I was shocked to see him being arrested.
Q:    Why were you shocked to see him being arrested?
A:    Because, I mean, there was no physical fight or anything like that. I mean, I was just surprised that the police came and took him out in handcuffs.

Exhibit G at 36-37 (Rose Pausche deposition).

**RESPONSE:    Denied. Whether a bystander is "shocked" after an arrest is made is not material to whether a reasonable officer had probable cause based on the information the officer has prior to the arrest. *Central States v. Bomar*, 253 F.3d 1011, 1017 (7th Cir. 2001)(Rule 56.1 only to include material facts party may deny immaterial facts to the dispute).**

22.    Davi never testified in court on Plaintiff's criminal case. Exhibit B at 70-71 (Davi deposition).

**RESPONSE:**    **Admit.**

23.    After arresting Plaintiff and placing him in his squad car, Davi berated Plaintiff for being a thirty-five year-old man picking on an eighty year-old. Exhibit A at 64-65 (Brownlee deposition).

**RESPONSE:**    **Denied.  Davi testified he did not say that statement (Defendants Exhibit 2, pg. 164, ln. 9-14)**

24.    Davi stated that "niggers weren't supposed to be in Bolingbrook," and that when "he get[s] [Plaintiff] back to the station, he's going to kick [Plaintiff's] ass." At that point, Plaintiff wanted to call someone and let them know he was being taken to the police station to be beaten. Exhibit A at 65-66 (Brownlee deposition).

**RESPONSE:**    **Denied.  Davi testified he did not say those statements (Defendant's Ex. 2 pg. 2-4)**

25.    Plaintiff, whose cell phone was still attached to his pants, reached over and called his brother, a Chicago police officer. Exhibit A at 68-69 (Brownlee deposition); Exhibit M at ¶15 (First Amended Complaint).

**RESPONSE:**    **Denied.  Plaintiff's reference to his First Amended Complaint is inadmissible hearsay and cannot be considered.  Rule 56(e)--- cannot rest on pleadings.**

26.    Defendant Davi, upon hearing Plaintiff making a call on his cellular telephone, said "this dude is recording me" and pulled over. Davi then opened the back door to the squad car and pulled Plaintiff out of the car backwards. Exhibit A at 70, 72-73, 76 (Brownlee deposition); Exhibit B at 151 (Davi deposition).

**RESPONSE:**    **Denied.  Davi testified that he told dispatch he was pulling over because Plaintiff was screaming kicking and spitting not that he was recording him (Defendants Ex. 2, pg. 149, ln. 10-14). The statement is further denied because Davi testified that he opened the door and grabbed the phone and <u>did not</u> pull Plaintiff out (Defendant Ex. 2, pg. 157, ln. 12-14; pg. 179, ln. 9-15)**

27.    While Plaintiff was still handcuffed, Davi punched him in the stomach, grabbed

his testicles, and asked Plaintiff who he called on his cell phone, to which Plaintiff responded that Davi was hurting him. Exhibit A at 74 (Brownlee deposition).

**RESPONSE:**    **Denied. Davi denies ever taking plaintiff out of the squad car or hitting**

**him. (Defendants Ex. 2, pg. 179, ln. 9-15)**

28.    Smetters grabbed Plaintiff's cell phone while Davi pulled Plaintiff's handcuffed wrists behind his head in an uncomfortable position while asking him for the code to his cell phone. Exhibit A at 73, 79-80, 82 (Brownlee deposition).

**RESPONSE:**    **Denied. Davi denies ever taking Plaintiff out of the squad car or hitting**

**him. (Defendants Ex. 2, pg. 179, ln. 9-15) This statement is further denied because Davi**

**states that he grabbed the cell phone, not Smetters, when Plaintiff was still in the squad car**

**(Defendant's Ex. 2, pg. 155, ln. 12-14)**

29.    Smetters claims that although he remembers Davi stopping his squad car on the way to the station, he has absolutely no memory of the details of the event, and cannot recall one way or the other whether Davi, himself, or Plaintiff ever exited their squad car while stopped. Exhibit D at 4, 8 (Smetters deposition) ("I remember myself and my marked squad pulling behind [Davi's]. After that, I really don't remember [what I saw]").

**RESPONSE:**    **The statement "has absolutely no memory of the details" is improper**

**argument not allowed under Rule 56.1 and is thus denied.** *Malec v. Sanford* **581, 582 (N.D.**

**Ill. 2000). The statement, even if not argument, is wrong because Smetters testified that he**

**recalled Plaintiff sitting the back of the squad car when Davi had to stop (Plaintiff's Ex. D,**

**pg. 4, ln. 21-24).**

30.    At the station, Defendants Smetters and Davi took Plaintiff's flip-flops and required Plaintiff to remove his pants, despite the fact that Plaintiff told them that he was not wearing any underclothes. Plaintiff was compliant during the search of his person. Exhibit A at 87-89 (Brownlee deposition); Exhibit D at 87 (Smetters deposition).

**RESPONSE:**    **Admit that Smetters took Plaintiff's shoes.  Deny that either Smetters or**

**Davi "required" Plaintiff to remove his pants.  The officers told Plaintiff that the string on**

**his pants would have to be removed for safety. The officers required the string to come out**

**of his sweatpants**.

> **A.  If there was a drawstring in his pants the proper procedure is to take the**
>
> **drawstring from hi pants, either to have it pulled out of cut it out.**
>
> \*        \*        \*
>
> **A.  We told him if he didn't pull, somebody told, I don't know if it was me or**
>
> **the other officers in the room, if he didn't our procedure is we cut it out**
>
> **then.  We do it every other time.**
>
> **Q.  And what did Mr. Brownlee say to that, if you know?**
>
> **A.  He took his pants off and threw them at us: Here, take them.  I don't**
>
> **want them.  That's not an exact quote.**

**(Defendants' Ex. 2, pg. 174, ln. 2-6, ln. 13-22)**

**Admit that Plaintiff was compliant with the search of his person at the station**.

    31.    Plaintiff did not resist Defendants, although the officers began screaming "stop resisting" to which Plaintiff screamed back "I'm not resisting." The Defendants then pulled and twisted Plaintiff's arms in different direction while he was sitting on the floor, spinning him from right to left. Exhibit A at 113-14,120,128,154-55 (Brownlee deposition); Def. Exhibit 5 at 15:28-15:29 (Videotape).

**RESPONSE:**    **Denied. However admit the fact that officers were yelling "stop resisting."**

**The video demonstrates Plaintiff "stiff arming" and refusing to put his hands behind his**

**back and shows him "scooting" with his feet in resisting the officers efforts, the video**

**further shows the officer pushing his arms together for handcuffing not in different**

**directions.  Smetters testified as to the same (Defendants Ex. 6, Smetters, pg. 129, ln. 17-21**

**to pg. 130, ln. 1-8)) (Defendant's Exhibit 5, Video, 15:28:21-40)**

    32.    The Sergeant, who was grabbing Plaintiff's right hand, then grabbed his right thumb and "popped and cracked it." Exhibit A at 114 (Brownlee deposition); Def. Exhibit 5 at 15:28-15:29 (Videotape).

**RESPONSE:**    **Admit that Plaintiff testified as such, deny the video demonstrates any**

**"popping or cracking."**

    33.    Plaintiff, now handcuffed, reported to the Defendants that he was injured and needed a doctor. Defendant Davi became irate, claiming that he "had a steak waiting on him" and that Plaintiff was a "[f]ucking nigger." Exhibit A at 128-29 (Brownlee deposition).

**RESPONSE:**    **Admit the first sentence that Plaintiff told defendants he was in pain, but**

**he specifically do not state that he had an alleged thumb injury as demonstrated.**

        **Q. So they asked you to stand up, and then what happened?**

        **B. I told them I was unable to stand.**

        **R. Did you say why?**

        **B. I told them I was in pain.  I had a cramp in my leg, my back was hurting.**

        **Q. Okay. Then what happened.**

        **A. I asked to see a doctor, told them I needed a doctor.**

**(Plaintiff's Exhibit 1, pg. 128, ln. 14-22)**

**Denied that Officer Davi became irate or he used the "n word"  (Defendant's Ex. 2, pg.165,**

**ln. 21-22)(Davi stated he has never used the "n word")**

    34.    At the hospital, Plaintiff, along with Defendants Smetters and Davi, were all told that Plaintiff's thumb was broken. The hospital staff dressed his injury, immobilized his thumb so that it stuck out away from his hand. Exhibit A at 132-34 (Brownlee deposition); Exhibit B at 221-22 (Davi deposition); Exhibit D at 140 (Smetters deposition); Exhibit N (photographs).

**RESPONSE:**    **Denied.  This statement "they were told that Plaintiff's thumb was**

**broken" is hearsay and is specifically being used for the truth and is inadmissible under**

**Rule 56(evidence must be admissible) and the statement does not even identify "who".  In**

**addition to the inadmissible hearsay character, it is also denied as inadmissible because any**

**medical diagnosis of a "broken thumb" requires expert medical testimony and Plaintiff**

**disclosed no expert medical witnesses pursuant to Rule 26(a)(2).** *Musser v. Gentiva,* **356**

F.3d 751,756 (7th Cir. 2004). **The statement is also denied because the x ray report produced by plaintiff stated no acute fracture (Defendant's Ex. 4, with Ex. 5 attached). The unauthenticated photographs are also inadmissible.**

35.    The injury to Plaintiff's thumb was extremely painful - it took approximately two and a half to three months to heal, and he still suffers some discomfort in that thumb joint. Exhibit D at 138 (Smetters deposition); Exhibit L ¶6 (Interrogatory Responses).

**RESPONSE:    Denied. First, Officer Smetters' testimony does not support the statement that it was "extremely painful." Smetters testified**

> **A. While the paramedics touched it or tried to have him move it, he had motions of which he was in pain."**

**(Plaintiff's D, pg. 138, ln. 3-5). Smetters never stated that it was "extremely painful" only that Plaintiff "acted" like he had "pain." This statement is also denied because Plaintiff submits unsigned, unsworn, unauthenticated Interrogatory Responses, which are inadmissible on summary judgment under Rule 56.**

36.    Plaintiff's thumb was not injured prior to the handcuffing in the booking room. Exhibit D at 136 (Smetters deposition).

**RESPONSE:    Denied. The citied testimony does not support the statement. Smetters only testified that Plaintiff never complained about "thumb pain" prior and Smetters never "noticed" any injury. This does not demonstrate that Plaintiff did not have an injury prior to arrest, only that Smetters never noticed it. Smetters exact testimony is as follows:**

> **Q. When you were searching him earlier, did he complain about his hand hurting him?**
>
> **A. No.**
>
> **Q. Did you observe his hand being hurt earlier?**
>
> **A. No.**

**(Plaintiff Ex. D, pg. 136, ln. 12-17)**

      37.    Defendant Hilliard testified that was not forced to employ any pressure point techniques on Plaintiff's thumb to gain compliance. Defendant Hilliard denied taking any special steps to prevent injury to Plaintiff's thumb. Hilliard does not even recall whether or not he grabbed Plaintiff's thumb. Exhibit E at 110 (Hilliard deposition).

**RESPONSE:**    **Admit first sentence. The second sentence is denied as not material as there is no constitutional requirement that officers take "special steps" to avoid injury. *Illinois v. Lafayette*, 462 U.S. 640, 647, 103 S.Ct. 2605, 2610 (1983)(Fourth Amendment does not require officers to use the least intrusive or even less intrusive alternatives) Admit last part of this statement that Hilliard does not remember whether he grabbed Plaintiff's thumb.**

      38.    Defendant Smetters' car was parked directly behind Defendant Davi's, and was equipped with a video camera that faced forward. Exhibit D at 82-84 (Smetters deposition).

**RESPONSE: This statement must be denied because it is too vague with no time reference to even determine what the statement is referring to, it is not material to summary judgment and plaintiff again cites to three deposition pages without specific cites in violation to Rule 56.1. *Malec v. Sanford* 191 F.R.D. 581, 583 (N.D. Ill. 2000)(specific citation means page and paragraph). *Central States v. Bomar*, 253 F.3d 1011, 1017 (7th Cir. 2001)(Rule 56.1 only to include material facts party may deny immaterial facts to the dispute).**

      39.    Plaintiff was only charged with attempted obstruction of justice. *See* Exhibit I (Will County Court file).

**RESPONSE:**    **Admit that the criminal complaint has only an attempted obstruction of justice.**

                              Respectfully submitted,

                              By:  s/Craig G. Penrose

Craig G. Penrose
Attorney for Defendants
Tressler, Soderstrom, Maloney & Priess
Sears Tower, 22nd Floor
233 South Wacker Drive
Chicago, Illinois 60606-6399
(312) 627-4000
(312) 627-1717 (Fax)
E-mail:cpenrose@tsmp.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2008, I electronically filed the foregoing paper with the Clerk

of the Court using the ECF system which will send notification of such filing to the following:


Russell Ainsworth
Loevy &Loevy
312 N. May Street
Suite 100
Chicago, Il 60607
Russell@loevy.com


      **A.**      **Attorney for Plaintiff**
               **Timothy Brownlee**




                                                      s/Craig G. Penrose